UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
JOHN P. "JACK" FLYNN : 
LESLIE A. FLYNN, :     Case: 1:21-cv-02587-GHW-SLC
  :
  :     Hon. Gregory H. Woods
  :
           Plaintiffs, :
  :
      - against - :
  :
CABLE NEWS NETWORK, INC., :
  :
           Defendant. :
-------------------------------------------------------- x

## MOTION FOR PARTIAL RECONSIDERATION
## OF THE DECEMBER 16, 2021 MEMORANDUM AND ORDER
## REGARDING DEFENDANT CABLE NEWS NETWORK'S MOTION TO DISMISS

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340

Sam F. Cate-Gumpert
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:    (213) 633-6800
Facsimile:    213) 633-6899

*Attorneys for Defendant*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................ 1

BACKGROUND ............................................................................................. 2

    A.    Plaintiffs' Public Support For QAnon ................................................. 2

    B.    The Report ................................................................................. 4

    C.    The Amended Complaint and Subsequent Briefing ............................ 5

    D.    The Report and Recommendation. .................................................. 6

    E.    The Memorandum and Order ......................................................... 6

ARGUMENT ................................................................................................. 7

    A.    Reconsideration Is Appropriate Under The Applicable Legal Standard ............... 7

    B.    It Was Clear Error To Hold That Plaintiffs Plausibly Alleged A Claim For False Light ................................................................................. 8

    C.    It Was Clear Error To Hold That Plaintiffs Plausibly Alleged Negligence .......... 15

IN THE EVENT THE COURT DECLINES TO RECONSIDER ITS ORDER,
   IT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL ......................... 16

CONCLUSION ............................................................................................. 18

4889-4682-0872v.1 0026517-000210

EXHIBIT 8, Page 2 of 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................12

*Barbash v. STX Fin., LLC*,
No. 20CV123 (DLC), 2020 WL 6586155 (S.D.N.Y. Nov. 10, 2020)..............................11, 14

*In re BDC 56 LLC*,
330 F.3d 111 (2d Cir. 2003)..................................................7, 14

*In re Beacon Assocs. Litig.*,
818 F. Supp. 2d 697 (S.D.N.Y. 2011).........................................7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................12

*Cabello-Rondon v. Dow Jones & Co., Inc.*,
No. 16-CV-3346 (KBF), 2017 WL 3531551 (S.D.N.Y. Aug. 16, 2017) ................................11

*Capitol Records, LLC v. Vimeo, LLC*,
972 F. Supp. 2d 537 (S.D.N.Y. 2013)..........................................17

*Chung v. Better Health Plan*,
No. 96 CIV. 7310 (JGK), 1997 WL 379706 (S.D.N.Y. July 9, 1997) ....................................14

*Colodney v. Continuum Health Partners, Inc.*,
No. 03 Civ. 7276 (DLC), 2004 WL 829158 (S.D.N.Y. Apr. 15, 2004) ...................................9

*Crescenz v. Penguin Grp. (USA) Inc.*,
No. CIV.A. 11-0493 NLH (AMD), 2012 WL 6761817 (D.N.J. Dec. 31, 2012),
*aff'd*, 561 F. App'x 173 (3d Cir. 2014)..................................................16

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
No. 20 CIV 7670 (CM), 2021 WL 3173804 (S.D.N.Y. July 27, 2021) ..........................11, 14

*DeIuliis v. Engel*,
No. 20 CIV. 3252 (NRB), 2021 WL 4443145 (S.D.N.Y. Sept. 27, 2021) .......................13, 14

*Frascatore v. Blake*,
344 F. Supp. 3d 481 (S.D.N.Y. 2018)..........................................9

*Garrison v. State of La.*,
379 U.S. 64 (1964)..................................................................16

ii

EXHIBIT 8, Page 3 of 24

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ........................................................................................................16

*Guccione v. Hustler Magazine, Inc.*,
800 F.2d 298, 301 (2d Cir. 1986) ....................................................................................10

*Healey v. New England Newspapers, Inc.*,
555 A.2d 321 (R.I. 1989) .................................................................................................10

*Heeb v. Smith*,
No. 89C01-9108-CT-024, 1992 WL 204712 (Ind. Cir. Ct. May 13, 1992),
*aff'd*, 613 N.E.2d 416 (Ind. Ct. App. 1993) ...................................................................12

*Jewell v. NYP Holdings, Inc.*,
23 F. Supp. 2d 348 (S.D.N.Y. 1998) ...............................................................................12

*Lawrence v. Altice USA*,
841 F. App'x 273 (2d Cir. 2021) .....................................................................................10

*Masson v. New Yorker Magazine, Inc.*,
501 U.S. 496 (1991) ............................................................................................1, 7, 9, 10

*Menaker v. Kaplan*,
No. 2:17-CV-5840 (DRH) (AYS), 2019 WL 1783014 (E.D.N.Y. Apr. 23,
2019) ...............................................................................................................................8, 9

*Murray v. Metro. Life Ins. Co.*,
583 F.3d 173 (2d Cir. 2009) ............................................................................................16

*National Union Fire Ins. Co. v. Stroh Cos.*,
265 F.3d 97 (2d Cir. 2001) ................................................................................................8

*Philadelphia Newspapers, Inc. v. Hepps*,
475 U.S. 767 (1986) ...........................................................................................................9

*Printers II, Inc. v. Professionals Publ'g, Inc.*,
784 F.2d 141 (2d Cir. 1986) ............................................................................................10

*RainSoft v. MacFarland*,
350 F. Supp. 3d 49 (D.R.I. 2018) ......................................................................................9

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) ................................................................................................8

*St. Amant v. Thompson*,
390 U.S. 727 (1968) .........................................................................................................16

4889-4682-0872v.1 0026517-000210

EXHIBIT 8, Page 4 of 24

*Swerdlick v. Kock*,
    721 A.2d 849 (R.I. 1998) ...............................................................................9, 10, 12, 15

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017)........................................................................ *passim*

*Time, Inc. v. Hill*,
    385 U.S. 374 (1967)...............................................................................................15

*Time, Inc. v. McLaney*,
    406 F.2d 565 (5th Cir. 1969) ................................................................................17

*United States v. Languerand*,
    No. 21-CR-353 (JDB), 2021 WL 3674731 (D.D.C. Aug. 19, 2021)..................3, 11

*Vaughn v. Consumer Home Mortgage Co.*,
    470 F. Supp. 2d 248, 258 (E.D.N.Y. 2007) ...........................................................8

*Vetere v. Associated Press, Inc.*,
    No. 88 CIV. 4115 (MGC), 1989 WL 39664 (S.D.N.Y. Apr. 17, 1989) .................10

*Webb v. City of New York*,
    No. 08-CV-5145 (CBA), 2011 WL 5825690 (E.D.N.Y. Nov. 17, 2011)................8

*In re Worldcom, Inc.*,
    No. M-47 HB, 2003 WL 21498904 (S.D.N.Y. June 30, 2003) ..............................17

## Statutes

28 U.S.C. § 1292(b) ......................................................................................16, 17, 18

R.I. Gen. L. § 9-1-28.1 .............................................................................................15

## Other Authorities

Federal Rule of Civil Procedure
    8.............................................................................................................................12
    12(b)(6) ...........................................................................................................12, 13
    60(b)......................................................................................................................7

*Follower*, Thesaurus.com, https://www.thesaurus.com/browse/follower (last
    visited December 30, 2021) ....................................................................................12

H.R. 1094, 116th....................................................................................................2, 14

Local Rule 6.3 ...........................................................................................................7

4889-4682-0872v.1 0026517-000210

EXHIBIT 8, Page 5 of 24

Restatement (Second) of Torts
   § 580B (1977) ........................................................................................................15
   § 652E (1977) ........................................................................................................15

*Support,* Merriam Webster, https://www.merriam-webster.com/dictionary/support
   (last visited Dec. 23, 2021) .................................................................................11

United States Constitution
   First Amendment ..............................................................................................9, 17

United States Constitution
   Bill of Rights...................................................................................................4, 15

v

Defendant Cable News Network ("CNN") respectfully submits this memorandum of law in support of CNN's motion for partial reconsideration of the Court's Memorandum & Order dated December 16, 2021 (Dkt. 42) ("M&O"), to the extent it reversed Magistrate Judge Cave's Report and Recommendation (the "R&R") dismissing the false light claim of Plaintiffs Jack Flynn and Leslie Flynn ("Plaintiffs") and to the extent it reversed the R&R's conclusion that Plaintiffs had not adequately pleaded negligence.

## PRELIMINARY STATEMENT

In the M&O, the Court determined that Plaintiffs had "expressed support for QAnon and [their public statements] were evidence that they were QAnon followers." The Court nonetheless reversed the R&R's dismissal of Plaintiffs' false light claim, and held the claim survived because Plaintiffs' expressions of support for QAnon did not "conclusively contradict" Plaintiffs' factual allegations that they were not QAnon followers. M&O at 8, 12. This conclusion, respectfully, is clear error. The Supreme Court has made it clear that the operative standard is material falsity, not conclusive falsity. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991). In other words, to establish "substantial truth," one does not need to establish "literal truth." By adopting this heightened (and erroneous) standard, the Court failed to conduct the analysis required by the Second Circuit in *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017). *Tannerite* compels the Court to assess whether the fact that Plaintiffs "expressed support for QAnon" established the substantial truth of the alleged defamatory statement that they were "QAnon followers." Had it done so, the Court would have dismissed Plaintiffs' constitutionally deficient false light claim because CNN's statement was substantially true. Plaintiffs have repeatedly and publicly aligned themselves with QAnon. As a matter of law, no reasonable viewer could conclude that it is materially false to describe them as QAnon followers

EXHIBIT 8, Page 7 of 24

rather than QAnon supporters, and such a conclusion is required on a motion to dismiss under clear Second Circuit precedent.

In addition, the M&O's finding on negligence cannot be reconciled with its finding on falsity. Rhode Island defines negligence as having no "reasonable grounds" to believe the allegedly false and defamatory statement at issue. But the Court held that, while not conclusive evidence that Plaintiffs were QAnon followers, their Tweets at least provided *some* evidence that they were. The Court's conclusion that there was *no* evidence to support CNN's statements in the negligence context is, therefore, inconsistent.

Accordingly, CNN respectfully request that the Court reconsider its M&O on the issues of whether Plaintiffs have plausibly pleaded the falsity of the Report and CNN's negligence in publishing it, and grant CNN's Motion To Dismiss ("Motion") in full, and with prejudice.

## BACKGROUND

### A. Plaintiffs' Public Support For QAnon

As this Court correctly held, Jack and Leslie Flynn have repeatedly and publicly expressed support for and aligned themselves with QAnon. And they did so before, during, and after August 2020, the same month in which members of Congress denounced QAnon for "undermin[ing] trust in America's democratic institutions." *See* H.R. 1094, 116th Cong. (2020); Am. Compl. ¶ 19 n.5 (citing same); Declaration of Katherine Bolger (Dkt. 41) ("Bolger Decl."), Ex. 5 at 3.[1] Most famously, on July 4, 2020, General Michael Flynn, Jack Flynn's brother, took part in a Twitter movement called #TakeTheOath. In the Video, which Jack Flynn himself retweeted on or around July 4, 2020 with the hashtag #TakeTheOath, General Flynn is shown leading his family in reciting

---

[1] Plaintiffs did not object to the R&R's holding that the Court "may appropriately consider … materials" relied on by Plaintiffs in the Amended Complaint, including the House Resolution and several news articles. R&R at 20. Because it adopted the uncontested portions of the R&R, the Court has taken judicial notice of those materials. *See* M&O at 12 (adopting uncontested portions of R&R).

4889-4682-0872v.1 0026517-000210

the oath of office given to federal elected officeholders. Am. Compl. ¶ 4. When the oath is completed, General Flynn says, "where we go one, we go all," which Plaintiffs subsequently repeat. Am. Compl. ¶ 4. The Flynn family then say, "God Bless America." *Id.* When this Video was published, news outlets reported on it, describing the phrase spoken by the family as a "QAnon slogan." *See, e.g.*, Am. Compl. ¶ 4 n.1; Bolger Decl., Ex. 4 at 1. *See also United States v. Languerand*, No. 21-CR-353 (JDB), 2021 WL 3674731, at *3 (D.D.C. Aug. 19, 2021) (describing "where we go one, we go all" as "a slogan used by adherents of the QAnon conspiracy theory."); R&R at 32 (citing same).

But the Video is not the only time Plaintiffs themselves have publicized their support for QAnon. They have done so repeatedly over a long period of time:

- On September 16, 2019, Jack Flynn retweeted a post by "QBlueSky" containing images of message board posts signed by "Q," and the hashtag "#QAnon." Bolger Decl., Ex. 12 at 4.

- On or around May 9, 2020, Leslie Flynn liked a post containing an illustration that includes "#WWG1WGA" and General Flynn standing next to the letter Q. *Id.*, Ex. 13 at 2.

- On or around June 5, 2020, Leslie Flynn liked a post containing the hashtags #WWG1WGA, #TheGreatAwakening, and #Q. *Id.*, Ex. 13 at 1.

- On or around July 5, 2020, Jack Flynn tweeted a photograph of his brother, General Michael Flynn, wearing a "Q" pin on his lapel, standing in front a cascade of green lettering and beneath the words "The Great Awakening." Bolger Decl., Ex. 12 at 1; *see also id.*, Ex. 6 at 2 (describing meaning of "the Great Awakening").

- On August 13, 2020, Jack Flynn stated in a tweet he authored "What's wrong with the statement: Where We Go 1 We Go All?? ANYONE?? #WWG1WGA." Am. Compl. ¶ 23.a.

- On or around August 20, 2020, Jack Flynn stated in a tweet he authored "There is nothing wrong with QAnon. Just People doing their own research and learning independence of thought to find the truth. If it triggers the daylights out of fools like yourself all the better. Don't you get it?? It's so simple~Yet complex. Like a meritage wine." Am. Compl. ¶ 23.a. Plaintiffs included this Tweet in their Amended Complaint.

- On August 20, 2020, Jack Flynn stated in a tweet he authored "I was told today that QAnons are dangerous people to be aligned with. That there is actually "no plan". True or not, most people seem normal to me who support the idea of Q. I advocate for

3

the Constitution and Bill of Rights. If Q does too~No harm no foul. #KAG2020." Am. Compl. ¶ 23.a . Plaintiffs included this Tweet in their Amended Complaint.

- On or around August 21, 2020 – four days before the House of Representatives introduced its resolution condemning QAnon – Jack Flynn tweeted, in response to a post of an image showing "Q" and "WHERE WE GO ONE WE GO ALL" overlaying the United States flag, "If this means you believe in the constitution and equal justice under the law then this works for me." Am. Compl. ¶ 23.a. Plaintiffs included this Tweet in their Amended Complaint.

- On or around August 21, 2020, Jack Flynn shared by retweeting a post stating that "Qanon is not a violent conspiracy. We are every day [sic] people seeking truth. I am a family man. I am educated, and run my own business. I work hard, and spend my spare time with my family. I enjoy golf. **Qanon's [sic], share and tell your story**.″ Bolger Decl., Ex. 12 at 2 (emphasis added).

- On or around August 21, 2020, Jack Flynn retweeted an image titled "QAnon vs. Antifa: A Breakdown," stating that "WWG1WGA (Unity)" is a QAnon belief. *Id.*, Ex. 12 at 2;

- From at least September 18 through November 1, 2020, Jack Flynn repeatedly retweeted posts by famous QAnon activist Veronica Wolski in "Q" merchandise, including hats bearing the letter "Q." Bolger Decl., Ex. 12 at 5-7.

## B.    The Report

On February 8, 2021, CNN aired the Report about a QAnon gathering in Arizona two weeks before the 2020 Presidential Election. Bolger Decl., Ex. 1. A chyron bearing the title of the Report, "CNN Goes Inside A Gathering of QAnon Followers", remains at the bottom of the screen during the Report (the "Chyron"). *Id.*

The Report opens with footage of the gathering and shows an individual singing a song that incorporates the phrase "where we go one, we go all," which O'Sullivan explains is an "infamous QAnon slogan that has been promoted by" General Flynn, "Trump's first national security advisor." *Id.* As O'Sullivan speaks these words, the Report displays photos of the phrase abbreviated as "#WWG1WGA" and printed, with the letter "Q," on large flags, followed by a clip of General Flynn with Trump at a campaign rally. *Id.* O'Sullivan's statement is then followed with a portion of General Flynn's July 4 video showing General Flynn speaking the phrase. *Id.* Plaintiffs, who are not named, are also visible in the clip used by CNN for under two seconds, but

are not shown speaking.  *Id.*  Plaintiffs' claims arise from the portion of the Report containing the clip featuring Plaintiffs.  Am. Compl. ¶ 4.

## C.    The Amended Complaint and Subsequent Briefing

In their Amended Complaint and subsequent briefing, Plaintiffs have implausibly asserted that the record described above demonstrates not that they are QAnon followers but that they "embraced the Constitution and equal justice under the law."  Am. Compl. ¶ 23.a.  They claim that their use of WWG1WGA in the Video "did not signify any kind of support for QAnon," but was rather a "statement of support for each other."  Am. Compl. ¶ 4 n.1.  And they allege that Jack Flynn retweeted posts from conceded QAnon followers because those followers supported General Flynn, not because of any QAnon connection.  *See* Dkt. 39 (Plaintiffs' Written Objections To Magistrate Report & Recommendation) ("Objections") at 7 n.4.

The parties had oral argument on October 14, 2021.  *See* Dkt. 33 (transcript of hearing). Magistrate Judge Cave allowed the parties to submit additional letter briefing after oral argument, *id.* at 58:9-13, which CNN submitted on October 18, 2021 (the "Letter").  *See* Dkt. 35.  Much of the oral argument and subsequent briefing related to the Second Circuit's decision in *Tannerite*, which requires a plaintiff to plausibly allege facts that establish the material falsity of an alleged defamatory statement at the pleading stage.  864 F.3d at 247; *see* Letter at 1-2; Dkt. 40 (Response To Plaintiffs' Objections To The Report & Recommendation Of Magistrate Judge Cave) ("Response") at 9-10.  The subsequent briefing also related to the law that substantial, and not literal, truth defeats a defamation claim.  Letter at 5-6; Response at 9 (noting that, "[i]f the statement at issue in this case was substantially true, the claim of libel was legally insufficient and the complaint should have been dismissed, regardless of any impact the statement might have had on [plaintiffs'] reputation") (quoting *Guccione v. Hustler Mag., Inc.,* 800 F.2d 298, 301 (2d Cir. 1986)).

**D.** **The Report and Recommendation.**

In her R&R, Magistrate Judge Cave reviewed the factual record described above – including the Tweets contained in Plaintiffs' Amended Complaint, the Video, and the Tweets CNN argued were integral to the Amended Complaint – and concluded that it "reflect[s] that [Plaintiffs] meet the dictionary definition of follower." R&R at 31. Magistrate Judge Cave placed particular emphasis on the ways in which the Tweets submitted by Plaintiffs contradicted their allegations, contrasting Jack Flynn's August 21, 2020 tweet that said that "Q" and "where we go one we go all" "works for me" with the allegation in the Complaint that "Jack did not use QAnon slogans or code language or retweet users because they had a 'Q' in their handle." R&R at 32 (citing Am. Compl. ¶ 23.a). Relying on the doctrine of substantial truth, the R&R concluded that, "[b]y their own statements, … [Plaintiffs] connected themselves to QAnon, and therefore, cannot plausibly allege that CNN's statements were substantially false." R&R at 33.

**E.** **The Memorandum and Order**

On December 16, 2021 this Court granted in part and denied in part Plaintiffs' objection to the R&R. The Court denied Plaintiffs' request that it reverse the dismissal of the defamation claim because Plaintiffs had not pleaded a claim for defamation *per se* or special damages. M&O at 9-11. But the Court reversed the dismissal of the false light claim. M&O at 12. The Court, focusing only on the Tweets submitted by CNN in support of its Motion, and not those contained in Plaintiffs' Amended Complaint, appeared to reject the allegations in Plaintiffs' Amended Complaint that they were not affiliated with QAnon, Am. Compl. ¶ 16, and instead concluded that Plaintiffs' Tweets "expressed support for QAnon and were evidence that they were QAnon followers." M&O at 8. Nonetheless, it held that Plaintiffs' false light claim survived because Plaintiffs' expressions of support for QAnon did not "conclusively contradict" Plaintiffs' factual allegations that they were not QAnon followers. M&O at 8, 12. Notably, however, the Court did

not address, as it was required to do by *Tannerite*, whether the statement that Plaintiffs are "QAnon followers" has the same sting as "Plaintiffs expressed support for QAnon," and thus whether it is substantially true. In addition, the Court held that Plaintiffs plausibly alleged negligence, but in doing so, misapplied the Rhode Island standard.

## ARGUMENT

This Court should reconsider its decision to reinstate Plaintiffs' false light claim because the Court clearly erred in not applying the substantial truth standard articulated in *Masson* and *Tannerite*. As the Court held, Plaintiffs have shown support for QAnon through their own actions. In light of Plaintiffs' own behavior, no reasonable viewer could conclude it was inaccurate to say Plaintiffs are QAnon followers and accurate to say that Plaintiffs are QAnon supporters – the gist of those two statements is the same: Plaintiffs have aligned themselves with the QAnon movement. As a result, the alleged defamatory statement that Plaintiffs are QAnon followers is substantially true and the false light claim should be dismissed. In addition, this Court should reconsider its decision that Plaintiffs plausibly alleged negligence because that decision misapplied the Rhode Island negligence standard.

## A. Reconsideration Is Appropriate Under The Applicable Legal Standard

Under Fed. R. Civ. P. 60(b) and Local Rule 6.3, motions for reconsideration should be granted where the moving party can show the need to correct a clear error of law or prevent manifest injustice. *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 701-02 (S.D.N.Y. 2011) (granting motion for reconsideration). In particular, a motion for reconsideration on such grounds will be granted where "the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *In re BDC 56 LLC*, 330 F.3d 111, 123 (2d Cir. 2003), *abrogated on other grounds by In re Zarnel*, 619 F.3d 156 (2d Cir. 2010) "The major grounds justifying

EXHIBIT 8, Page 13 of 24

reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Webb v. City of New York*, No. 08-CV-5145 (CBA), 2011 WL 5825690, at *1 (E.D.N.Y. Nov. 17, 2011) (internal quotation marks and citation omitted); *see Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). Though "a party may not advance new facts, issues, or arguments not previously presented to the Court," *National Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d Cir. 2001) (internal quotations and citation omitted), it may "introduce relevant authority that was not before the district court when it initially ruled on the matter." *Vaughn v. Consumer Home Mortgage Co.*, 470 F. Supp. 2d 248, 258 (E.D.N.Y. 2007 (citing *Shrader,* 70 F.3d at 257). Reconsideration is also appropriate "if a court misinterpreted or misapplied relevant case law in its original decision." *Menaker v. Kaplan*, No. 2:17-CV-5840 (DRH) (AYS), 2019 WL 1783014, at *1 (E.D.N.Y. Apr. 23, 2019).

**B.     It Was Clear Error To Hold That Plaintiffs Plausibly Alleged A Claim For False Light**

This Court should reconsider its decision that Plaintiffs plausibly alleged their claim for false light because it was clearly erroneous to conclude that Plaintiffs had plausibly alleged falsity. Initially, the M&O correctly notes that, in Rhode Island, falsity is an element of both defamation and false light claims. M&O at 6 (citing *Marcil v. Kells*, 936 A.2d 208, 212 (R.I. 2007)); *id.* at 12 (citing 9 R.I. Gen. Laws § 9-1-28.1(a)(4)). And the M&O is correct that, under Second Circuit precedent, Plaintiffs were therefore required to "plead facts that, if proven, would allow a reasonable person to consider the statement false." *Id.* at 6 (quoting *Tannerite,* 864 F.3d at 247).[2]

---

[2] The Court also correctly noted and that "[t]he truth of factual allegations that are contradicted by documents properly considered on a motion to dismiss need not be accepted." M&O at 8 (quoting *BYD Co. Ltd. v. VICE Media LLC,* 531 F. Supp. 3d 810, 825 (S.D.N.Y. 2021)). *See also* R&R at 13 ("The Court need not accept allegations that are 'contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint.'") (quoting *Tsinberg v. City of New York*, No. 20 Civ. 749 (PAE), 2021 WL 1146942, at *4 (S.D.N.Y. Mar. 25, 2021)); Dkt. 26 (Reply In Support Of Motion To Dismiss) at 2 ("If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control[s], and the court need not accept the allegations in the complaint as true.") (quoting *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013)).

The Court also correctly found that Plaintiffs' Tweets "express support for QAnon and are therefore evidence that the Flynns were QAnon followers." *Id.* at 8. But the Court then erred when it determined that the claim survived because Plaintiffs' expressions of support for QAnon did not "conclusively contradict" Plaintiffs' factual allegations that they were not QAnon followers. M&O at 8, 12. Material, not conclusive, falsity is the operative standard and in assessing falsity, the Court was required by the decisions in *Masson* and *Tannerite* to assess whether its conclusions that Plaintiffs "expressed support for QAnon," rendered the Report substantially true . *Accord Swerdlick v. Kock*, 721 A.2d 849, 862 (R.I. 1998) ("defendant's statements … were based on substantially true facts, and thus cannot be relied upon to support an action for false light [or defamation]"). The Court's failure to conduct that analysis was clear error and CNN respectfully asks the Court to reconsider and dismiss the false light claim with prejudice on that basis.[3]

More than thirty years ago, the United States Supreme Court held that the First Amendment requires that "where a newspaper publishes speech of public concern, a … plaintiff cannot recover damages without also showing that the statements at issue are false." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986); *see also RainSoft v. MacFarland*, 350 F. Supp. 3d 49, 59 (D.R.I. 2018) (holding that, in order to establish a defamation claim, a plaintiff must show that a statement regarding an issue of public concern has a defamatory meaning that is "materially

---

[3] And accordingly, the Court should also dismiss the defamation claim with prejudice. In its M&O, the Court correctly noted that leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." M&O at 12 (quoting *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014)). But the Court held that "those circumstances do not apply in this case." *Id.* CNN respectfully submits that, because the Report is substantially true, the defamation claim would also fail. As such, any attempted amendment would be futile, and no leave should be granted. *See Colodney v. Continuum Health Partners, Inc.*, No. 03 Civ. 7276 (DLC), 2004 WL 829158, at *7 (S.D.N.Y. Apr. 15, 2004) (defamation claim dismissed without leave to amend where challenged statements "were not false … [and] further litigation regarding [them] is not warranted"); *Frascatore v. Blake*, 344 F. Supp. 3d 481, 500 (S.D.N.Y. 2018) (Woods, J.) (defamation claim dismissed with prejudice as to challenged statement that was true, and therefore nonactionable).

false") (internal quotations omitted); Motion at 14.[4]  Statements are not materially false even if they admit of "[m]inor inaccuracies[,] ... so long as the substance, the gist, the sting, of the libelous charge be justified."  *Masson*, 501 U.S. 496 at  516-17 (1991); *see Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 325 (R.I. 1989) ("So long as the gist or the sting of the publication is true, the publication is not false.").  As CNN noted in its Motion, a Plaintiff cannot demonstrate material falsity when the allegedly defamatory statements are substantially true *i.e.,* where "the [challenged] statement would not have a different effect on the mind of the reader from that which the pleaded truth would have produced."  *Tannerite*, 864 F.3d at 242; *see Masson*, 501 U.S. 496 at 516-17 (1991) (libel law "concentrates upon substantial truth"); *Swerdlick*, 721 A.2d at 860 (defendant's statements that plaintiffs were in violation of zoning regulations "may have been exaggerated or slightly off the mark factually, [but] were substantially true and thus not defamatory"); *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 301 (2d Cir. 1986) ("It's not necessary of course that a statement be literally true.  The test is whether the statement, as it was published, had a different effect on the mind of the reader than the actual literal truth.")  *Printers II, Inc. v. Professionals Publ'g, Inc.*, 784 F.2d 141, 146-47 (2d Cir. 1986) (even though statement that plaintiff was overdue in paying its bills was "literally false," statement was nonetheless substantially true because plaintiff plainly had no intention of paying the bills when due); Motion at 14-19; Letter at 5-6; Response at 8-16.[5]

---

[4] It is uncontested that the Report, which concerns QAnon, constitutes speech on a matter of public concern and therefore that it was Plaintiffs' burden to show that the Report was materially false.  *See* Motion at 14-15; R&R at 29; M&O at 12 (adopting uncontested portions of R&R).

[5] *See also Vetere v. Associated Press, Inc.*, No. 88 CIV. 4115 (MGC), 1989 WL 39664, at *2 (S.D.N.Y. Apr. 17, 1989) (statement that plaintiff was a member of the American Nazi Party was substantially true where plaintiff had participated in a march organized by the National Socialist White People's Party, the successor organization to the American Nazi Party); *Lawrence v. Altice USA*, 841 F. App'x 273, 275 (2d Cir. 2021) (defendant's characterization of plaintiff's conduct as 'stalking' was substantially true even though arrestee was arrested for breaching the peace, since the description of arrestee's behavior met the "common definition" of stalking; defendant's use of the term 'stalking' would not have affected average readers' or viewers' perceptions of plaintiff).

Importantly here, the Second Circuit has held that the substantial truth analysis must be done at the pleading stage, so that media defendants are not "damaged by an overly technical or exacting conception of truth in publication." *Tannerite*, 864 F.3d at 242. For that reason, since the decision in *Tannerite*, district courts in the Second Circuit have repeatedly dismissed cases for failure to allege material falsity on the grounds that the alleged defamatory sting was substantially true.[6] But this Court applied a different standard, requiring conclusive falsity, not materially falsity and declined to undertake the substantial truth analysis required by *Tannerite*, even though it was a central argument in the Motion and the Response. In fact, the words "substantial truth" do not appear in the M&O. Had the Court performed the analysis, it would have affirmed the R&R's finding on lack of material falsity. Simply put, the Court's conclusion that Plaintiffs' Tweets "express support for QAnon and are therefore evidence that [they] were QAnon followers" *is* a finding that the sting is substantially true, and that Plaintiffs cannot prove material falsity. M&O at 8. No reasonable viewer would have thought better of Plaintiffs if CNN had used that phrase "QAnon supporter" instead of "QAnon follower." (As a point of reference, the United States District Court for the District of Columbia describes those who say the "where we go one, we go all" slogan, as Plaintiffs undisputedly did, as QAnon "adherents." *Languerand*, 2021 WL 3674731 at *3.) Quite the contrary: to support means "to promote [its] interests or cause[s]," "to argue or vote [in its favor]," or to "assist [or] help." *Support,* Merriam Webster, https://www.merriam-

---

[6] *See, e.g., Cabello-Rondon v. Dow Jones & Co., Inc.,* No. 16-CV-3346 (KBF), 2017 WL 3531551, at *7 (S.D.N.Y. Aug. 16, 2017), *aff'd,* 720 F. App'x 87 (2d Cir. 2018) (finding that statement that plaintiff was "[t]he biggest target of an ongoing federal criminal investigation" was substantially true where plaintiff failed to plausibly allege that he was not a target of the investigation and granting motion to dismiss); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.,* No. 20 CIV. 7670 (CM), 2021 WL 3173804, at *4 (S.D.N.Y. July 27, 2021) (dismissing defamation claim where, "[e]ven drawing all inferences in [their] favor …, it is clear … that no reasonable factfinder could conclude that the Challenged Statements could have no effect on the mind of the reader different than the effect caused by what [p]laintiffs themselves plead."); *Barbash v. STX Fin., LLC,* No. 20CV123 (DLC), 2020 WL 6586155, at *2 (S.D.N.Y. Nov. 10, 2020) (dismissing defamation claim complained-of statements alleging criminal behavior by plaintiff did not materially differ from statements made by plaintiff in transcript of her guilty plea, which was referred to in – but not attached to – plaintiff's complaint, and which defendant submitted as an exhibit to their motion to dismiss).

webster.com/dictionary/support (last visited Dec. 23, 2021). And Thesaurus.com lists "supporter" as a synonym for "follower", *see also Follower*, Thesaurus.com, https://www.thesaurus.com/browse/follower (last visited December 30, 2021) .

In fact, the allegation that one "expresses support for" QAnon is arguably *worse* than the allegation that one is a "QAnon follower" – supporting implies active promotion, while following implies passive obeyance. *See* R&R at 30-31 (providing several dictionary definitions of "follower"). And even if stating that Plaintiffs were QAnon followers "slightly … exaggerate[s]" or mischaracterizes the nature of their support for the movement, *Swerdlick*, 721 A.2d at 860, the overall gist remains the same: Plaintiffs publicly aligned themselves with QAnon during the same summer – including at least twice in the same month – the House introduced a resolution condemning the movement. The "shaded distinction" between "express support for" and "follow" cannot support a defamation claim. *Guccione*, 800 F.2d at 303 (quoting *Cafferty v. Southern Tier Publishing Co.*, 226 N.Y. 87, 93 (1919)); *see also Heeb v. Smith*, No. 89C01-9108-CT-024, 1992 WL 204712, at *4 (Ind. Cir. Ct. May 13, 1992), *aff'd*, 613 N.E.2d 416 (Ind. Ct. App. 1993) ("The substantial truth of articles 'should not be analyzed with lexicographer's precision.'") (quoting *Holy Spirit Association v. New York Times Co.*, 49 N.Y.2d 63, 68 (1979).

In fact, this case is just like *Jewell v. NYP Holdings, Inc.* – which was decided before the Supreme Court heightened the Rule 8 pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). There, the plaintiff, a security guard who found the bomb that exploded during 1996 Olympics in Atlanta, sued the defendant newspaper for defamation based in part on statements asserting that he was a "prime suspect" or the "main suspect" in the bombing. 23 F. Supp. 2d 348, 356, 367 (S.D.N.Y. 1998). The defendant moved to dismiss under Rule 12(b)(6), on the grounds that such statements were substantially true.

EXHIBIT 8, Page 18 of 24

*Id.* at 359.  While the court noted that the literal truth differed from the defendant's statements, in that the plaintiff was one among several individuals being investigated, it concluded that "a reasonable reader would not have reacted differently to … these specific statements … based upon this difference in [degree]."  *Id.* at 369.  Per the court,

> the pleaded truth, that [the plaintiff] was "a suspect," would not have produced a different meaning in the minds of readers because someone accused of being "a suspect" could still be suspected of having committed the crime and could still be the subject of an active investigation.

*Id.*  Here, the Court found that Plaintiffs expressed support for QAnon.  It should have, as the *Jewell* court did, done the next step of concluding that this pleaded truth would not have produced a different meaning in the minds of readers than being QAnon followers and dismissed the false light claim.

To the extent this Court is concerned that CNN is asking it to "weigh evidence" at the pleading stage, M&O at 8, that concern is misplaced.  "The Second Circuit has conclusively rejected th[e] position [that truth is a question reserved for the trier of fact] and has affirmed dismissal of defamation claims when the substantial truth of the allegedly defamatory statements can be discerned based on [the record before the court]."  *DeIuliis v. Engel*, No. 20 CIV. 3252 (NRB), 2021 WL 4443145, at *6 n.4 (S.D.N.Y. Sept. 27, 2021) (citing *Tannerite*, 864 F.3d at 247); *see* Letter at 2.  In *DeIuliis*, the court considered a map and article that assigned blame for climate change to the top 100 greenhouse-emitting companies worldwide, and listed the names of those companies' CEOs.  *DeIuliis*, 2021 WL 4443145 at *1.  The plaintiff sued the author, alleging in part that the map and article were false because, by the time they were published, the plaintiff's company was no longer among the top 100 polluters.  *Id.* at *3.  The court disagreed, holding the plaintiff's theory of falsity was a "far too myopic view of the pieces" because the data on which the offending publications were based established that the company had been a top-100 polluter

13

for a 27-year period that ended only two years before it divested itself of its polluting unit. *Id.* at *6. The court therefore dismissed the claim with prejudice.[7]

Here, as in *DeIuliis* the record before the Court establishes the substantial truth of CNN's Report, and so there is no requirement – let alone need – to weigh any evidence. This Court has correctly held that Plaintiffs' public statements "express support for QAnon and are therefore evidence that [Plaintiffs] were QAnon followers." [8] There is no other weighing of evidence that needs to take place. In fact, it is difficult to understand what evidence could be sought in discovery and "weighed" because it is difficult to understand what evidence what transform a QAnon "supporter" into a QAnon "follower."[9]

To the extent this Court believes that active endorsement by Plaintiffs of the insurrection on January 6 is required to establish substantial truth, that is "a far too myopic view of the pieces." *DeIuliis*, 2021 WL 4443145 at *6. Plaintiffs were actively endorsing QAnon throughout the summer of 2020, when members of the House denounced the movement for "undermin[ing] trust in America's democratic institutions." *See* H.R. 1094, 116th Cong. (2020); Am. Compl. ¶ 19 n.5

---

[7] *See also Ctr. for Med. Progress*, 2021 WL 3173804 at *2; *Barbash*, 2020 WL 6586155 at *2; *Chung v. Better Health Plan*, No. 96 CIV. 7310 (JGK), 1997 WL 379706, at *3 (S.D.N.Y. July 9, 1997) (holding that statement that plaintiff filed suit for sexual harassment "would not produce a different effect in the mind of a listener" than the literal truth that she filed a charge with EEOC, and granting motion to dismiss).

[8] This Court focused solely on the Tweets submitted by CNN, and did not address the material contained or referenced in Plaintiffs' pleadings – including the numerous Tweets they cite to, *see* Am. Compl. ¶ 23.a, and the Video, which Plaintiffs describe at length, *see* Am. Compl. ¶ 4. This portion of the record independently demonstrates the substantial truth of CNN's Report. *See* Motion at 15-17; Response at 11-12; R&R at 31-33. Because the M&O "overlooked … data that might reasonably be expected to alter the conclusion reached by the court," *In re BDC 56 LLC*, 330 F.3d at 123, CNN respectfully submits that the M&O's conclusion as to falsity was clear error, and should be reconsidered and revised.

[9] Indeed, it is undisputed that QAnon is a digital movement, and that tweeting out its memes and slogans, as Plaintiffs did here, *is* how you act as a QAnon sympathizer. *See* Am. Compl. ¶ 4 n.1 (citing July 5, 2020 *Washington Examiner* article that connects the #WWG1WGA hashtag to QAnon-related "corners of social media," where its use is "pervasive," and notes that QAnon supporters "meet and talk online using a variety of hashtags and memes."); Bolger Decl., Ex. 4; Am. Compl. ¶ 21 n.4 (citing *Politico* article that notes that Twitter determined QAnon followers by identifying users that "share QAnon content" and describes how General Michael Flynn "tweet[ed] out QAnon memes as well as the QAnon slogan: Where we go one, we go all, or the hashtag #WWG1WGA."); Bolger Decl., Ex. 8; R&R at 20 (taking notice of articles); M&O at 12 (adopting R&R as to notice of articles).

(citing same); Bolger Decl., Ex. 5 at 3.; *see also Guccione*, 800 F.2d at 303. In fact, just days before that resolution was introduced – and over a month after the *Washington Examiner* publicized the movement's belief that Trump was "battling … an alleged ring of sex traffickers that includes Democratic politicians, business leaders, and Hollywood elites," *see* Am. Compl. ¶ 4 n.1; Bolger Decl., Ex. 4 – Jack Flynn stated "There is nothing wrong with QAnon. Just People doing their own research and learning independence of thought to find the truth." Am. Compl. ¶ 23.a. And "I was told today that QAnons are dangerous people to be aligned with. […] True or not, most people seem normal to me who support the idea of Q. I advocate for the Constitution and Bill of Rights. If Q does too~No harm no foul." *Id.* Accordingly, Plaintiff did show support for QAnon as its dangerous theories and tendencies were made public.

In sum, once this Court concluded that Plaintiffs expressed support for QAnon, it should have undertaken the substantial truth analysis and dismissed this case with prejudice because no reasonable reader could conclude that it is materially false to say a QAnon supporter is a QAnon follower. Failure to take this last step is clear error, and this Court should reconsider its earlier motion and dismiss the false light claim.

## C. It Was Clear Error To Hold That Plaintiffs Plausibly Alleged Negligence

This Court should also reconsider its decision that Plaintiffs plausibly alleged negligence because it was clear error. Under Rhode Island law, negligence requires a showing that the defendant had no "reasonable grounds for believing that the communication was true." Restatement (Second) of Torts § 580B (1977); *see* Motion at 23.[10] In light of the Court's finding

---

[10] The R&R dismissed Plaintiffs' false light claim solely on the basis of their failure to plead falsity, but Plaintiffs also failed to plausibly plead that CNN acted with the requisite degree of fault as to that claim. Though the statute laying out the elements of the false light tort is silent on the question of fault, *see* R.I. Gen. L. § 9-1-28.1, the Restatement (Second) of Torts specifies that where, as here, the speech challenged in a false light claim pertains to a matter of public concern, a plaintiff must allege that a defendant acted with actual malice. Restatement (Second) of Torts § 652E (1977); *see Swerdlick*, 721 A.2d at 861 (discussing elements of false light in Rhode Island and citing Restatement with approval); *accord Time, Inc. v. Hill*, 385 U.S. 374, 388 (1967) (holding "that the constitutional protections for speech

4889-4682-0872v.1 0026517-000210

EXHIBIT 8, Page 21 of 24

that Plaintiffs' Tweets (which CNN is alleged to have viewed) were evidence that they were QAnon followers, it is inconsistent to hold, as this Court did, that CNN had *no* evidence to corroborate that Plaintiffs were QAnon followers. Even if the Tweets do not amount to *conclusive* evidence, they constitute (as the Court found) at least *some* evidence – and not, as matter of law, "no evidence" – that Plaintiffs are QAnon followers.[11]  Because the Court misapplied the Rhode Island negligence standard, the M&O's contrary holding is clear error.[12]

### IN THE EVENT THE COURT DECLINES TO RECONSIDER ITS ORDER, IT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL

If the Court declines to reconsider its M&O, then CNN respectfully requests that the Court certify the Order for immediate review pursuant to 28 U.S.C. § 1292(b).  A district court may certify an order for interlocutory appeal if "(1) the issue involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) if an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *Murray v. Metro. Life Ins. Co.*, 583 F.3d 173, 176 (2d Cir. 2009) (cleaned up).  This is such a case.

---

and press preclude [redress for false light claims on] matters of public interest in the absence of proof that the defendant published the report with knowledge of its falsity or in reckless disregard of the truth").  Here, Plaintiffs cannot allege that CNN acted with actual malice in publishing the Report, since their own Twitter activity "expresses support for QAnon and is therefore evidence that [Plaintiffs] were QAnon followers." M&O at 8; *see* Motion at 22 (noting that Plaintiffs did not plausibly plead actual malice).  If, as Plaintiffs allege, CNN knew of that activity prior to the publication of the Report, then CNN could not have entertained "serious doubts" about the truth of the Report, *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968), or had a high degree of awareness of its falsity, *Garrison v. State of La.*, 379 U.S. 64, 74 (1964).

[11] In fact, the Court's holding seemingly conflates negligence with strict liability, such that CNN will be found to be negligent if Plaintiffs are not, in fact, QAnon followers, despite the evidence CNN had showing the opposite.  But strict liability is not the standard in Rhode Island, or any other jurisdiction in this country.  *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347 (1974) ("We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.")

[12] That CNN allegedly did not contact Plaintiffs prior to the publication of the Report is insufficient to show that CNN acted negligently.  *See, e.g.*, *Crescenz v. Penguin Grp. (USA) Inc.*, No. CIV.A. 11-0493 NLH (AMD), 2012 WL 6761817, at *6 (D.N.J. Dec. 31, 2012), *aff'd*, 561 F. App'x 173 (3d Cir. 2014) (defendants' failure to confirm truth of allegedly defamatory statement with plaintiff was "insufficient … to demonstrate that [defendants] acted unreasonably in evaluating the truth or falsity of that statement before publishing it.") (citing Restatement (Second) of Torts § 580B (1977)).

*First*, the Court's M&O hinges on a pure and controlling question of law – namely:  Is the statement that Plaintiffs are "QAnon followers" substantially true where the Court held that the pleadings indisputably demonstrate that they have "expressed support for QAnon"?  This question is "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013).  This question relates to the proper standard for gauging whether Plaintiffs have plausibly pleaded the element of falsity in their defamation and false light claims, and can be resolved as a matter of law by reference solely to the Amended Complaint and a select few documents – namely, the Tweets and the Video – that are either integral to it or are incorporated by reference therein.

*Second*, there is plain and substantial ground for difference of opinion with this Court.  *In re Worldcom, Inc.*, No. M-47 HB, 2003 WL 21498904, at *9 (S.D.N.Y. June 30, 2003) (substantial grounds for difference of opinion "must arise out of a genuine doubt as to the correct applicable legal standard that was relied upon in the order") (citation and internal quotation marks omitted).  As set out above, many courts have ruled on substantial truth in a manner directly contrary to the Court's M&O here.

*Third*, a decision on these issues will dispose of Plaintiffs' entire case, thus obviating the need for trial, and therefore will "materially advance the ultimate termination of the litigation." *Capitol Recs.*, 972 F. Supp. 2d at 551.  Courts have long recognized that interlocutory review in libel lawsuits is "a salutary step towards minimizing the expenditure of finite resources" on unnecessary litigation, thus reducing the chilling impact of such lawsuits on speech. *Time, Inc. v. McLaney*, 406 F.2d 565, 566 (5th Cir. 1969) (granting § 1292(b) appeal from denial of summary judgment because "the failure to dismiss" might "necessitate long and expensive trial proceedings" that offend First Amendment principles "if not really warranted").

**CONCLUSION**

For the reasons set out above, CNN respectfully requests the Court reconsider its M&O and dismiss, with prejudice, Plaintiffs' defamation and false lights claims for failure to plausibly plead falsity and failure to plead negligence.  In the alternative, CNN requests the Court certify the M&O for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

Dated:  New York, New York
December 30, 2021

Respectfully submitted,

DAVIS WRIGHT TREMAINE LLP

By: */s/ Katherine M. Bolger*
Katherine M. Bolger (N.Y. Bar No. 2976868)
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone:    (212) 489-8230
Facsimile:    (212) 489-8340

Sam F. Cate-Gumpert (admitted *pro hac vice*)
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:    (213) 633-6800
Facsimile:    (213) 633-6899

*Attorneys for Defendant*

TO:    Anthony C. Carlini, Jr. (N.Y. Bar No. 2649374)
HANDEL & CARLINI, LLP
1984 New Hackensack Road
Poughkeepsie, NY 12603
Telephone: (845) 454-2221
Email: anthony@handelcarlini.com

Steven S. Biss (Virginia Bar No. 32972)
300 West Main Street, Suite 102
Charlottesville, VA 22903
Telephone: (804) 501-8272
Facsimile: (202) 318-4098
Email: stevenbiss@earthlink.net

*Counsel for the Plaintiffs*

18

4889-4682-0872v.1 0026517-000210