**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

**CASE NO. 8:22-cv-00343-MSS-SPF**

VALERIE FLYNN                              )
                                           )
        Plaintiff,                  )
                                           )
v.                                         )
                                           )
                                           )
CABLE NEWS NETWORK, INC.                   )
                                           )
        Defendant.                  )
_____)

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CNN'S MOTION TO DISMISS

Plaintiff, Valerie Flynn ("Plaintiff" or "Valerie"), by counsel, pursuant to Local Civil Rule 3.01(b), respectfully submits this Memorandum in Opposition to the motion to dismiss amended complaint pursuant to Rule 12(b)(6) filed by defendant, Cable News Network, Inc. ("CNN") [*ECF No. 31*].

## I.   INTRODUCTION

This is an action for defamation brought by a private individual against a media defendant.  Plaintiff alleges that CNN deceptively altered a video and falsely linked her to a violent domestic extremist group, **QANON**, whose adherents were among the "most prominent members of the mob" to storm the United States Capitol on January 6, 2021. The United States District Court for the Southern District of New York, faced with identical facts in a lawsuit brought by Plaintiff's brother-in-law and sister-in-law, concluded that CNN's statements were both false and capable of a defamatory meaning.

1

*Flynn v. CNN*, 2021 WL 5964129, at * 4 (S.D.N.Y. Dec. 16, 2021) ("Because the Court accepts the Flynns' allegation that they are not QAnon followers as true, the Flynns have plausibly alleged that CNN's statement was false.  Consequently, the Flynns have also plausibly alleged that CNN's statement was defamatory. *See* R&R at 33 ("[F]alsely implying a connection to a violent extremist group can be defamatory.").

On February 4, 2021, within a month of the storming of the Capitol and at a time when CNN was heavily promoting various narratives about the "dangerous" and "insurrectionist" terrorist group, **QANON**, CNN published an altered video clip prominently displaying Plaintiff's picture.  CNN emblazoned the clip with a chyron immediately beneath Plaintiff's picture that boldly and falsely accused Plaintiff of being a "**QANON FOLLOWER**".  In addition to cable television, CNN published the false statements to various social media properties, garnering tens of millions of views.  Not content with an initial publication, CNN republished the statements about Plaintiff in June 2021 after it received notice that the statements were both false and defamatory. Plaintiff alleges that CNN acted negligently in failing to investigate the matter, published the statements with actual malice, and that CNN's statements caused substantial damage. [*ECF No. 27 ("Am. Compl."), ¶¶ 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 23, 25, 26, 27, 29, 30, 31, 32*].

Plaintiff commenced this action on February 9, 2022.  On March 21, 2022, she filed an amended complaint pursuant to Rule 15(a)(1)(B), alleging claims of defamation *per se* and defamation by implication.  CNN has moved to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, the Court should deny CNN's motion.

## II.  BACKGROUND

### A.   The Parties

Valerie Flynn is a citizen of Florida, who lives in Sarasota County.  She is a private individual.  She has never owned any attire that bears any "QAnon" slogan or symbol.  As of February 4, 2021, Valerie knew next to nothing about QAnon.  She did not know what it stood for or any of its core beliefs.  She was never interested in "Q" and paid no attention to the group at all.  Valerie did not go to QAnon gatherings, meetings or rallies.  She did not (and does not) know and has never spoken with the "QAnon Shaman" (Jacob Chansley), or Jim Watkins or Alan Hostetter or any other "prominent figures in the QAnon movement".  She never visited the "hate-filled 8Kun" website or any other website where QAnon messages are posted.  She never used or shared any QAnon hashtags, gifs, memes, marks, slogans, symbols or language in her communications with anyone.  She never purchased a QAnon t-shirt, hat, mug, flag or any other merchandise bearing any QAnon symbol, slogan or message.  She did absolutely nothing to even remotely suggest that she adhered to QAnon or participated in any "#taketheoath movement".  Valerie emphatically denies that she is a follower[1] of any violent, extremist or terrorist groups, including **QANON**. [*Am. Compl., ¶¶ 4, 11, 12, 16*].

CNN, is a Delaware corporation, based and operating in Georgia.  CNN is a division of WarnerMedia.  WarnerMedia was an operating segment of AT&T, Inc., until it was recently spun-off and sold to Discovery, Inc.  CNN is part of WarnerMedia's

---

[1]      Merriam-Webster defines "follower" as (1) "one in the service of another"; (2) "one that follows the opinions and teachings of another"; (3) "one that imitates another"; (4) "fan or devotee; (5) "one who subscribes to a feed especially on social media." [https://www.merriam-webster.com/dictionary/follower].  Synonyms for "follower" include "acolyte", "adherent", "convert" and "disciple".  Valerie fits ***none*** of the dictionary definitions of "follower". [*Am. Compl., ¶ 12 fn. 3*].

"Turner" business unit.  The Turner business unit operates television networks and related properties that offer branded news and other content for consumers in Florida and around the world.  CNN is at home in Florida.  Millions in Florida watch CNN.  Turner's digital properties include the CNN digital network, www.cnn.com.  In addition to its massive digital footprint, CNN employs multiple social media accounts as a means to profit from the publication of its false statements.  The O'Sullivan report and social media posts at issue in this case, identified above, were published to and read by millions in Florida, where Valerie suffered substantial damage to her reputation. *See, e.g., Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776 (1984) ("[f]alse statements of fact harm both the subject of the falsehood *and* the readers of the statement … The tort of libel is generally held to occur wherever the offending material is circulated. Restatement (Second) of Torts § 577A, Comment a (1977)."). [*Am. Compl., ¶¶ 17, 19*].

B. **The Fourth of July 2020 Barbecue Video**

On July 2, 2020, Valerie traveled to Rhode Island to celebrate the Fourth of July with family.  On July 4, 2020, she attended a late afternoon barbecue.  She wore a yellow jacket and blue skirt.  In addition to family members and neighbors, Sidney Powell ("Powell") and her son were there.  Powell was criminal defense attorney for Lieutenant General (Retired) Michael T. Flynn ("General Flynn"), Valerie's brother-in-law.  As evening approached, someone suggested that the Flynns should do a video taking the Oath to the United States Constitution (the "Oath").  They said families all over the country were posting videos taking the Oath as a way of showing patriotism.  The parties gathered in the backyard of General Flynn and his wife Lori behind their fire pit.  It was completely impromptu.  Valerie offered to record the video, but someone indicated that it

would be nice to include spouses.  Prior to recording the video, there was no discussion

about QAnon.  In the original video posted to Twitter by General Flynn, each member of

the Flynn family, including Valerie, individually took the Oath, the same oath taken by

Members of Congress.  After finishing the Oath, General Flynn stated, "where we go one,

we go all".[2]  Each family member repeated the phrase, as they had repeated each line of

the Oath to the U.S. Constitution.  At no time did Valerie associate the phrase with

QAnon.  She did not know that some people considered it to be a QAnon slogan.  The

entire family then exclaimed, "God Bless America". [*Am. Compl., ¶¶ 3, 4, 5*].

> After making the video, those present poured some champagne and made a toast
>
> to Attorney Sidney Powell to thank her for her service, dedication and excellent results in
>
> the defense of General Flynn.  After the toast, everyone returned to Jack and Leslie
>
> Flynn's backyard, sat around their fire pit, and sang patriotic songs.  Although Valerie

---

[2]       The parties dispute that the phrase recited by Valerie and her family at the July 4, 2020 barbecue was a "QAnon Slogan".  The amended complaint expressly alleges that it was not.  The amended complaint states that "General Flynn posted the video to Twitter because he wanted to encourage people to think about being good citizens, to love country and family, and be good patriots.  The video had nothing to do with QAnon.  Valerie's repetition of the phrase 'where we go one, we go all' at the July 4, 2020 barbecue did not signify any kind of support for QAnon.  It was not an oath of allegiance to QAnon.  It was a simple, family, July 4 statement of support for each other.  In addition to the celebration of America's National Holiday, the Flynn family had good reason to be together as a family and to celebrate as one on July 4, 2020.  In May 2020, Attorney General William P. Barr had filed a motion to dismiss the criminal charges against General Flynn https://www.cbsnews.com/video/department-of-justice-drops-charges-against-michael-flynn/], but Judge Emmett Sullivan indicated that he refused to dismiss the case.  Sidney Powell filed a petition for writ of mandamus with the United States Court of Appeals for the District of Columbia Circuit.  On June 24, 2020, the Court of Appeals granted General Flynn's petition. *In re Flynn*, 961 F.3d 1215 (D.C. Cir. Jun. 24, 2020).  And so, that July 4, 2020, the Flynn family – who had all supported General Flynn from the beginning of his ordeal and who supported him to the end – were specifically celebrating the family's victory in the D.C. Court of Appeals.  The barbecue and the Oath was about family solidarity and perseverance.  The Flynns were happy and together.  It was one of the first respites the Flynns had since February 2017." [*Am. Compl., ¶ 5 fn. 1*].

was aware that the video would be posted on social media, she did not participate in any way in any posting.  She was unaware that any hashtags accompanied General Flynn's Twitter post. [*Am. Compl., ¶ 4*].

## C.    <u>Domestic Violence Extremist Group – QANON</u>

According to the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security ("DHS"), "**QAnon**" is a "domestic violence extremist" ("DVE") group and a "domestic terrorism threat".  The *Wall Street Journal* concludes that QAnon is a "far right-wing, loosely organized network and community of believers who embrace a range of unsubstantiated beliefs.  These views center on the idea that a cabal of Satan-worshipping pedophiles—mainly consisting of what they see as elitist Democrats, politicians, journalists, entertainment moguls and other institutional figures—have long controlled much of the so-called deep state government, which they say sought to undermine [President] Trump, mostly with aid of media and entertainment outlets."  On January 6, 2021, adherents of QAnon were among the "most prominent members of the mob" who stormed the United States Capitol in Washington, D.C. https://www.wsj.com/articles/what-is-qanon-what-we-know-about-the-conspiracy-theory-11597694801?mod=article_inline].  CBS News' *60 Minutes* recently represented that the violent "extremist ideology" of the QAnon "movement" has had a "corrosive impact" on the United States. [https://www.cbsnews.com/news/qanon-conspiracy-united-states-60-minutes-2021-02-21/]. [*Am. Compl., ¶ 1*].

In the wake of the January 6 storming of the Capitol, a chorus of left-wing media outlets began to spread false narratives about QAnon, including that Valerie's brother-in-law, retired Lieutenant General Michael T. Flynn ("General Flynn"), was the "founder"

of QAnon.  On January 31, 2021, CNN aired a "Special Report" hosted by Anderson Cooper entitled, "***Inside the QAnon Conspiracy***".  CNN called QAnon a "deranged conspiracy cult".  CNN stated that some of "Q's conspiracy claims" were "actually based on age-old racist and anti-Semitic beliefs".  CNN asserted that QAnon, like the Nazis, promoted "ancient and dark biases and bigotry in World history".  CNN stated that QAnon supporters were detached from "reality" and had an utter "disregard" for the facts.  CNN alleged that QAnon followers were mentally ill and crazy.  CNN concluded that it was "abundantly clear" that QAnon was a "dangerous and violent movement" – a movement that has become "insurrectionist". [*Am. Compl., ¶ 2*].

**D.    <u>The CNN Altered Video Clip and The Chyron</u>**

On February 4, 2021, CNN published an "exclusive" report by correspondent Donie O'Sullivan ("O'Sullivan"), entitled "***CNN Goes Inside A Gathering Of QANON Followers***".  In the O'Sullivan report, CNN falsely accused Valerie of being a "follower" of the "dangerous", "violent", "racist", "extremist", "insurrectionist", "domestic terrorism" movement – **QANON**.  The O'Sullivan report juxtaposed a picture of Valerie (and other members of the Flynn family) with numerous known QAnon adherents.  The report included footage of the insurrectionist mob storming the United States Capitol on January 6, 2021.  The O'Sullivan report also included a clip – selectively edited and altered by CNN – of the video posted to Twitter by General Flynn on July 4, 2020.  CNN emblazoned the edited clip with a chyron that endorsed the defamatory meaning of CNN's statements:



The tone of the whole O'Sullivan report was that everybody that CNN was showing its audience is a "**QANON FOLLOWER**".[3] [*Am Compl., ¶ 3*].

In the altered clip used in the O'Sullivan report, CNN intentionally edited out the Oath to the United States Constitution *and* omitted the words "God Bless America", fraudulently making it appear and insinuating that Valerie pledged an oath of allegiance to QAnon.  By its deceptive editing and production of the O'Sullivan report, CNN intended and endorsed the defamatory meaning.  Although it knew nothing about Valerie, CNN consciously chose to include her in the edited clip and to make her a subject of the O'Sullivan report.[4]   In addition to expressly labeling Valerie as a "**QANON**

---

[3]      *Flynn v. CNN*, Case 1:20-cv-02587-GHW/SJC (Document 33)  (Transcript of hearing on motion to dismiss, p. 9:3-10) ("THE COURT: … I've watched the video many times … And the tone of the whole report is these people, everybody that we're showing you is a QAnon follower.  So isn't that the context of the whole report, that anybody you're seeing is a QAnon follower?").  A true copy of the hearing transcript is attached as *Exhibit "A"*.

[4]      CNN could have blurred Valerie's face or redacted her image from the video clip.  CNN did nothing to protect Valerie's identity, however.  Rather, CNN chose to make Valerie a visible subject of the report. [*Am. Compl, ¶ 7 fn. 2*].

**FOLLOWER**", the altered CNN clip conveyed a very powerful (but untrue) message: that Valerie pledged her allegiance to QAnon.  In early February 2021, this was a very damaging accusation.  It was like calling someone a "communist" in the 1950s or a Nazi sympathizer in the 1940s.  CNN made no effort in the O'Sullizer report to dispel the defamatory implications.  The edited video clip with Valerie's picture on full display and in full view, festooned with the chyron "**QANON FOLLOWER**" (which remained on screen the entire broadcast) was a premeditated attempt (a) to manufacture a connection between Valerie and QAnon that did not exist and an event (a pledge of allegiance) that never happened, (b) to wildly exaggerate and misrepresent Valerie's actions and beliefs, and (c) to create a frenzy about the Flynn family's involvement with a violent, extremist group, **QAnon**.  The O'Sullizer report intentionally misrepresented and actively sought to conceal what oath Valerie was actually taking. [*Am. Compl., ¶¶ 6, 7*].

In addition to millions of cable TV viewers in Florida who watched *Don Lemon Tonight* on February 4, 2021 and CNN *Newsroom* on February 5, 2021, CNN republished the O'Sullizer "exclusive" to hundreds of thousands of social media followers on Twitter (459,000) and millions of subscribers to CNN's YouTube channel (12,200,000) in Florida.  CNN anchor Brooke Baldwin praised O'Sullizer and encouraged him to "keep digging up these stories and just educating us on who **these people** are and how they think." (Emphasis added). [*Am. Compl., ¶ 8*].  On June 15, 2021, after Jack and Leslie Flynn filed suit against CNN and notified CNN that the statements in O'Sullizer report were false and defamatory, CNN and O'Sullizer brazenly republished the false and defamatory statements about Valerie. [*Am. Compl, ¶ 9*].

Numerous people who watched the O'Sullivan report (either the original broadcast on *Don Lemon Tonight* or on February 5, 2021 when the report was republished on CNN's *Newsroom* with Brooke Baldwin), including a retired police officer in Rhode Island and a pharmacist and an attorney in Massachusetts, recognized Valerie and understood that the defamatory statements referred to her specifically. [*Am. Compl., ¶ 10*].

CNN's false statements subjected Valerie to hatred, distrust, ridicule, contempt and disgrace. CNN falsely attributed to Valerie associations that never existed, actions she never took, including an oath of allegiance or pledge to **QAnon**, and views Valerie never held. Published in the immediate aftermath of the storming of the U.S. Capitol, CNN's false attributions exposed Valerie to public scorn, ridicule and contempt, and lowered her esteem in the community, causing insult, embarrassment, humiliation and substantial injury to her reputation. The edited video clip of Valerie, with the chyron CNN chose to run underneath, confirmed for CNN's viewers that Valerie was indeed one of the despised "**QANON FOLLOWERS**" who were the subject of the O'Sullivan report and who were "prominent members of the mob" who stormed the Capitol. In this case, Valerie seeks actual damages and punitive damages as a result of CNN's false statements and defamatory implications. [*Am. Compl., ¶¶ 13, 14, 15*].[5]

---

[5] The scope of review on a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint and any exhibits attached. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (citation omitted). Throughout its motion, CNN disregards the allegations in the amended complaint. CNN refers to and relies upon multiple documents that are nowhere referenced in the amended complaint. CNN creates and defines phrases that suit its purposes, such as "QAnon Slogan" [*CNN Mot., p. 1*] and "#TakeTheOath Video" [*Id., p. 3*]. CNN also adds its own facts, such as "General Flynn took part in a Twitter movement called #TakeTheOath by sharing the Video". [*Id., p. 4*]. The Court should convert CNN's motion under Rule 12(d), and deny the motion without prejudice.

### III.  STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  The threshold for surviving a motion to dismiss for failure to state a claim under Rule 12(b)(6) is a "low one." *Farmer v. Humana, Inc.*, 2022 WL 432126, at * 2 (M.D. Fla. 2022) (Scriven., J.) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A. et al.*, 711 F.2d 989, 995 (11th Cir. 1983)).  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*  "While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them." *Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005) (cited with approval in *Selinger v. Kimera Labs, Inc.*, 2022 WL 34444, at * 10 (S.D. Fla. 2022)).

In evaluating the sufficiency of a complaint in light of a motion to dismiss. the District Court construes the complaint liberally, accepts the pleaded facts as true and construes the facts in the light most favorable to the plaintiff. *Yachera v. Westminster*

*Pharmaceuticals, Inc.*, 477 F.Supp.3d 1251, 1262 (M.D. Fla. 2020) (Scriven., J.)  (citing *Quality Foods*, 711 F.2d at 994-995)).  Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).

## IV.  <u>DISCUSSION</u>

"Freedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., Concurring).  The press has no "special immunity from the application of general laws", nor does it have a "special privilege to invade the rights and liberties of others." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972).  The press has no right to "invent facts" or to "comment on the facts so invented" and, thereby, convince readers that the invented facts are true.  Simply put:

> "[l]iberty of the press is not license, and newspapers have no privilege to publish falsehoods or to defame under the guise of giving the news.  It is held that the press occupies no better position than private persons publishing the same matter; that it is subject to the law, and if it defames it must answer for it."

*Williams Printing Co. v. Saunders*, 113 Va. 156, 73 S.E. 472, 477 (1912) (numerous citations and quotations omitted); *Dexter v. Spear*, 7 F. Cas. 624-625 (1st Cir. 1825) (Story, J.) ("No man has a right to state of another that which is false and injurious to him.  A fortiori no man has a right to give it a wider and more mischievous range by publishing it in a newspaper.  The liberty of speech, or of the press, has nothing to do with this subject.  They are not endangered by the punishment of libellous publications.  The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation.  There can be no right in printers, any more than in other persons, to do wrong.").

CNN invented facts about Valerie.  The motion to dismiss should be denied.

**A.**       ***COUNT I – Defamation Per Se***

Under Florida law, defamation has five elements: (1) publication; (2) falsity; (3) the statement was made negligently on a matter concerning a private individual; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018 (citing *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008)).

CNN challenges several elements of Plaintiff's cause of action.  Those challenges will be addressed in order:

**1.**       ***The False Statements Are "Of or Concerning" Plaintiff***

Regarding the second element, falsity, a false statement must be "of or concerning" the plaintiff. *Zimmerman v. Buttigieg*, 521 F.Supp.3d 1197, 1212 (M.D. Fla. 2021) (citations omitted).  In *Zimmerman*, the defendants argued that their tweets were not "about Zimmerman, do not mention his name at all, nor imply anything about him." The District Court agreed that "Zimmerman's name is nowhere mentioned in either tweet."   The Court held, however, that "it does not appear that there is a strict requirement, in Florida, that the author of the defamatory publication specifically identify a person by name for the statement to be actionable.  The case law merely indicates that the statement must concern a … private person." 521 F.Supp.3d at 1212 (citing *Rapp*, 997 So.2d at 1106); *see id. Croixland Properties Limited Partnership v. Corcoran*, 174 F.3d 213, 216 (D.C. Cir. 1999) (the "of and concerning" element of defamation is satisfied if the statement leads "the listener to conclude that the speaker is referring to the plaintiff by description, even if the plaintiff is never named or is misnamed.").   The

complaint in *Zimmerman* alleged generally that "[t]he name 'George Zimmerman' is 100% synonymous with Trayvon Martin and the incident that resulted in the death of Trayvon Martin."   The Court held that taking this allegation as true, "Zimmerman plausibly alleges that the tweets, when considered as a whole, included an implied or indirect reference to him due to the incident resulting in Trayvon Martin's death.  As such, the Court disagrees that the failure to name Zimmerman in the tweets subjects the claims to dismissal." *Id.*; *see Wolfson v. Kirk*, 273 So.2d 774, 779 (Fla. 4th DCA 1973) ("The defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communication … We conclude that the allegations in the complaint are sufficient as a matter of pleading to indicate that the plaintiff was intended to be the subject of the defendant's remarks and was understood to be such by the listeners.").

Here, as in *Zimmerman*, the amended complaint sufficiently alleges that CNN's false statements are "of or concerning" Valerie.[6]  Even though Valerie's name is not mentioned, her picture is prominently displayed immediately above the chyron that

---

[6]    In its original motion to dismiss [*ECF No. 18, p. 11 fn. 3*], CNN represented as follows:

> "While the R.&R. found that Plaintiff's family members had pleaded that the Report was of and concerning them, it did so primarily because they alleged that one person – Leslie Flynn's friend – recognized them from the telecast. R.&R., 2021 WL 6290046 at *13.  Here, by contrast, Plaintiff has failed to identify a single person who recognized her from the Report, let alone a person who understood the allegedly defamatory statements to refer to her specifically."

**In her amended complaint, ¶ 10, Valerie does indeed identify multiple persons who recognized her from the CNN report and who understood the defamatory statements to refer to her specifically**.

expressly reads, "**QANON FOLLOWER**".   Valerie alleges that "[n]umerous people who watched the O'Sullivan report (either the original broadcast on *Don Lemon Tonight* or on February 5, 2021 when the report was republished on CNN's *Newsroom* with Brooke Baldwin), including a retired police officer in Rhode Island and a pharmacist and an attorney in Massachusetts, recognized Valerie and understood that the defamatory statements referred to her specifically." [*Am. Compl.,* ¶¶ *10, 23*]. *See, e.g., Wilholt v. WCSC, Inc.*, 293 S.C. 34, 358 S.E.2d 397, 398-399 (S.C.App. 1987) (the alleged defamation consisted of a film clip of the plaintiff "with her face shielded by her hands, shown simultaneously with the broadcast which did not mention Wilhoit's name … We hold that whether the picture revealed Wilhoit to the extent that she could have been recognized by some one or more of the viewing audience was a question of fact for the jury, who saw and heard a video tape of the broadcast. The jury found against the appellants on this issue.   We hold that there is of record sufficient evidence to support this finding of fact by the jury.") (citing *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70, 80 (W. Va. 1984) (libel "includes defamation through the publication of pictures or photographs") (numerous citations omitted));[7] *id. AIX Specialty Insurance*

---

[7]     The general rule applicable in situations as the one presented in this case is stated in 50 Am.Jur.2d, *Libel and Slander*, § 24 (1970):

> "[I]t is generally held that the publication of a person's portrait accompanied by the name of another, or not accompanied by any name, in connection with an article *which refers to the photograph and is defamatory,* entitles the person whose portrait is so published to maintain an action for libel.   In such a case, the publication of the plaintiff's portrait sufficiently identifies him [or her] as the subject of the accompanying text."

(Emphasis added).   Unlike the "Explanations" in *Mac Isaac v. Twitter*, 557 F.Supp.3d 1251, 1259 (S.D. Fla. 2021), CNN actually revealed Valerie's identity when it displayed her picture in the O'Sullivan report and directly connected her to a domestic violent extremist group, QAnon.

*Company v. Big Limo, Inc.*, 547 F.Supp.3d 757, 767-768 (S.D. Ohio) ("a visual depiction, be that a drawing or a photograph, can be defamatory if it implies to a reasonable viewer that the person depicted in the drawing or photograph is involved in activity that impugns his or her integrity.").

### 2. *Valerie Is Not a QANON Follower*

The amended complaint repeatedly and emphatically alleges that CNN's statements are false, and why they are false. [*Am. Compl., ¶¶ 3, 13, 14, 23, 25*].  As the Southern District of New York correctly held in *Flynn v. CNN*, these allegations must be accepted as true. *Flynn*, 2021 WL 5964129 at * 4 ("Because the Court accepts the Flynns' allegation that they are not QAnon followers as true, the Flynns have plausibly alleged that CNN's statement was false."); *see also Goulmamine v. CVS Pharmacy, Inc.*, 138 F.Supp.3d 652, 659 (E.D. Va. 2015) (on a motion to dismiss, "a court must accept as false any statements which the Complaint alleges to be false.") (citing *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).

### 3. *CNN's Statements Are Defamatory*

A statement is defamatory when its "gist" or "sting" is defamatory. *Greene v. Times Publ'g Co.*, 130 So.3d 724, 729-730 (Fla. 3d DCA 2014).  A defamatory statement is a statement that "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp*, 997 So.2d at 1108-1109.  A statement that does such "on its face" can be referred to as defamatory *per se*, and extrinsic proof is not required to establish the statement's defamatory meaning. *See, e.g., Carroll v. TheStreet.com, Inc.*, 2014 WL 5474061, at * 16

(S.D. Fla. 2014) ("The statements labeling Carroll a 'convicted felon,' 'con artist,' and 'troubling character,' remain the same—they are injurious on their face and require no extrinsic evidence to establish their defamatory meaning."); *see also Zimmerman*, 521 F.Supp.3d at 1214 ("defamation *per se* is not confined to statements that someone committed a crime, as statements that tend to subject a person to hatred, distrust, ridicule, contempt or disgrace can suffice.  Certainly, a statement that attributes racist and white supremacist attributes to someone could subject that person to such harm.") (citation omitted); *Sirer v. Aksoy*, 2021 WL 4952610, at * 4 (S.D. Fla. 2021) ("in the Complaint, Plaintiff alleges that Defendant posted a video on his YouTube channel accusing Plaintiff of being a member of an organization designated as a terrorist organization … Plaintiff alleges that his reputation has been harmed by Defendant's statements, and that they pose a threat to Plaintiff's and his family's safety.  Plaintiff need not allege more.") (citation omitted); *Coker v. Barr*, 2020 WL 9812034, at * 8 (D. Colo. 2020) ("it is hard to imagine a greater stigma than being associated with terrorism in our post-9/11 world."); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) ("If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise 'odious, infamous, or ridiculous.'").

CNN's statements connecting Valerie to the domestic violence extremists, nationally condemned by Congress, who were prominent among the "mob" that attacked the United States Capitol are clearly defamatory *per se*.  As Magistrate Judge Cave observed in *Flynn v. CNN*, the "tone" of the "whole" CNN report is "these people, everybody that we're showing you is a QAnon follower." [*Exhibit "A", Tr., pp. 7:9-11,*

*9:3-10*].  At no point during the report does CNN ever make it clear that Valerie was not a "**QANON FOLLOWER**".  Magistrate Judge Cave understood that by labeling the Flynns "QAnon followers", CNN linked the Flynns to the "riot on January 6":

> MS. BOLGER:  Oh, the other thing, of course, is that there's nothing in the report that talks about the words "extremism" or "violence" or "insurrection" or any of those words are not actually in the reports.  What the plaintiff is doing is imposing them from that Anderson Cooper discussion on January 31st.  But, of course, they're not in the report --
>
> THE COURT:  Well, they don't say that, but there are pictures of the riot on January 6th.  There's about a minute of footage of January 6th in the video.
>
> MS. BOLGER:  But they certainly don't call the plaintiffs extremists or violent or racist in an overt way in the report.  The words just aren't there.
>
> THE COURT:  The words aren't there, but I mean, the images are there.
>
> MS. BOLGER:  The images don't include the plaintiffs, your Honor.
>
> THE COURT:  It's a three-minute video.  The plaintiffs are in the video, and there's a minute of January 6th in there.  It's hard to parse that out.

[*Exhibit "A", Tr., p. 56:4-23*].  Magistrate Judge Cave did not waver in her view of CNN's statements:

> THE COURT:  But the picture is there, and it says "QAnon follower" below it.  You keep switching back and forth.  One minute you want me to look at the whole video; the next minute you want me to only look at what was --
>
> MS. BOLGER:  We want you to look at the whole video, your Honor.  I always want you to look at the whole video.  I want you to look at the whole video because, one, you're required to under the law that says that you're required to do that, *Mann v. Abel*, right?  That's the -- and the *Bray* case.  That is the rule; you are required to look at the whole video.  But the of-and-concerning analysis looks to whether the defamatory statements are of and concerning the plaintiff.  It's not whether the plaintiff is just in the video; it's what the video says about the plaintiff.  And I would argue, your Honor -- and I know I'm not convincing you -- that the video only -- the only thing the video says about the plaintiffs is that they were standing next to Michael Flynn, nothing else.
>
> THE COURT:  All right, yes, you're right; you're not convincing me on that.

[*Exhibit "A"*, *Tr., p. 57:6-25*].

In *Flynn v. CNN*, both the Magistrate Judge and the District Court found that the plaintiffs "plausibly alleged that CNN's statement was defamatory. *See* R&R at 33 ("[F]alsely implying a connection to a violent extremist group can be defamatory."). 2021 WL 5964129 at * 4.  Those rulings fully comport with the analysis in *Zimmerman* and

other Florida cases. *See Ward v. Triple Canopy, Inc.*, 2017 WL 3149431, at * 3 (M.D. Fla. 2017) (amended complaint was sufficient to give defendant "fair notice of the substance of the alleged defamatory statements" where the amended complaint identified "the defamatory statements as the false accusations regarding the health, safety, and welfare inspection"); *Axelrod v. Califano*, 357 So.2d 1048, 1050 (Fla. 1st DCA 1978) ("When the words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is actionable per se").[8]

**B.     *COUNT II – Defamation By Implication***

Defamation can also occur by implication under Florida law.  A defendant may be held responsible for a defamatory implication if the defendant: "[1] juxtaposes a series of facts so as to imply a defamatory connection between them, or [2] creates a defamatory implication by omitting facts." *Rapp*, 997 So.2d at 1106.  Defamation by implication can also arise when "literally true statements are conveyed in such a way as to create a false impression." *Id.* at 1108 (quoted and cited in *Jacoby v. Cable News Network, Inc.*, 537 F.Supp.3d 1303, 1312 (M.D. Fla. 2021)).

**1.     *CNN Created A False Impression and Omitted Material Facts***

The amended complaint suffices to allege a claim of defamation by implication under Florida law.  Valerie alleges that CNN juxtaposed a series of true facts so as to imply a defamatory connection between them.  In the context of a broadcast about

---

[8]     In connection with its motion to dismiss Count I – Defamation *Per Se* – CNN does not claim that Valerie failed to sufficiently allege the elements of publication; that CNN made the statements negligently; or that Valerie suffered actual damages. CNN also concedes that Valerie alleged sufficient facts to demonstrate actual malice in support of her claim for punitive damages.  Accordingly, these matters will not be addressed in this Opposition.

"**QANON FOLLOWERS**", including "at least two people who would go on to Washington D.C. on January 6", CNN displayed a full body image of Valerie above the chyron.  Valerie did repeat the words, "where we go one we go all".  Valerie's hand was raised.  She was taking an oath.  All true facts.  However, CNN intentionally and selectively edited and altered General Flynn's July 4, 2020 video.  CNN omitted material facts in a way that intentionally conveyed a preconceived false meaning and implication – that Valerie is a "**QANON FOLLOWER**" *and* that in the video clip she pledged her allegiance to violent extremists who stormed the Capitol on January 6, 2021.  CNN altered the video and omitted the facts in 2021 in order to promote CNN's QAnon narrative, and in so doing CNN clearly misrepresented the actual historical events that took place on the Fourth of July 2020 in the Flynn backyard, turning a family celebration of love, solidarity and patriotism into a pledge of allegiance to QAnon.  CNN's intentional omissions render the O'Sullivan report untrue as to Valerie.  CNN claims that its omissions "arguably cast Plaintiff in a *better* light than does the full, unedited Video." [*CNN Mot., p. 21*].  This is not true.  This dispute presents an issue of fact for the Jury.  Although CNN used Valerie's image to support its narrative, CNN published no disclaimer and made no effort to clarify that it did not mean to portray Valerie as a "**QANON FOLLOWER**". [*Am. Compl., ¶ 35*].  The *Zimmerman* Court did hold that "causes of action for defamation by implication and defamation *per se* are mutually exclusive", but Valerie's alleges no contradictory ***facts***.  As CNN recognizes, Valerie is entitled to plead alternative theories of recovery.

2.      ___CNN Intended and Endorsed The Defamatory Implication___

Contrary to CNN's suggestion, the tone, intended meaning and endorsement of the defamatory implication of the O'Sullivan report is clear from the words and images used by CNN, including the chyron. *See Nunes v. Lizza*, 12 4th 890, 899 (8th Cir. 2021) ("Nunes has plausibly alleged that Lizza and Hearst intended or endorsed the implication that Nunes conspired to cover up the farm's use of undocumented labor.  The complaint points to the article's 'click-bait headline' … its discussion of his efforts to conceal the farm's move to Iowa, and its claim that the farm employs undocumented labor.  The manner in which the article presents the discussion of the farm's use of undocumented labor permits a plausible inference that Lizza and Hearst intended or endorsed the implication.   Thus, the complaint states a plausible claim for defamation by implication.").

3.      ___CNN Was Negligent___

Finally, because Valerie is a private individual, she need only allege that CNN acted negligently in creating the defamatory implication. *Rapp*, 997 So.2d at 1106. Negligence in this context means the "publication of false and defamatory statements without reasonable care to determine their falsity." *Boyles v. Mid-Fla Television Corp.*, 431 So.2d 627, 634 (Fla. 5th DCA 1983) ("the plaintiff clearly alleged in his complaint that the broadcaster knew or should have known that the statements were false and defamatory, thereby meeting the standard of negligence") (citation omitted), *aff'd*, 431 So.2d 627 (Fla. 1985).

The amended complaint alleges a plethora of facts which, accepted as true, demonstrate that CNN acted without reasonable care.  Prior to February 4, 2021 and

publication of the O'Sullivan report, no news publication ever reported that Valerie was a "QAnon follower".  There were no tweets or posts that labeled or even suggested that she was a "**QANON FOLLOWER**".  Valerie alleges that CNN did no research or investigation of Valerie whatsoever.  All CNN knew was that on July 4, 2020 Valerie took the Oath to the United States Constitution, and, among many other things, she repeated the words, "where we go one, we go all".  CNN did not know why Valerie repeated these words or why she took the Oath or whether she had *any* connection to QAnon.  Valerie denies that the statements recited on July 4, 2020 had anything to do with QAnon. [*Am. Compl., ¶ 5 fn. 1*].  CNN failed to contact Valerie or any other member of the Flynn family prior to publication, and, in spite of giving a podcaster an opportunity to offer his observations of QAnon, CNN utterly failed to give Valerie an opportunity to respond to the false charges.  CNN had no independent evidence to corroborate that Valerie was a follower of any violent, extremist group, including QAnon, because no such evidence exists.  As an experienced reporter [https://www.cnn.com/profiles/donie-osullivan], O'Sullivan was keenly aware that the events of January 6, 2021 were emotionally and politically super-charged, and that the statements about Valerie, when viewed in the context of the "insurrection" and invasion of the United States Capitol that was fresh on Americans' minds, would have an instantaneous opprobrious connotation.  O'Sullivan knew or should have known that linking Valerie to the group that was "prominent" among the mob that invaded the Capitol building, assaulted Police and committed other crimes, without solid factual support would have obvious pejorative connotations.  CNN was grossly negligent in publishing the statements about Valerie.  CNN failed to exercise reasonable care in the

production process (by, *inter alia*, failing to blur Valerie's face or crop her out of the video), abandoned its ethical duty to report the truth and minimize harm, and, in its hurry to publish a scandalous story about Valerie and her family, violated the codes of ethics and journalistic integrity, customs and standards in the industry applicable to the media. [*Am. Compl., ¶¶ 7, 30*].

Accepted as true, these allegations are more than sufficient to plausibly allege that CNN acted negligently. *D Mag. Part., L.P. v. Rosenthal*, 2021 WL 2351169, at * 11-12 (Tex.App. 2021) ("When the plaintiff is a private party seeking defamation damages from a media defendant, the defendant is negligent if it knew or should have known a defamatory statement was false or failed to investigate the truth or falsity of the statements … [T]here is more than a scintilla of evidence that D Magazine failed to investigate the truth or falsity of the statements in the Article before it was published. Viewing the evidence in the light most favorable to Bender, fact issues exist whether D Magazine negligently published the Article"); *Evanger's v. Thixton*, 412 F.Supp.3d 889, 899 (N.D. Ill. 2019) ("Evanger's alleges that 'Thixton knew, or deliberately and recklessly failed to verify' the fact that Evanger's did not manufacture Wild Calling cat food.  That allegation goes beyond negligence"); *Lewis v. Kei*, 281 Va. 715, 726, 708 S.E.2d 884 (2011) ("other statements attributed to Kei, such as the assertion that Lewis 'approached' T.H., are subject to being proven false, and a jury could find that Kei was negligent in making these statements based solely upon Williams' 911 report without conducting any follow-up investigation."); *Merritt v. Shuttle, Inc.*, 13 F.Supp.2d 371, 385 (S.D.N.Y. 1998) ("Plaintiff properly alleges that a false or defamatory statement was published with fault greater than negligence … Liberal

pleading standards apply to defamation complaints … Thus, defendant's motion is

denied.").

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiff, Valerie Flynn, respectfully requests the

Court to deny CNN's motion to dismiss.


DATED:        April 25, 2022



Respectfully Submitted,

VALERIE FLYNN


By:___*/s/ Steven S. Biss*_____
            Steven S. Biss (VSB # 32972)
            300 West Main Street, Suite 102
            Charlottesville, Virginia 22903
            Telephone:  (804) 501-8272
            Facsimile:  (202) 318-4098
            Email:  stevenbiss@earthlink.net
            (*Admitted Pro Hac Vice*)

            Jason R. Kobal, Esquire
            KOBAL LAW, P.A.
            12169 W. Lindebaugh Ave.
            Tampa, FL 33626
            (813) 873-2440
            koballaw@yahoo.com
            Florida Bar No.: 0542253

            *Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 25, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By: _/s/ Steven S. Biss_
Steven S. Biss (VSB # 32972)
300 West Main Street, Suite 102
Charlottesville, Virginia 22903
Telephone:  (804) 501-8272
Facsimile:  (202) 318-4098
Email:  stevenbiss@earthlink.net
(*Admitted Pro Hac Vice*)

Jason R. Kobal, Esquire
KOBAL LAW, P.A.
12169 W. Lindebaugh Ave.
Tampa, FL 33626
(813) 873-2440
koballaw@yahoo.com
Florida Bar No.: 0542253

*Counsel for the Plaintiff*