**UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
Tampa Division**

**CASE NO. 8:22-cv-00512-MSS-AEP**

LORI FLYNN                                          )
                                                   )
          Plaintiff,                               )
                                                   )
v.                                                 )
                                                   )
                                                   )
CABLE NEWS NETWORK, INC.                           )
                                                   )
          Defendant.                               )
_____)

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT CNN'S MOTION TO DISMISS

Plaintiff, Lori Flynn ("Plaintiff" or "Lori"), by counsel, pursuant to Local Civil

Rule 3.01(b), respectfully submits this Memorandum in Opposition to the motion to

dismiss first amended complaint filed by defendant, Cable News Network, Inc. ("CNN")

[*ECF Nos. 30, 46*].

## I.  INTRODUCTION

"Florida's unusually high protection of personal reputation derives from the

common consent of humankind and has ancient roots.  It is highly valued by civilized

people.  Our state constitution and common law powerfully support it.  This is a value as

old as the Pentateuch and the Book of Exodus, and its command as clear as the

Decalogue: 'Thou shall not bear false witness against thy neighbor.'  The personal

interest in one's own good name and reputation surpasses economics, business practices

or money.  It is a fundamental part of personhood, of individual standing and one's sense

of worth." *Lawnwood Medical Center, Inc. v. Sadow*, 43 So.2d 710, 729-732 (Fla. 4th DCA 2010) ("Lawnwood set out to destroy Dr. Sadow's career in the community. The jury's finding of a specific intent to harm Dr. Sadow, together with its finding of actual harm, is the very incarnation of both express and actual malice. It was a purposeful act of malevolent destruction of the reputation of one of its surgeons, done repeatedly as a matter of policy. A reasonable jury could conclude that repeatedly defaming the skill and proficiency of a practicing surgeon was likely to have significant and long-lasting public and professional consequences. It could rationally have equated the slanders to feathers loosed into the wind, with no one ever knowing where they all landed or whom they touched. The effects could be seen as insidious and unknowable.").[1]

This is an action for defamation brought by a private individual against a media defendant. In a report originally published on February 4, 2021, and republished on February 5 and February 6, 2021, and republished on March 9, 2021, and republished on June 15, 2021, CNN intentionally and deceptively truncated a video and falsely linked Plaintiff to a violent domestic extremist group, **QANON**, whose followers were among the "most prominent members of the mob" to storm the United States Capitol building on January 6, 2021. The United States District Court for the Southern District of New York, faced with identical facts in a lawsuit brought by Jack and Leslie Flynn – Plaintiff's brother-in-law and sister-in-law – concluded that CNN's statements were both false and capable of a defamatory meaning. *Flynn v. CNN*, 2021 WL 5964129, at * 4 (S.D.N.Y. Dec. 16, 2021) ("Because the Court accepts the Flynns' allegation that they are not QAnon followers as true, the Flynns have plausibly alleged that CNN's statement was

---

[1]      CNN's premeditated and repeated defamation in this case is in many respects far more wicked and egregious than the misconduct of the defendant in *Sadow*.

false.  Consequently, the Flynns have also plausibly alleged that CNN's statement was defamatory.  *See* R&R at 33 ("[F]alsely implying a connection to a violent extremist group can be defamatory.").

Plaintiff commenced this action on March 3, 2022.  On June 6, 2022, she filed an amended complaint pursuant to Rule 15(a)(1)(B), alleging claims of defamation *per se* and defamation by implication.  [*ECF No. 22 ("Am. Compl.")*].  CNN has moved to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons stated below, the Court should deny CNN's motion.

## II.  **BACKGROUND**

### A.  **The Parties**

Lori Flynn is a private individual.  She has been married to Lieutenant General (Retired) Michael T. Flynn ("General Flynn") for forty-one (41) years.  Lori and General Flynn have two sons and four grandchildren.  Lori has fully supported her husband in his life-long defense of the United States of America, the Constitution, freedom, and the rule of law.  As a military spouse, Lori has an abiding respect for this Country and the principles for which it stands.  As of February 4, 2021, Lori knew next to nothing about QAnon.  She did not know what it stood for or any of its core beliefs.  She was never interested in "Q" and paid no attention to the group at all.  Lori did not go to QAnon gatherings, meetings or rallies.  She did not (and does not) know and has never spoken with the "QAnon Shaman" (Jacob Chansley), or Jim Watkins or Alan Hostetter or any other "prominent figures in the QAnon movement".  She never visited the "hate-filled 8Kun" website or any other website where QAnon messages are posted.  She never used or shared any QAnon hashtags, gifs, memes, marks, slogans, symbols or language in her

communications with anyone.  Lori never purchased any merchandise bearing any QAnon symbol, slogan or message.  She has never espoused or amplified any "**QAnon**" beliefs or theories.  She did absolutely nothing to even remotely suggest that she adhered to QAnon or participated in any aspect of the "#taketheoath movement".  Lori emphatically denies that she is a follower[2] of any violent, extremist or terrorist groups, including **QANON**. [*Am. Compl., ¶¶ 4, 5, 6, 8, 13, 14, 19*].[3]

CNN is a division of Warner Bros. Discovery Media.  CNN operates television networks and related properties that offer branded news and other content for consumers in Florida and around the world.  The report and social media posts at issue in this case, identified below, were published to and read by millions in Florida, where Lori suffered substantial damage to her name and reputation. [*Am. Compl., ¶¶ 17, 19, 20*].

**B.**     **The Fourth of July 2020 Barbecue Video**

Every year over the 4th of July, the Flynn family has a backyard barbeque.  Even when General Flynn was serving in the military, he and Lori would try and make it back to their hometown of Middletown, R.I., to celebrate the nation's Independence Day. Fourth of July 2020 was especially significant because the Flynn family was celebrating the dismissal of the nearly 4-year persecution of General Flynn brought on by the very government General Flynn served with honor and distinction for over 33 years.  Lori and

---

[2]     Merriam-Webster defines "follower" as (1) "one in the service of another"; (2) "one that follows the opinions and teachings of another"; (3) "one that imitates another"; (4) fan or devotee; (5) "one who subscribes to a feed especially on social media." [https://www.merriam-webster.com/dictionary/follower].  Synonyms for "follower" include "acolyte", "adherent", "convert" and "disciple".  Lori fits ***none*** of the dictionary definitions of "follower". [*Am. Compl., ¶ 12 fn. 3*].

[3]     ***Not a single one*** of the 19 exhibits attached to CNN's motion to dismiss contains any evidence linking Lori to QAnon.

General Flynn were celebrating with family and close friends, including General Flynn's lawyer, Sidney Powell ("Sidney") and her son Wilson. Because families all over the country were reaffirming their allegiance to the United States, someone proposed that those who gathered for the barbecue take the oath to the U.S. Constitution (the "Oath") as well. It was a perfect day to do it. Lori had on her "USA" sweatshirt that evening. She wanted to honor the occasion with the red, white and blue. Not for one moment did Lori ever intend or imagine that she was taking an oath or pledging allegiance to **QAnon**. [*Am. Compl., ¶ 5*].

The Fourth of July 2020 gathering in Jack and Leslie Flynn's backyard, where Lori and her family took the Oath, was recorded and posted to Twitter by General Flynn. In the original video, each member of the Flynn family, including Lori, individually took the Oath, the same Oath taken by Members of Congress. After finishing the Oath, General Flynn stated, "where we go one, we go all"[4] Each family member repeated the

---

[4] According to some, the phrase "where we go one, we go all" was first engraved on a bell on one of President John F. Kennedy's sailboats, acknowledging the unity of mankind. Others say that the phrase "where we go one, we go all" is inscribed on the bell of the 1911 brigantine rigged sailing ship *Eye of the Wind*. [https://www.eyeofthewind.net/en/gallery-ship?os_image_id-335]. *Eye of the Wind* was used in the Ridley Scott-directed film *White Squall* (1996), where the ship was called *Albatross*. Captain Christopher Sheldon (played by actor Jeff Bridges) says in the film, "If we don't have order, we have nothing. Where we go one, we go all." Still others say that the phrase "where we go one, we go all" is similar to the Latin "*Unus pro omnibus, omnes pro uno*", made famous in the Alexandre Dumas novel *The Three Musketeers* (1844) as "All for one, and one for all." General Flynn posted the video to Twitter because he wanted to encourage people to think about being good citizens, to love country and family, and be good patriots. The video had nothing to do with QAnon. Lori's repetition of the phrase "where we go one, we go all" at the July 4, 2020 barbecue did not signify any kind of support for QAnon. It was not an oath of allegiance to QAnon. It was a simple, family, July 4 statement of support for each other. The barbecue and the Oath was about family solidarity and perseverance. The Flynns were happy and together. It was one of the first respites the Flynns had since February 2017. [*Am. Compl., ¶ 6 fn.1*].

phrase, as they had repeated each line of the Oath to the U.S. Constitution.  At no time did Lori associate the phrase with QAnon.  She did not know that anyone considered it to be a QAnon slogan.  The entire family then exclaimed in unison, "God Bless America". [*Am. Compl., ¶¶ 4, 5, 6*].

### C.    <u>Domestic Violence Extremist Group – QANON</u>

According to the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security ("DHS"), "**QAnon**" is a "domestic violence extremist" ("DVE") group and a "domestic terrorism threat".  The *Wall Street Journal* concludes that QAnon is a "far right-wing, loosely organized network and community of believers who embrace a range of unsubstantiated beliefs.  These views center on the idea that a cabal of Satan-worshipping pedophiles—mainly consisting of what they see as elitist Democrats, politicians, journalists, entertainment moguls and other institutional figures—have long controlled much of the so-called deep state government, which they say sought to undermine [President] Trump, mostly with aid of media and entertainment outlets."  On January 6, 2021, adherents of QAnon were among the "most prominent members of the mob" who stormed the United States Capitol.  [https://www.wsj.com/articles/what-is-qanon-what-we-know-about-the-conspiracy-theory-11597694801?mod=article_inline]. [*Am. Compl., ¶ 1*].

In the wake of the January 6 storming of the Capitol, a chorus of left-wing media outlets began to spread false narratives about QAnon, including that General Flynn was the "founder" of QAnon.  CNN, in particular, began to trumpet the notion that violent extremists had infiltrated the Republican Party and that "January 6 was the physical manifestation of the online mob.  The guy with the horns on his head who is in all the

pictures from the Capitol and has now been arrested was a big QAnon believer.  He was at that event in Arizona, too, and I saw him outside Trump's rally in Dalton, Georgia, two days before the insurrection".[5]    [https://www.cnn.com/2021/01/21/politics/qanon-conspiracy-donald-trump/index.html].  CNN proclaimed that the January 6 "domestic terror attack on the US Capitol" was the "violent manifestation" of QAnon.  [https://www.cnn.com/2021/01/16/politics/qanon-gop-trump-congress-future/index.html].  CNN began to use "**QAnon**" as a Scarlett Letter to ridicule, shame and humiliate Americans. [*See, e.g.,* https://twitter.com/jaketapper/status/1362050599495030786]. [*Am. Compl., ¶ 2*].

On January 31, 2021, CNN aired a "Special Report" hosted by Anderson Cooper entitled, "***Inside the QAnon Conspiracy***".  CNN called QAnon a "deranged conspiracy cult".  CNN stated that some of "Q's conspiracy claims" were "actually based on age-old racist and anti-Semitic beliefs".  CNN asserted that QAnon, like the Nazis, promoted "ancient and dark biases and bigotry in World history".  CNN stated that QAnon supporters were detached from "reality" and had an utter "disregard" for the facts.  CNN alleged that QAnon followers were mentally ill and crazy.  CNN concluded that it was "abundantly clear" that QAnon was a "dangerous and violent movement" – a movement that has become "insurrectionist". [*Am. Compl., ¶ 3*].

**D.**     **The O'Sullivan Report**

On February 4, 2021, during *CNN Tonight* with Don Lemon, CNN published an "exclusive" report by O'Sullivan, entitled "***CNN Goes Inside A Gathering Of QANON Followers***".  In the O'Sullivan report, CNN falsely accused Lori of being a "follower" of

---

[5]     The CNN correspondent at the forefront of the efforts to proselytize about QAnon was Donie O'Sullivan ("O'Sullivan"). [https://twitter.com/donie].

the "dangerous", "violent", "racist", "extremist", "insurrectionist", "domestic terrorism" movement – **QAnon**. The O'Sullivan report juxtaposed a picture of Lori (and other members of the Flynn family) with numerous known QAnon disciples. The report included footage of the insurrectionist mob storming the Capitol on January 6, 2021. The report also included a truncated clip – selectively edited and altered by CNN – of the video posted to Twitter by General Flynn seven months earlier on July 4, 2020. CNN used Lori's picture and emblazoned the edited clip with a chyron that endorsed the defamatory meaning of CNN's statements:



The tone of the whole O'Sullivan report was that everybody that CNN was showing its audience, including Lori, is a "**QANON FOLLOWER**". [*Am. Compl., ¶ 4*].

In the altered clip used in the O'Sullivan report, CNN intentionally edited out the Oath to the United States Constitution *and* consciously omitted the words "God Bless America", fraudulently making it appear and insinuating that Lori pledged an oath of allegiance to QAnon and that Lori was a "**QANON FOLLOWER**". By its deceptive editing and production of the O'Sullivan report, CNN intended and endorsed the

defamatory meaning. Although it knew nothing about Lori, CNN consciously chose to include Lori in the edited clip and to make her a subject of the O'Sullivan report.[6]  In addition to expressly labeling Lori as a "**QANON FOLLOWER**", the altered CNN clip conveyed a very powerful (but untrue) message:  that Lori pledged her allegiance to QAnon.  In early February 2021, this was a very damaging association.  It was like calling someone a "communist" in the 1950s or a Nazi sympathizer in the 1940s.  The timing of CNN's accusation and the messaging was intentional.  CNN made no effort in the O'Sullivan report to dispel the defamatory implications.  The edited video clip with Lori's picture on full display and in full view, festooned with the chyron "**QANON FOLLOWER**" (which remained on screen the entire broadcast), was a premeditated attempt (a) to manufacture a connection between Lori and QAnon that did not exist and an event (a pledge of allegiance) that never happened, (b) to wildly exaggerate, sensationalize and misrepresent Lori's actions and beliefs, and (c) to create a frenzy about the Flynn family's involvement with a violent, extremist group, **QAnon**.  The O'Sullivan report intentionally misrepresented and actively sought to conceal what oath Lori was actually taking. [*Am. Compl., ¶¶ 7, 8*].

In addition to millions of cable TV viewers in Florida who watched *CNN Tonight* on February 4, 2021 and *CNN Newsroom* with Brooke Baldwin on February 5, 2021, CNN republished the O'Sullivan "exclusive" to hundreds of thousands of social media followers on Twitter (459,000) and millions of subscribers to CNN's YouTube channel (12,200,000) in Florida.  CNN anchor Brooke Baldwin praised O'Sullivan for his

---

[6]      CNN intended to dox the entire Flynn family.  CNN did not blur or attempt to hide Lori's face or identity or the faces and identities of any other Flynn family member.  If CNN did not intend to make Lori a visible subject of the O'Sullivan report, CNN would have blurred her face or cropped her from the clip. [*Am. Compl., ¶ 8 fn. 2*].

statements and encouraged him to "keep digging up these stories and just educating us on who **these people** are and how **they** think." (Emphasis added). [*Am. Compl., ¶ 9*].  CNN did not stop.  On March 9, 2021, O'Sullivan republished the report to his 289,000 Twitter followers.  On June 15, 2021, after Jack and Leslie Flynn filed suit against CNN and notified CNN that the statements in O'Sullivan report were false and defamatory, CNN and O'Sullivan brazenly republished the false and defamatory statements about Lori. [https://twitter.com/donie/status/1404889150113955851]; *Nunes v. Lizza*, 12 F. 4th 890, 901 (8th Cir. 2021) ("'Republication of a statement after the defendant has been notified that the plaintiff contends that it is false and defamatory may be treated as evidence of reckless disregard.' Restatement (Second) of Torts § 580A cmt. d (Am. L. Inst. 1977). Lizza tweeted the article in November 2019 after Nunes filed this lawsuit and denied the article's implication.  The pleaded facts are suggestive enough to render it plausible that Lizza, at that point, engaged in 'the purposeful avoidance of the truth.'").  CNN purposefully avoided the truth.  Instead of removing the defamatory broadcasts and tweets from the internet and social media, CNN left them up knowing that every day created fresh injuries. [*Am. Compl, ¶¶ 10, 11*].

Numerous people who watched the O'Sullivan report (either the original broadcast on *CNN Tonight* with Don Lemon or on February 5, 2021 when the report was republished on *CNN Newsroom* with Brooke Baldwin),[7] including Lori's siblings and friends, recognized Lori and understood that the defamatory statements referred to her specifically. [*Am. Compl., ¶ 12*].

---

[7]    Discovery in *Flynn v. CNN* (S.D.N.Y.) has revealed that the O'Sullivan report was also broadcast twice on Saturday, February 6, 2021, during *New Day Weekend* and again during *CNN Newsroom* with Ana Cabrera.

CNN's false statements subjected Lori to hatred, distrust, ridicule, contempt and disgrace.  Lori was sickened, insulted, embarrassed, humiliated and outraged by CNN's false accusations.  Two of her siblings, who watch CNN, believe that she is part of a violent extremist network.  Lori lost many good friends due to CNN's false QAnon narrative.  Banks refuse to do business with her because of the "reputational risk" created by CNN's broadcasts and publications.  The impact of CNN's false statements and defamatory implications have been extremely harmful, stressful and heartbreaking.  Not a day goes by where Lori does not relive her picture on CNN above the chyron, "**QANON FOLLOWER**".  She has to watch her back constantly.  People leave voicemails on her phone now with threats to her family. [*Am. Compl., ¶¶ 15, 16, 17*].

### III.  <u>STANDARD OF REVIEW</u>

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.  The threshold for surviving a motion to dismiss for failure to state a claim under Rule 12(b)(6) is a "low one." *Farmer v. Humana, Inc.*, 2022 WL 432126, at * 2 (M.D. Fla. 2022) (Scriven., J.) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A. et al.*, 711 F.2d 989, 995 (11th Cir. 1983)).  The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or a "formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* (citation omitted), to one that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.*   "While the Federal Rules of Civil Procedure require more specific pleading in certain cases, defamation cases are not among them." *Hatfill v. New York Times*, 416 F.3d 320, 329 (4th Cir. 2005) (cited with approval in *Selinger v. Kimera Labs, Inc.*, 2022 WL 34444, at * 10 (S.D. Fla. 2022)).

In evaluating the sufficiency of a complaint in light of a motion to dismiss. the District Court construes the complaint liberally, accepts the pleaded facts as true and construes the facts in the light most favorable to the plaintiff. *Yachera v. Westminster Pharmaceuticals, Inc.*, 477 F.Supp.3d 1251, 1262 (M.D. Fla. 2020) (Scriven., J.)  (citing *Quality Foods*, 711 F.2d at 994-995)).  Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint, there is a dispositive legal issue that precludes relief. *Id.* (citing *Neitzke v. Williams*, 490 U.S. 319, 326 (1989)).[8]

## IV.  DISCUSSION

"Freedom of the press under the First Amendment does not include absolute license to destroy lives or careers." *Curtis Pub. Co. v. Butts*, 388 U.S. 130, 170 (1967) (Warren, C.J., Concurring).  The press has no "special immunity from the application of

---

[8]      The scope of review on a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint and any exhibits attached. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (citation omitted).  Throughout its motion, CNN disregards the allegations in the amended complaint.  CNN refers to and relies upon multiple documents that are nowhere referenced in the amended complaint. CNN creates and defines phrases that suit its purposes, such as "QAnon Slogan" [*CNN Mot., p. 1*] and "#TakeTheOath Video" [*Id., p. 4*].  CNN also adds its own facts, such as "General Flynn took part in a Twitter movement called #TakeTheOath by sharing the Video". [*Id.*].  The Court should convert CNN's motion under Rule 12(d), and deny the motion without prejudice.

general laws", nor does it have a "special privilege to invade the rights and liberties of others." *Branzburg v. Hayes*, 408 U.S. 665, 684 (1972).  "No man has a right to state of another that which is false and injurious to him.  A fortiori no man has a right to give it a wider and more mischievous range by publishing it in a newspaper … The liberty of speech and the liberty of the press do not authorize malicious and injurious defamation." *Dexter v. Spear*, 7 F. Cas. 624-625 (1st Cir. 1825) (Story, J.).

A.    *COUNT I – Defamation Per Se*

Under Florida law, defamation has five elements: (1) publication; (2) falsity; (3) the statement was made negligently on a matter concerning a private individual; (4) actual damages; and (5) the statement must be defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008)).

CNN challenges several elements of Lori's cause of action.[9]  Those challenges will be addressed in order:

1.    *The False Statements Are "Of or Concerning" Plaintiff*

Regarding the second element, falsity, a false statement must be "of or concerning" the plaintiff. *Zimmerman v. Buttigieg*, 521 F.Supp.3d 1197, 1212 (M.D. Fla. 2021) (citations omitted).  In *Zimmerman*, the defendants argued that their tweets were not "about Zimmerman, do not mention his name at all, nor imply anything about him." The District Court agreed that "Zimmerman's name is nowhere mentioned in either

---

[9]      In connection with its motion to dismiss Count I – Defamation *Per Se* – CNN does not claim that Lori failed to sufficiently allege the elements of publication; that CNN made the statements negligently; or that Lori suffered actual damages.  CNN also concedes that Lori has alleged sufficient facts to demonstrate actual malice in support of her claim for punitive damages.  Accordingly, these matters will not be addressed in this Opposition.

tweet."   The Court held, however, that "it does not appear that there is a strict requirement, in Florida, that the author of the defamatory publication specifically identify a person by name for the statement to be actionable.  The case law merely indicates that the statement must concern a … private person." 521 F.Supp.3d at 1212 (citing *Rapp*, 997 So.2d at 1106)); *see Wolfson v. Kirk*, 273 So.2d 774, 779 (Fla. 4th DCA 1973) ("The defamed person need not be named in the defamatory words if the communication as a whole contains sufficient facts or references from which the injured person may be determined by the persons receiving the communication … We conclude that the allegations in the complaint are sufficient as a matter of pleading to indicate that the plaintiff was intended to be the subject of the defendant's remarks and was understood to be such by the listeners.").

Here, as in *Zimmerman*, the amended complaint sufficiently alleges that CNN's false statements are "of or concerning" Lori.  Even though Lori's name is not mentioned, her picture is prominently displayed immediately above the chyron that expressly reads, "**QANON FOLLOWER**".   Lori alleges that numerous people who watched the O'Sullivan report, including family members and friends, "recognized Lori and understood that the defamatory statements referred to her specifically." [*Am. Compl.,* ¶¶ *12, 26*].  The case of *Wilhoit v. WCSC, Inc.* is on point. 293 S.C. 34, 358 S.E.2d 397, 398-399 (S.C.App. 1987) (the alleged defamation consisted of a film clip of the plaintiff "with her face shielded by her hands, shown simultaneously with the broadcast which did not mention Wilhoit's name … We hold that whether the picture revealed Wilhoit to the extent that she could have been recognized by some one or more of the viewing audience was a question of fact for the jury, who saw and heard a video tape of the broadcast.  The

jury found against the appellants on this issue.  We hold that there is of record sufficient evidence to support this finding of fact by the jury.") (citing *Crump v. Beckley Newspapers, Inc.*, 173 W.Va. 699, 320 S.E.2d 70, 80 (W. Va. 1984) (libel "includes defamation through the publication of pictures or photographs") (numerous citations omitted));[10] *id. AIX Specialty Insurance Company v. Big Limo, Inc.*, 547 F.Supp.3d 757, 767-768 (S.D. Ohio 2021) ("a visual depiction, be that a drawing or a photograph, can be defamatory if it implies to a reasonable viewer that the person depicted in the drawing or photograph is involved in activity that impugns his or her integrity."); *Wandt v. Hearst's Chicago American*, 109 N.W. 70, 71 (Wis. 1906) (judgment in favor of plaintiff whose photograph was mistakenly included in an article accusing a person of being a "suicide fiend" and noting that "even though the name of the person referred to as a 'suicide fiend' was given, the juxtaposition of the plaintiff's photograph with the article was, in effect, a statement that the plaintiff was a 'suicide fiend'").

In *Peck v. Tribune Co.*, the defendant published a portrait of plaintiff that misidentified plaintiff as "Mrs. A. Schuman".  "Then, in quotation marks, 'After years of constant use of your Pure Malt Whisky, both by myself and as given to patients in my

---

[10]     The general rule applicable in situations as the one presented in this case is stated in 50 Am.Jur.2d, *Libel and Slander*, § 24 (1970):

> "[I]t is generally held that the publication of a person's portrait accompanied by the name of another, or not accompanied by any name, in connection with an article *which refers to the photograph and is defamatory,* entitles the person whose portrait is so published to maintain an action for libel.  In such a case, the publication of the plaintiff's portrait sufficiently identifies him [or her] as the subject of the accompanying text."

(Emphasis added).  Unlike the "Explanations" in *Mac Isaac v. Twitter*, 557 F.Supp.3d 1251, 1259 (S.D. Fla. 2021), CNN actually revealed Lori's identity when it displayed her picture in the O'Sullivan report and directly connected her to a domestic violent extremist group, **QAnon**.

15

capacity as nurse, I have no hesitation in recommending it as the very best tonic and stimulant for all local and run-down conditions,' etc., etc., with the words, 'Mrs. A. Schuman, 1576 Mozart st., Chicago, Ill.,' at the end, not in quotation marks, but conveying the notion of a signature, or at least that the words were hers."  The Supeme Court ruled that:

> "the insertion of the plaintiff's picture in the place and with the concomitants that we have described imported that she was the nurse and made the statements set forth … Therefore the publication was of and concerning the plaintiff, notwithstanding the presence of another fact, the name of the real signer of the certificate, if that was Mrs. Schuman, that was inconsistent, when all the facts were known, with the plaintiff's having signed or adopted it.  Many might recognize the plaintiff's face without knowing her name, and those who did know it might be led to infer that she had sanctioned the publication under an alias."

214 U.S. 185, 188-189 (1909) (citations omitted); *see id. Manzari v. Associated Newspapers, Ltd.*, 2014 WL 12967363, at * 7 (C.D. Cal. 2014) ("Initially, the Court would reject Defendant's contention that the Article is not 'of and concerning' Plaintiff because the Article was not actually written about her.  While Defendant is correct that the substantive reporting in the Article relates to the porn industry shutdown and the positive HIV test result, there is little doubt that – given the prominence of Plaintiff's photo and the overarching headline – the Article's titular mention of an HIV-positive performer could reasonably be interpreted as referring to Plaintiff.").

Here, as in *Wilhoit, Crump*, *Wandt*, *Peck* and *Manzari*, Lori has sufficiently alleged that the O'Sullivan report identifies her as one of the subjects of the chyron, *i.e.*, a "**QANON FOLLOWER**", by publishing her photo immediately above the chyron.[11]

---

[11]    Although *Wilhoit* is cited by Valerie Flynn in her opposition to CNN's motion to dismiss in the companion case [*Case 8:22-00343-MSS-SPF (ECF No. 36)*], CNN did not file a reply to Valerie Flynn's opposition.  Likewise, CNN completely ignores *Wilhoit* in its motion to dismiss in this action.

*Compare Am. Complaint*, ¶ *12 with Hudson v. Guy Gannett Broadcasting Co.*, 521 A.2d 714, 715-716 (Maine 1987) (an affidavit from the plaintiff's co-worker testifying that he had seen the broadcast and believed that the plaintiff had been involved with illegal drugs was sufficient to raise an issue of material fact concerning whether the broadcast was 'of and concerning' the plaintiff)).

### 2.    *Lori Is Not a QANON Follower (Am. Compl., ¶ 14)*

The amended complaint repeatedly and emphatically alleges that CNN's statements are false, and why they are false. [*Am. Compl., ¶¶ 4, 7, 8, 13, 14, 15, 16, 17, 26, 28*].   As the Southern District of New York correctly held in *Flynn v. CNN*, these allegations must be accepted as true. *Flynn*, 2021 WL 5964129 at * 4 ("Because the Court accepts the Flynns' allegation that they are not QAnon followers as true, the Flynns have plausibly alleged that CNN's statement was false.").

### 3.    *CNN's Statements Are Defamatory*

A statement is defamatory when its "gist" or "sting" is defamatory. *Greene v. Times Publ'g Co.*, 130 So.3d 724, 729-730 (Fla. 3rd DCA 2014).   A defamatory statement is a statement that "tends to harm the reputation of another by lowering him or her in the estimation of the community or, more broadly stated, one that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Rapp*, 997 So.2d at 1108-1109.   A statement that does such "on its face" can be referred to as defamatory *per se*, and extrinsic proof is not required to establish the statement's defamatory meaning. *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474061, at * 16 (S.D. Fla. 2014); *see also Zimmerman*, 521 F.Supp.3d at 1214 ("defamation *per se* is not confined to statements that someone committed a crime, as statements that tend to subject

a person to hatred, distrust, ridicule, contempt or disgrace can suffice. Certainly, a statement that attributes racist and white supremacist attributes to someone could subject that person to such harm.") (citation omitted); *Sirer v. Aksoy*, 2021 WL 4952610, at * 4 (S.D. Fla. 2021) ("in the Complaint, Plaintiff alleges that Defendant posted a video on his YouTube channel accusing Plaintiff of being a member of an organization designated as a terrorist organization … Plaintiff alleges that his reputation has been harmed by Defendant's statements, and that they pose a threat to Plaintiff's and his family's safety. Plaintiff need not allege more.") (citation omitted); *Coker v. Barr*, 2020 WL 9812034, at * 8 (D. Colo. 2020) ("it is hard to imagine a greater stigma than being associated with terrorism in our post-9/11 world."); *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 627 (D.C. Cir. 2001) ("If indeed the story is fabricated, we cannot say that it is not reasonably capable of any defamatory meaning—it arguably makes appellant appear highly volatile, irrational, unsound and otherwise 'odious, infamous, or ridiculous.'").

CNN's statements connecting Lori to the domestic violence extremists, nationally condemned by Congress, who were prominent among the "mob" that attacked the United States Capitol on January 6, are clearly defamatory *per se*. As Magistrate Judge Cave observed in *Flynn v. CNN*, the "tone" of the "whole" CNN report is "these people, everybody that we're showing you is a QAnon follower." [*Exhibit "A", Tr., pp. 7:9-11, 9:3-10*;[12] *see id. Am. Compl.,* ¶ *9 ("keep digging up these stories and just educating us on who **these people** are and how they think.")*]. At no point during the O'Sullivan report does CNN ever make it clear that Lori was not a "**QANON FOLLOWER**". Magistrate Judge Cave looked no further than the four corners of the complaint. She understood that

---

[12]     A true copy of the transcript of the motion hearing before Magistrate Judge Cave is attached hereto as *Exhibit "A"*.

by labeling the Flynns "QAnon followers", CNN linked the Flynns to the "riot on January 6":

```
            MS. BOLGER:   Oh, the other thing, of course, is
that there's nothing in the report that talks about the
words "extremism" or "violence" or "insurrection" or any of
those words are not actually in the reports.  What the
plaintiff is doing is imposing them from that Anderson
Cooper discussion on January 31st.  But, of course, they're
not in the report --
            THE COURT:   Well, they don't say that, but there
are pictures of the riot on January 6th.  There's about a
minute of footage of January 6th in the video.
            MS. BOLGER:   But they certainly don't call the
plaintiffs extremists or violent or racist in an overt way
in the report.  The words just aren't there.
            THE COURT:   The words aren't there, but I mean,
the images are there.
            MS. BOLGER:    The images don't include the
plaintiffs, your Honor.
            THE COURT:   It's a three-minute video.  The
plaintiffs are in the video, and there's a minute of
January 6th in there.  It's hard to parse that out.
```

[*Exhibit "A"*, *Tr., p. 56:4-23*].  Magistrate Judge Cave did not waver in her view of CNN's statements:

```
        THE COURT:  But the picture is there, and it says
"QAnon follower" below it.  You keep switching back and
forth.  One minute you want me to look at the whole video;
the next minute you want me to only look at what was --
        MS. BOLGER:  We want you to look at the whole
video, your Honor.  I always want you to look at the whole
video.  I want you to look at the whole video because, one,
you're required to under the law that says that you're
required to do that, Mann v. Abel, right?  That's the --
and the Bray case.  That is the rule; you are required to
look at the whole video.  But the of-and-concerning
analysis looks to whether the defamatory statements are of
and concerning the plaintiff.  It's not whether the
plaintiff is just in the video; it's what the video says
about the plaintiff.  And I would argue, your Honor -- and
I know I'm not convincing you -- that the video only -- the
only thing the video says about the plaintiffs is that they
were standing next to Michael Flynn, nothing else.
        THE COURT:  All right, yes, you're right; you're
not convincing me on that.
```

[*Exhibit "A"*, *Tr., p. 57:6-25*].

In *Flynn v. CNN*, both the Magistrate Judge and the District Court found that the plaintiffs "plausibly alleged that CNN's statement was defamatory. *See* R&R at 33 ("[F]alsely implying a connection to a violent extremist group can be defamatory."). 2021 WL 5964129 at * 4.  Those rulings fully comport with the analysis in *Zimmerman*, *Sirer*

and other Florida cases. *See Axelrod v. Califano*, 357 So.2d 1048, 1050 (Fla. 1st DCA 1978) ("When the words published concerning a person tend to degrade him, bring him into ill repute, destroy confidence in his integrity, or cause other like injury, such language is actionable per se").

### 4.   *Lori Sufficiently Alleges Special Damages*

Florida law recognizes two classes of compensatory damages recoverable in a defamation action: general damages and special damages.  General damages are those which the law presumes must naturally, proximately and necessarily result from publication of the libel or slander, including mental anguish and injury to reputation.[13] Special damages do not result by implication of law from a wrongful publication and, unlike general damages, must be specially pled. *Bobenhausen v. Cassat Ave. Mobile Homes, Inc.*, 344 So.2d 279, 281 (Fla. 1st DCA 1977) (citations omitted).

It is well-established that in pleading special damages a plaintiff "need only allege what *type* of special damages [she] seeks (lost support and services) to put Defendant on notice of the claim." *Yergey v. Brinker Florida, Inc.*, 2020 WL 10817751, at * 2 (M.D. Fla. 2020) (emphasis in original); *see Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25, 33 (5th Cir. 1973) (plaintiff's complaint specifically alleged that he "suffered special damages of incurring pecuniary loss in terms of total hours expended in removing from the minds of certain business associates the harmful effect of the false statements"); *Firestone v. Time, Inc.*, 414 F.2d 790, 791 (5th Cir. 1969) ("We are of the opinion that appellant's allegations of injury to her pending marital litigation constitute allegations of 'special damages' for libel per quod which are sufficient to withstand a motion to

---

[13]   CNN agrees that Lori has adequately alleged general damages.

dismiss.  While it may be difficult indeed to prove these damages, we are not convinced that they are so speculative that she could not prove them under any circumstances.").

Here, Lori sufficiently alleges that she has suffered special damages.  The amended complaint states that banks refused to do business with Lori because of the "reputational risk" created by CNN's publication and republication of false statements and that Lori's credit cards were canceled. [*Am. Compl. ¶¶ 17, 30 fn. 7*].

**B.**  ***COUNT II – Defamation By Implication***

Defamation can also occur by implication under Florida law.  A defendant may be held responsible for a defamatory implication if the defendant: "[1] juxtaposes a series of facts so as to imply a defamatory connection between them, or [2] creates a defamatory implication by omitting facts." *Rapp*, 997 So.2d at 1106.  Defamation by implication can also arise when "literally true statements are conveyed in such a way as to create a false impression." *Id.* at 1108 (quoted and cited in *Jacoby v. Cable News Network, Inc.*, 537 F.Supp.3d 1303, 1312 (M.D. Fla. 2021)).

**1.**  ***CNN Created A False Impression and Omitted Material Facts***

The amended complaint suffices to allege a claim of defamation by implication under Florida law.  Lori alleges that CNN juxtaposed a series of true facts so as to imply a defamatory connection between them.  In the context of a broadcast about a "**GATHERING**" of "**QANON FOLLOWERS**", including "at least two people who would go on to Washington D.C. on January 6", CNN displayed a full body image of Lori and other Flynn family members at the Fourth of July gathering above the chyron.  CNN did not explain to viewers why Lori was included in the O'Sullivan report.  Lori did repeat the words, "where we go one we go all".  Lori's hand was raised.  She was taking

an Oath. All true facts. However, CNN intentionally and selectively edited and altered General Flynn's July 4, 2020 video. CNN omitted material facts in a way that intentionally conveyed a preconceived false meaning and implication – that Lori is a "**QANON FOLLOWER**" _and_ that in the video clip she pledged her allegiance to violent extremists who stormed the Capitol on January 6, 2021. CNN altered the video and omitted the facts in 2021 in order to promote CNN's narrative about violent extremists tied to the Republican Party, and, in so doing, CNN clearly misrepresented the actual historical events that took place seven (7) months earlier on the Fourth of July 2020 in the Flynn backyard, turning a family celebration of love, solidarity and patriotism into a pledge of allegiance to terrorists. CNN's intentional omissions render the O'Sullivan report untrue as to Lori. CNN claims that its omissions arguably cast Lori in a _better_ light than does the full, unedited Fourth of July video. This is not true. This dispute presents an issue of fact for the Jury. Although CNN used Lori's image to support its narrative, CNN published no disclaimer and made no effort to clarify that it did not mean to portray Lori as a "**QANON FOLLOWER**". [_Am. Compl., ¶ 39_]. The _Zimmerman_ Court did hold that "causes of action for defamation by implication and defamation _per se_ are mutually exclusive", but Lori alleges no contradictory **_facts_**. As CNN recognizes, Lori is entitled to plead alternative theories of recovery.

### 2.    _CNN Intended and Endorsed The Defamatory Implication_

Contrary to CNN's suggestion, the tone, intended meaning and endorsement of the defamatory implication of the O'Sullivan report is clear from the words and images used by CNN, including the chyron. _See Nunes v. Lizza_, 12 4th 890, 899 (8th Cir. 2021) ("Nunes has plausibly alleged that Lizza and Hearst intended or endorsed the implication

that Nunes conspired to cover up the farm's use of undocumented labor.  The complaint points to the article's 'click-bait headline' … its discussion of his efforts to conceal the farm's move to Iowa, and its claim that the farm employs undocumented labor.  The manner in which the article presents the discussion of the farm's use of undocumented labor permits a plausible inference that Lizza and Hearst intended or endorsed the implication.   Thus, the complaint states a plausible claim for defamation by implication.").

### 3.   *CNN Was Negligent*

Finally, because Lori is a private individual, she need only allege that CNN acted negligently in creating the defamatory implication. *Rapp*, 997 So.2d at 1106.  Negligence in this context means the "publication of false and defamatory statements without reasonable care to determine their falsity." *Boyles v. Mid-Fla Television Corp.*, 431 So.2d 627, 634 (Fla. 5th DCA 1983) ("the plaintiff clearly alleged in his complaint that the broadcaster knew or should have known that the statements were false and defamatory, thereby meeting the standard of negligence") (citation omitted), *aff'd*, 431 So.2d 627 (Fla. 1985); *Miami Herald Pub. Co. v. Ane*, 423 So.2d 376, 390 (Fla. 3rd DCA 1982) ("We deal, in our view, with a clear case of journalistic negligence, the evidence of which in this case was more than ample to go to the jury for final resolution.").

The amended complaint alleges a plethora of facts which, accepted as true, demonstrate that CNN acted without reasonable care.  Prior to February 4, 2021, no news organization had reported that Lori had *any* connection to QAnon.  CNN knew that Lori took an Oath to the U.S. Constitution on July 4, 2020.  CNN knew that General Flynn had just won a huge victory in his criminal case, and that his attorney, Sidney Powell, had

expressly denied that the Oath at the barbecue had anything to do with QAnon.   CNN did no investigation because it hastily concluded that the words "where we go one, we go all", spoken by the wife of General Flynn, proved that Lori was a "QAnon follower". CNN did not even bother to call Lori to determine whether she had any connection to QAnon.   Given the seriousness of the events of January 6 and the likelihood that any association with the "insurrectionist mob" would harm Lori's reputation, CNN's actions were grossly negligent. [*Am. Compl., ¶ 34*]; *compare Duffy v. Fox News Networks, LLC*, 2015 WL 2449576, at * 3 (M.D. Fla. 2015) ("Plaintiffs allege that Fox acted negligently because it made the Statements "with knowledge of [their] falsity or with a gross, blatant and reckless disregard so to [their] truth or falsity" and without conducting "any inquiry or investigation to determine [their] truth or falsity.""); *Ane*, 423 So.2d at 389 (the media defendant made no attempt to verify hearsay information and ignored evidence that plaintiff had no connection to the truck used in the crime); *Evanger's v. Thixton*, 412 F.Supp.3d 889, 899 (N.D. Ill. 2019) ("Evanger's alleges that 'Thixton knew, or deliberately and recklessly failed to verify' the fact that Evanger's did not manufacture Wild Calling cat food.  That allegation goes beyond negligence").

## CONCLUSION AND REQUEST FOR RELIEF

For the reasons stated above, Plaintiff, Lori Flynn, respectfully requests the Court to deny CNN's motion to dismiss.


DATED:      July 1, 2022

Respectfully Submitted,

LORI FLYNN

By:____*/s/ Steven S. Biss*_____
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:  (804) 501-8272
        Facsimile:  (202) 318-4098
        Email:  stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

        Jason R. Kobal, Esquire
        KOBAL LAW, P.A.
        12169 W. Lindebaugh Ave.
        Tampa, FL 33626
        (813) 873-2440
        koballaw@yahoo.com
        Florida Bar No.: 0542253

        *Counsel for the Plaintiff*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 1, 2022 a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to counsel for the Defendant and all interested parties receiving notices via CM/ECF.

By:   */s/ Steven S. Biss*  _____
        Steven S. Biss (VSB # 32972)
        300 West Main Street, Suite 102
        Charlottesville, Virginia 22903
        Telephone:  (804) 501-8272
        Facsimile:  (202) 318-4098
        Email:  stevenbiss@earthlink.net
        (*Admitted Pro Hac Vice*)

        Jason R. Kobal, Esquire
        KOBAL LAW, P.A.
        12169 W. Lindebaugh Ave.
        Tampa, FL 33626
        (813) 873-2440
        koballaw@yahoo.com
        Florida Bar No.: 0542253

        *Counsel for the Plaintiff*