## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**LORI FLYNN,**

     **Plaintiff,**

v.                                                          **Case No: 8:22-cv-343-MSS-SPF**

**CABLE NEWS NETWORK, INC.,**

     **Defendant.**

_____

### ORDER

    **THIS CAUSE** comes before the Court for consideration of Defendant Cable News Network Inc.'s Motion to Dismiss First Amended Complaint, (Dkt. 46), and the Response in opposition thereto filed by Plaintiff, Lori Flynn. (Dkt. 47) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion to Dismiss.

### I.    BACKGROUND

#### A.    Factual Background

    Plaintiff, a citizen of Florida, is a private individual and wife to General Michael Flynn. (Dkt. 22 at ¶ 19)[1] Plaintiff's suit against Cable News Network, Inc. ("CNN") arises from CNN's publication on February 4, 2021, of an exclusive report by correspondent Donie O'Sullivan ("O' Sullivan"), entitled "CNN Goes Inside A

---

[1] Dkt. 22 refers to Plaintiff's Amended Complaint filed under Case No: 8-22-cv-512-MSS-AEP. As of June 29, 2022, Plaintiff's case became consolidated under Case No: 8-22-cv-343-MSS-SPF.

Gathering Of QANON Followers" (the "Publication"). (Id. at ¶ 4) The Publication includes a clip of a video posted to Twitter by General Flynn on July 4, 2020 (the "Original Video"). (Id.) According to Plaintiff, General Flynn posted the Original Video, which was filmed during a Fourth of July barbeque at Plaintiff's sister-in-law's home in Newport County, Rhode Island. (Id. at ¶ 5) In the Original Video, Plaintiff and others present at the July Fourth Barbeque, "took the Oath to the United States Constitution" and "[a]fter finishing the Oath," General Flynn stated, "where we go one, we go all." (Id. at ¶ 6) Plaintiff repeated the phrase but claims that "[s]he did not know that anyone considered it to be a QAnon slogan." (Id.)

On February 4, 2021, CNN aired the Publication. (Id. at ¶ 4) Plaintiff claims that in Defendant's broadcast, CNN falsely accused her of being what she describes as a "'follower' of the 'dangerous', 'violent', 'racist', 'extremist', 'insurrectionist', 'domestic terrorism' movement – QAnon." (Id.) Plaintiff claims the Publication "juxtaposed a picture of [Plaintiff] (and other members of the Flynn family) with numerous known QAnon disciples." (Id.) The Publication includes footage of what Plaintiff describes as an "insurrectionist mob storming the United States Capitol[,]" and a clip – "selectively edited and altered by CNN" – of the Original Video. (Id.) Plaintiff claims that "CNN used [Plaintiff's] picture and emblazoned the edited clip with a chyron that endorsed the defamatory meaning of CNN's statement" and that "[t]he tone of the whole [Publication] was that everybody that CNN was showing its audience is a 'QANON FOLLOWER'." (Id.) The chyron beneath the video stated:

"CNN GOES INSIDE A GATHERING OF QANON FOLLOWERS" (the "Chyron"). (Id.)

### B. Procedural History

#### 1. Plaintiff's Amended Complaint

In the Amended Complaint, Plaintiff brings two claims against Defendant: defamation *per se* ("Count I") and defamation by implication ("Count II"). (Dkt. 22) She seeks compensatory and punitive damages in the sum of $100 million. (Id.) In Count I, Plaintiff alleges that the Publication amounts to defamation *per se* because she claims "[t]he statements [therein] tend to subject [Plaintiff] to hatred, distrust, ridicule, contempt, or disgrace." (Id. at ¶ 30) Specifically, Plaintiff alleges that by using her image, "an edited video clip and a flashy chyron, CNN falsely stated or implied and insinuated that [Plaintiff] was an acolyte, adherent, convert and disciple of QAnon – a 'QANON FOLLOWER' – or was linked to and involved in or with [them]." (Id. at ¶ 26) She claims that the Publication was false because, despite the fact that she held up her hand and recited a statement alleged to be associated with QAnon, she is not a QAnon follower and never pledged an oath of allegiance to QAnon. (Id. at ¶ 28) Plaintiff claims CNN acted negligently in failing to obtain independent evidence to corroborate that she was a follower of QAnon. (Id. at ¶ 34) Plaintiff alternatively alleges that CNN acted with actual malice in publishing the statements because "[i]n spite of its actual knowledge [that the statements were

false]," CNN "misrepresented that [she] was a QAnon disciple or adherent and that she pledged allegiance" to QAnon. (<u>Id.</u> at ¶ 35)

In Count II, Plaintiff alleges that in the Publication "CNN juxtaposed a series of true facts so as to imply a defamatory connection between them." (<u>Id.</u> at ¶ 39) Plaintiff contends that CNN took the true facts of Plaintiff's repeating the words, "where we go one[,] we go all[,]" raising her hand, and taking of an oath in the General Flynn's July 4, 2020 video, but "intentionally and selectively edited and altered" the video. (<u>Id.</u>) Plaintiff argues that "CNN omitted facts in a way that intentionally conveyed a preconceived false meaning and implication – that [Plaintiff] is a 'QANON FOLLOWER' and that in the video clip she pledged her allegiance to QAnon." (<u>Id.</u>) She contends that CNN "published no disclaimer and made no effort to clarify that it did not mean to portray" her as a QAnon follower. (<u>Id.</u>) Plaintiff claims that these "statements and actions constitute defamation by implication" and have resulted in "actual injuries . . . insult, pain, embarrassment, humiliation, emotional suffering, injury to her reputation, lost future earnings and diminished earning capacity . . . in the sum of $25,000,000[.]" (<u>Id.</u> at ¶¶ 40–41)

## 2.   <u>Defendant's Motion to Dismiss</u>

In the Motion to Dismiss, Defendant argues that Plaintiff fails to plead the elements of defamation *per se* or defamation by implication. (Dkt. 46 at 9) First, as to the defamation *per se* claim, Defendant argues that Plaintiff fails to plead that the Publication is "of and concerning her." (<u>Id.</u> at 11) Defendant contends that Plaintiff's allegation that she was the "subject" of the Publication is inaccurate because she is

"barely seen, is not identified, and is not heard saying anything." (Id. at 12) Consequently, she fails to make a showing that the allegedly defamatory words in the chyron are of and concerning her. (Id.) Defendant argues that Plaintiff's defamation *per se* claim fails because she has not pleaded a false, defamatory statement of fact. (Id. at 13) Defendant contends that "the actual content of the [Publication] – as Plaintiff herself pleads – is true." (Id.) Specifically, Defendant explains that Plaintiff admits she was in attendance when General Flynn said, "where we go one, we go all," that "she herself said the Slogan, and General Flynn posted the [Original] Video to Twitter." (Id.) Additionally, Defendant argues that Plaintiff fails to allege a defamation *per se* claim because she relies on extrinsic evidence to establish the Publication's defamatory meaning. (Id. at 16–17) Defendant contends that, to the extent Plaintiff's defamation *per se* claim can be converted into a claim for defamation *per quod*, such a claim fails because Plaintiff has not pleaded special damages.[2] (Id. at 17–19)

Finally, Defendant argues that Plaintiff does not plead defamation by implication because she: (1) fails to allege the literal truth of the juxtaposed facts; (2) does not allege facts to show that CNN intended the alleged defamatory implication, and (3) fails to plausibly allege negligence. (Id. at 19-23)

---

[2] While the Court notes that Plaintiff does not plead defamation *per quod*, the Court will also analyze whether Plaintiff adequately pleads a defamation *per quod* claim. Daniels v. HSN, Inc., No. 818CV3088T24JSS, 2020 WL 533927, at *5 (M.D. Fla. Feb. 3, 2020) (permitting a plaintiff to proceed on his defamation *per quod* claim where the alleged statement was not *per se* defamatory).

In response, Plaintiff contends that the Publication is "of and concerning" her because her image is "prominently displayed immediately above" the Chyron that contains the words "QANON FOLLOWER," and that numerous people have recognized her from the Publication and have "understood that the defamatory statements referred to her specifically." (Dkt. 47 at 13-14) She contends that CNN's statements are false because she is not a QAnon follower, which allegation the Court must accept as true at this stage of the litigation. (Id. at 17) Plaintiff further claims that connecting her to what she describes as the "domestic violence extremists, nationally condemned by Congress, who were prominent among the 'mob' that attacked the United States Capitol on January 6 [is] clearly defamatory *per se*." (Id. at 18) In terms of special damages, Plaintiff contends that "banks refused to do business with [her] because of the reputational risk created by CNN's publications and republications of false statements and that [her] credit cards were cancelled." (Id. at 22) (citing to Dkt. 22, Amended Complaint at ¶¶ 17, 30 fn. 7)

Regarding her defamation by implication claim, Plaintiff argues CNN created a false impression that she was a QAnon follower, omitted material facts that would tend to show she was not a QAnon follower, and further falsely implied "she pledged her allegiance to violent extremists who stormed the Capitol on January 6, 2021." (Id. at 22-23) She contends that the "tone, intended meaning and endorsement of the defamatory implication" of the Publication are "clear from the words and images used by CNN, including the [C]hyron." (Id. at 23) Finally, Plaintiff asserts that CNN was negligent in creating the defamatory implication because there were no news

publications reporting that she was a QAnon follower and CNN did not conduct any research or investigation of Plaintiff before disseminating the Publication. (Id. at 24-25)

## II.      STANDARD OF REVIEW

### A.      Federal Rule of Civil Procedure 12(b)(6)

The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is "exceedingly low." Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A., et al, 711 F.2d 989, 995 (11th Cir. 1983). A plaintiff must plead only enough facts to state a claim to relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 560–63 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in Conley v. Gibson, 355 U.S. 41, 45–46 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is still obligated to prove the "grounds" for his entitlement to relief, and a "formulaic recitation of the elements of a cause of action will not do." Berry v. Budget Rent A Car Sys., Inc., 497 F. Supp. 2d 1361, 1364 (S.D. Fla. 2007) (quoting Twombly, 550 U.S. at 553–556). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the court must accept the well pleaded facts as true and construe them in the light most favorable to the plaintiff. Quality Foods, 711 F.2d at 994–95. However, the court should not assume that the plaintiff can prove facts that were not alleged. Id. Thus, dismissal is warranted if, assuming the truth of the factual allegations of the plaintiff's complaint,

there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989).

### III.   DISCUSSION

#### A.   Choice of Law

"It is well established that when a federal court considers a case that arises under its diversity jurisdiction, the court is to apply state substantive law and federal procedural law." Royalty Network, Inc. v. Harris, 756 F.3d 1351, 1357 (11th Cir. 2014). Thus, Florida law provides "the substantive law to the merits of [p]laintiff's defamation claim." Duffy v. Fox News Network, LLC, No. 6:14-CV-1545-ORL-37, 2015 WL 5009101, at *3 (M.D. Fla. Aug. 21, 2015).

#### B.   Defendant's Motion to Dismiss as to Count I

Defendant moves to dismiss Count I for failure to state a claim for either defamation *per se* or defamation *per quod*. (Dkt. 46) For the reasons discussed below, the Court finds that Plaintiff has failed to adequately allege claims for defamation *per se* or defamation *per quod*. As such, Defendant's Motion to Dismiss as to Count I is **GRANTED**.

Defamation, including libel and slander, "may generally be defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." Byrd v. Hustler Mag., Inc., 433 So. 2d 593, 595 (Fla. 4th DCA 1983). "A false statement of fact is the *sine qua non* for recovery in a defamation action." Id. To state a claim for defamation under Florida law, a plaintiff must allege five elements: "(1) publication; (2) falsity; (3) the statement was made with

knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing to Jews For Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008); see also Duffy v. Fox News Networks, LLC, No. 6:14-CV-1545-ORL-37T, 2015 WL 2449576, at *3 (M.D. Fla. May 21, 2015) (citing the same five elements and explaining that a plaintiff must allege them to survive a motion to dismiss).

"Under Florida law, a claim for defamation may be categorized in one of two ways: defamation *per quod* or defamation *per se*." Centennial Bank v. ServisFirst Bank Inc., No. 8:16-CV-88-T-36JSS, 2019 WL 13037034, at *6 (M.D. Fla. Apr. 17, 2019). A publication rises to the level of defamation *per se* "if, when considered alone and without innuendo, it (1) charges that a person has committed an infamous crime; (2) tends to subject one to hatred, distrust, ridicule, contempt, or disgrace; or (3) tends to injure one in his trade or profession." Daniels v. HSN, Inc., No. 818CV3088T24JSS, 2020 WL 533927, at *3 (M.D. Fla. Feb. 3, 2020); see also Richard v. Gray, 62 So. 2d 597, 598 (Fla. 1953) (explaining that statements are defamation *per se* when, "considered alone without innuendo, they contain (1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, disgust, ridicule, contempt or disgrace, or (4) injury a person in his trade or profession"). In a defamation *per se*

case, "consideration is given only to the four corners of the publication." Daniels, 2020 WL 533927 at *3.

"Defamation *per quod* requires explanation of context. In *per quod* actions, the words used, given their natural and common meaning, are not inherently injurious, but rather are injurious only as a consequence of extrinsic facts, such as innuendo." Id.; see also Scobie v. Taylor, No. 13-60457-CIV, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013) (explaining that defamation *per quod* "requires an additional explanation of, or an interpretation of innuendo suggested by, the words used to demonstrate the defamatory meaning or that the plaintiff is the subject of the statement").

Defendant argues that Plaintiff has failed to plausibly allege that the defamatory meaning she ascribes to the Publication is *per se* defamatory because the Amended Complaint "is replete with references to extrinsic evidence." (Dkt. 46 at 16–17) Defendant asserts that Plaintiff's "essential assertion of falsity and defamatory meaning", as alleged in paragraph 4 of the Amended Complaint, "is alleged to be defamatory only by reference to other sources[.]" (Id. at 17) (citing to Plaintiff's references to the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security ("DHS"), Dkt. 22 at ¶ 1; the Wall Street Journal, id.; 60 Minutes, id.; and several different CNN telecasts and articles, id. at ¶¶ 2-3, 25) In response, Plaintiff argues that Defendant's statements connecting her to what she describes as "the domestic violence extremists, nationally condemned by Congress,

who were prominent among the 'mob' that attacked the United States Capitol are clearly defamatory *per se*." (Dkt. 47 at 18)

In the Amended Complaint, Plaintiff alleges that CNN's false statements "tend to subject [her] to hatred, distrust, ridicule, contempt, or disgrace." (Dkt. 22 at ¶ 30) However, as accurately argued by Defendant, Plaintiff relies upon several extrinsic sources to provide evidence of the defamatory nature of the Publication, particularly a separate CNN "Special Report" from January 31, 2021. (Id. at ¶ 3) In this report, Plaintiff claims that CNN described QAnon as a "deranged conspiracy cult", "racist", "dangerous and violent" and a movement that had become "insurrectionist." (Id.) To contextualize her defamation *per se* for the statements at issue in the Publication, Plaintiff incorporates the conclusions of the January 31, 2021 CNN Special Report. (Id. at ¶ 4) Additionally, Plaintiff refers to and incorporates into the Amended Complaint references by the FBI and the DHS to QAnon as a "domestic violence extremist group" and a "domestic terrorism threat." (Id. at ¶ 1)

On this point, the Court finds instructive the December 16, 2021 Order entered in Flynn v. Cable News Network, No. 1:21-CV-2587-GHW, 2021 WL 5964129 (S.D.N.Y. Dec. 16, 2021) (the "S.D.N.Y. Suit"). In the S.D.N.Y. Suit, Michael Flynn's brother, Jack, and Jack's wife, Leslie Flynn, filed a similar suit against CNN concerning the Publication asserting a defamation *per se* claim and a false light claim under Rhode Island law. Flynn, 2021 WL 5964129 at *1. In dismissing the claims, citing Rhode Island law, the court explained that "defamation

*per se* is distinguished from defamation because in the former, a plaintiff can establish liability without a showing of special or pecuniary damages because those damages are presumed." Id. at *5. "This presumption rests on the fact that in a defamatory *per se* situation, the statements are so egregious and reputation shattering that there can be no question that the defamed party's reputation suffered as a result." Id. The court found that the statements alleged in the complaint did not constitute defamation *per se* under Rhode Island law because they allegedly disparaged the Flynns' character in general and were not peculiarly injurious to the Flynns in their trade or profession. Id. at *6.

Here, this Court finds that CNN's alleged statement that Plaintiff is a QAnon follower is not inherently injurious but is only injurious "as a consequence of extrinsic facts," such as the January 31, 2021 CNN Special Report relied on by Plaintiff to explain the defamatory nature of the Publication. See Daniels, 2020 WL 533927 at *3. This additional contextual material falls outside the "four corners" of the Publication. Manhattan Cap. Equities, Inc. v. JBTX3 Holdings, LLC, No. 20-60926-CIV, 2021 WL 789943, at *3 (S.D. Fla. Feb. 26, 2021). As explained, a *per se* defamation claim includes words that "upon their face and without the aid of extrinsic proof [are] injurious." Boyles, 431 So. 2d at 633. Defamation *per se* statements are "so obviously defamatory" they do not require references to extrinsic evidence. Samara v. Juice Plus+ Co., LLC, No. 6:20-CV-520-ORL-31-EJK, 2020 WL 13389215, at *2 (M.D. Fla. Sept. 9, 2020). As such, the Court finds that Plaintiff fails to state a claim for defamation *per se*.

Of course, under Florida law, even if a court does not find a statement qualifies as defamation *per se*, a court will permit a defamation *per quod* claim to proceed if the plaintiff alleges "items of *special* as well as general damages." Hood v. Connors, 419 So. 2d 742, 743 (Fla. 5th DCA 1982) (emphasis added); see also Daniels, 2020 WL 533927 at *4 (permitting plaintiff, who failed to adequately plead defamation *per se*, to "proceed on his defamation claim *per quod* if he c[ould] show that he has actually suffered damages due to [defendant's] statement"). Consequently, the Court must next determine whether Plaintiff has adequately pleaded special damages.

To survive a motion to dismiss, a Plaintiff must "specifically state[ ]" the item of special damage claimed. See Fed. R. Civ. P. 9(g). "Special damages are *actual, out of pocket losses* which must be proven by specific evidence as to the time, cause and amount; whereas general damages encompass the more customary harms inflicted by a defamatory falsehood, such as impairment of reputation and standing in the community." Falic v. Legg Mason Wood Walker, Inc., 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) (emphasis added). Special damages' "chief characteristic . . . is a realized or liquidated loss." Id.

In her Amended Complaint, Plaintiff seeks special damages, actual damages and punitive damages. (Dkt. 22 at ¶ 18) She alleges the Publication "jeopardized [her] safety, humiliated and embarrassed her and harmed her reputation, causing actual injuries and pecuniary loss." (Id. at ¶ 33) Her alleged actual injuries include "insult, pain, embarrassment, humiliation, emotional suffering, injury to her

13

reputation, lost future earnings, and diminished earning capacity, costs and other out-of-pocket expenses." (Id. at ¶ 36) Plaintiff further claims that the Publication caused her to change her phone number, (id. at ¶ 19) and caused J.P. Morgan Chase Bank ("Chase Bank") to cancel her credit cards "because of the 'reputational risk' that affiliation with Plaintiff could bring the bank." (Id. at ¶ 30, n. 7) However, "[t]he bank later claimed it was an 'error' and reinstated [Plaintiff's] account." (Id.)

Special damages are "actual, out of pocket losses" characterized by a "realized or liquidated loss." Falic, 347 F. Supp. 2d at 1268. Special damages exist where the plaintiff can show "a loss of money or some other material temporal advantage capable of being assessed in monetary value." Hood v. Dun & Bradstreet, Inc., 486 F.2d 25, 33 (5th Cir. 1973).[3] Allegations for special damages must be pled in more than "a conclusory manner; rather [w]ords actionable . . . per quod are those who[se] injurious effect must be established by due allegation and proof." Anderson v. Smith, No. 3:19-CV-222-J-20JRK, 2020 WL 10058207, at *3 (M.D. Fla. Mar. 24, 2020).

In Anderson, the court dismissed plaintiff's libel per quod claim because she had "insufficiently alleged she suffered special damages" where she did not allege "an actual loss of employment, or a realized loss attributable to her diminished stature in the community." Id. Here, Plaintiff's Amended Complaint is devoid of allegations of actual employment loss or realized loss attributable to her being called a QAnon follower. Instead, like the plaintiff in Anderson, Plaintiff relies on

---

[3] See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir.1981) (adopting as binding precedent all decisions of the former Fifth Circuit issued on or before September 30, 1981).

conclusory allegations to support her claim for special damages. Cf. Flynn, 2021 WL 5964129 at *5 (holding that absent any factual enhancement to support the conclusory allegations of special damages, "the complaint is insufficient to support an inference that the Flynns suffered actual economic harm."). Plaintiff alleges that Chase Bank cancelled her credit cards because of the Publication but she fails to allege that she sustained any pecuniary loss, whether temporary or long-term, associated with Chase Banks' action. (Dkt. 22 at ¶¶ 19, 30 n. 7); see Anderson, 2020 WL 10058207, at *3. In fact, Plaintiff alleges that Chase Bank later claimed the cancellation of her credit cards was an error "and reinstated [her] account." (Dkt. 22 at ¶ 30, n. 7) As such, on these allegations, Plaintiff fails to plausibly allege special damages.[4]

Therefore, Defendant's Motion to Dismiss is due to be **GRANTED** as to Count I with leave to amend to require Plaintiff to cure these deficiencies if she can do so consistent with the law.

### C.    DEFENDANT'S MOTION TO DISMISS AS TO COUNT II

Defendant also moves to dismiss Count II for failure to properly plead a claim for defamation by implication. (Dkt. 46) The Court **GRANTS** Defendant's Motion to Dismiss as to Count II because Plaintiff fails to adequately allege a defamatory

---

[4] To the extent Plaintiff alleges she suffered special damages because she had to change her phone number, (Dkt. 22 at ¶ 19), that claim also fails because it suffers from the same infirmity as her claim with respect to Chase Bank. She has not pled that she sustained any pecuniary or other loss associated with having to change her phone number. See Anderson, 2020 WL 10058207, at *3.

implication by juxtaposition or by Defendant's exclusion of any pertinent and clarifying facts and context.

As a preliminary matter, Florida law does not recognize the tort of false light[5], in part, because it is largely duplicative of defamation by implication. See e.g., <u>Jews for Jesus, Inc.</u> 997 So. 2d at 1100; <u>Dowbenko v. Google Inc.</u>, 582 F. App'x 801, 804 (11th Cir. 2014) ("As an initial matter, [appellant's] false light invasion of privacy claim fails because Florida law does not recognize such a cause of action.")[6]; <u>Maletta v. Woodle</u>, No. 2:20-CV-1004-JES-MRM, 2021 WL 1894023, at *4 (M.D. Fla. May 11, 2021) (dismissing plaintiff's claim of false light invasion of privacy because cause of action is not recognized under Florida law").

However, Florida does recognize the tort of defamation by implication as a concept by which "literally true statements can be defamatory where they create a false impression." <u>Jews For Jesus, Inc.</u>, 997 So. 2d at 1106. Because defamation by implication is "subsumed within the tort of defamation," courts extend to defamation by implication "[a]ll of the protections of defamation law that are afforded to the media and private defendants." <u>Id.</u> at 1108. "Whether the defendant's statements constitute defamation by implication is a question [of] law for the court to determine." <u>Turner</u>, 879 F.3d at 1269.

---

5 In the S.D.N.Y. Suit, the court applied Rhode Island law, which recognizes a claim for false light, and denied Defendant's motion to dismiss as to the false light claim. <u>Flynn</u>, 2021 WL 5964129, at *6.

6 The Court notes that "[a]lthough an unpublished opinion is not binding on this court, it is persuasive authority. <u>See</u> 11th Cir. R. 36-2." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000).

A defamation by implication claim can arise in two instances: where a defendant (1) "juxtaposes a series of facts so as to imply a defamatory connection between them" or (2) "creates a defamatory implication by omitting facts . . . even though the particular facts are correct." Jacoby v. Cable News Network, Inc., No. 21-12030, 2021 WL 5858569, at *3 (11th Cir. Dec. 10, 2021) (citing to Jews for Jesus, Inc., 997 So.2d at 1108).

In the first instance, courts can find a defamatory implication when a defendant uses true facts to imply a defamatory connection between them.

In the second instance, the defendant omits facts that would negate the alleged defamatory implication. To prevail on such a claim, "the plaintiff must ultimately show that the [alleged] false implication would be *contradicted* by the inclusion of the allegedly improperly omitted facts." Compass iTech, LLC v. eVestment Alliance, LLC, No. 14-81241-CIV, 2016 WL 10519027 at *18 (S.D. Fla. June 24, 2016) (emphasis added). Importantly, [a] defamation case cannot be founded upon the omission of *immaterial* facts." Id. (emphasis added). As illustrative of this important distinction, in Compass iTech, LLC v. eVestment Alliance, LLC, a plaintiff brought suit against a defendant after the defendant issued a letter to its clients stating that plaintiff had "repeatedly accessed material from [defendant's] proprietary analytics system without [its] authorization" and defendant had "informed the federal authorities and [was] cooperating with them[.]" Id. at *5. The plaintiff brought a defamation by implication claim, alleging that defendant had omitted the fact that "[plaintiff] ha[d] not been contacted by any agency of the Federal government." Id.

at *18. In granting summary judgment in favor of defendant, the court held that "the inclusion of the information that [plaintiff] had not been contacted by the authorities would not negate the asserted defamatory implication of the [l]etter" because this immaterial fact would not "mean that the FBI's inquiry into [plaintiff's] conduct had ended[.]" Id. Thus, because the omitted fact was immaterial, the Court held that, as a matter of law, the statement was not defamatory by implication based upon the omission of an asserted fact. Id.

In Count II, Plaintiff conflates both forms of defamation by implication—the use of true facts to imply a defamatory connection between them and the omission of facts to create a defamatory implication. (Dkt. 22 at ¶¶ 38, 39)

Plaintiff claims in the Amended Complaint that Defendant "juxtaposed a series of true facts so as to imply a defamatory connection between them." (Id. at ¶ 39) These true facts include her repeating the words, "where we go one we go all," raising her hand, and taking an oath. (Id.) Plaintiff then argues that despite these true facts, "CNN intentionally and selectively edited and altered" the Original Video when it "omitted facts in a way that intentionally conveyed a preconceived false meaning and implication - that [Plaintiff] is a 'QANON FOLLOWER' and that in the video clip she pledged her allegiance to QAnon." (Id.) Specifically, Plaintiff asserts that CNN intentionally and fraudulently made it "appear and insinuate[ed]" that Plaintiff pledged an oath of allegiance to QAnon by editing out the fact that she had also taken the Oath to the United States Constitution [and] by omitting the words "God Bless America[.]" (Id. at ¶ 7; see also id. at ¶ 6)

18

To the extent that they can be distinguished as properly pleading two separate theories, neither claim is actionable as currently pleaded. If Plaintiff is attempting to plead under the first, she does not allege how the true depictions of her raising her hand, reciting the slogan, and taking an oath were "juxtaposed " in a way to imply anything other than what she admits factually occurred. (Id. at ¶ 39) ("Lori did repeat the words, 'where we go one we go all'. Lori's hand was raised. She was taking an oath.") It only becomes defamatory, even by Plaintiff's allegations, with the inclusion of the allegation that Defendant allegedly asserted that Plaintiff was a QAnon follower, which Plaintiff adamantly claims is false. As Defendant points out, in this way, "the allegedly false statement of fact underlying her defamation *per se* claim and the false implication underlying her defamation by implication claim are one and the same"— i.e., that Plaintiff took an oath to QAnon and is a QAnon follower. (Dkt. 46 at 20). Thus, this claim is merely a recasting of her defamation claim. As currently pleaded, Plaintiff fails to properly allege a defamatory implication under a pure "juxtaposition of true facts" theory.

Moreover, to the extent Plaintiff is pleading defamation by implication under an "omission of facts" theory, such a claim is also insufficiently pleaded. While she alleges that Defendant omitted facts, Plaintiff fails to explain how the inclusion of the allegedly improperly omitted facts would have negated the alleged false implication. See Compass iTech, LLC, 2016 WL 10519027 at *18. The challenged Publication states, "Where we go one, we go all is an infamous QAnon slogan promoted by Michael Flynn." (Publication at 1:20-25). It then cuts to an edited video of Plaintiff

19

repeating the same phrase with her hand raised. Plaintiff admits that she "did repeat the words, 'where we go one, we go all'," that her "hand was raised," and that "[s]he was taking an oath." (Dkt. 22 at ¶ 39) All of these are true facts, alleged by Plaintiff, that were included in the Publication. (Id.) Plaintiff contends, however, that she also took the Oath to the United States Constitution and said the words "God Bless America," which additional facts were omitted from the Publication. (Id. at ¶¶ 6-7, 39)

Plaintiff does not explain how including the words "God Bless America" or expanding the clip to show that she had previously taken the Oath to the United States Constitution would contradict or negate the undisputed fact that she repeated the challenged pledge phrase while her hand was raised. Plaintiff's defamation by implication claim cannot be founded on the omission by the publisher of immaterial facts, and Plaintiff fails to plead how the omitted facts were material. See Compass iTech, LLC, 2016 WL 10519027 at *18. Thus, as currently pleaded, Plaintiff's has failed to adequately state a claim under either theory. Consequently, the Court finds that the Motion to Dismiss is due to be **GRANTED** as to Count II.

## IV.   CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** as follows:

1. Defendant's Motion to Dismiss, (Dkt. 46), is **GRANTED** to the extent that Count I, Plaintiff's defamation *per se* claim, is **DISMISSED WITHOUT PREJUDICE**.

2. Defendant's Motion to Dismiss, (id.), is **GRANTED** to the extent that Count II, Plaintiff's defamation by implication claim, is **DISMISSED WITHOUT PREJUDICE**.

3. **Plaintiff IS GRANTED LEAVE TO FILE** a second amended complaint **within twenty-one (21)-days of this Order** to seek to cure the deficiencies identified by the Court, if Plaintiff believes she can do so consistent with Rule 11 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** in Tampa, Florida, this 17th day of March 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel of Record
Any Unrepresented Person