## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

### CASE NO: 8-22-CV-00512-MSS-AEP

| | |
|---|---|
| LORI FLYNN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CABLE NEWS NETWORK, INC., | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT CABLE NEWS NETWORK, INC.'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Federal Rule of Civil Procedure 56, Defendant Cable News Network, Inc. ("CNN") moves for summary judgment dismissing the claims of Plaintiff Lori Flynn ("Plaintiff" or "Lori"). In support thereof, CNN states as follows:

### PRELIMINARY STATEMENT

This is a defamation lawsuit about a CNN news report published on February 4, 2021, about a gathering of QAnon followers at a conference in October 2020 presidential election ("the Report").

But the story starts long before that. On June 24, 2020, the online poster calling itself Q directed its followers to recite the oath of office federal officials take to defend the United States Constitution, followed by the phrase "Where We Go One, We Go All" ("WWG1WGA" or "QAnon Slogan"), a phrase that by then had gained popularity among Q and its followers. Hours later, Twitter users began posting videos

of themselves taking the oath and reciting the QAnon Slogan along with the hashtag #TakeTheOath, a direct reference to Q's instructions. A viral #TaketheOath movement followed.

███████████████████████████████████

███████████████████████████████████

████████████████████████████ Lori herself participated, on video, and twice shared that video with her 40,000 Twitter followers ("Oath Video"). The press extensively covered the #TakeTheOath movement, its clear connection to Q, and the far right conspiracy theories espoused by Q, or QAnon. That reporting included coverage of the Flynn family Oath Video and levied accusations that Lori and her family were amplifying QAnon conspiracy theories by participating in the #TakeTheOath movement and promoting it online. Lori took no action at the time to refute those accusations, leaving the Oath Video publicly available on Twitter.

Seven months later on February 4, 2021, in the wake of the riot at the United States Capitol on January 6, 2021, CNN published the Report which is about a QAnon gathering in October 2020. During the entirety of the Report, CNN displayed a banner across the bottom of the screen that read "CNN Goes Inside a Gathering of QAnon Followers" (the "Chyron"), which referenced the Q Con Live! conference that is the focus of the Report. As part of the Report, CNN journalist Donie O'Sullivan discussed former President Donald Trump's refusal to disavow QAnon and Gen. Flynn's public promotion of the QAnon Slogan "Where We Go One, We Go All" in the Oath Video. The Report includes an approximately two-second clip from the Oath Video posted by

Lori and others on Twitter. The clip shows Gen. Flynn standing next to Lori and his other family members with their right hands raised as he (and he alone) says "Where We Go One, We Go All." Lori is silent in the clip.

Lori did not see the Report when it aired. In fact, she has never seen it. ███

████████████████████████████████████████████████████

█████████████████████████████ It does not. She says nothing in the Report, and the Report says nothing about her. The only depiction of Lori at all is as she was in the Oath Video she published—standing next to her husband as they both participated in #TakeTheOath. Nonetheless, Lori seeks $100 million from CNN because she complains the Report labeled her a QAnon follower.

The Report does not label Lori a QAnon follower. This, alone, dooms her claim. But even if Lori's strained interpretation of the Report were correct, summary judgment should be granted for several additional reasons. Lori presents no genuine issue of material fact to support either a defamation *per se* or by implication claim. Instead, she relies on extrinsic evidence, false narratives, and tortured interpretations. There is nothing defamatory about Lori in the Report. Moreover, Lori cannot meet her burden of demonstrating that the Report is materially false because it is substantially true. Finally, the Report was not published with the requisite level of fault required by the First Amendment, and did not damage her. There is no genuine issue of material fact as to any of these matters, and CNN is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

### A.     The Parties

1.      Lori is a resident of Florida. Dkt. 65, Second Amended Complaint ("SAC") ¶ 23. CNN owns and operates numerous news platforms and services, including the television network known as CNN and the website www.cnn.com. Declaration of Katherine M. Bolger ("Bolger Decl.") ¶ 1.[1]

### B.     The QAnon Conspiracy Generally

2.      "QAnon" is an American conspiracy movement that began in 2017. It centers on fabricated claims that a high-ranking government official called "Q Clearance Patriot" or "Q" is leaking top secret information about a Deep State cabal on online forums. Q's posts, called "Q Drops," of which there have been just shy of 5,000, claim that Trump was the only one who could save America. Ex. 9 at 5.

3.      Members of the QAnon movement have a range of beliefs. *Id.* at 4-5; Ex. 12 at 187-188. In fact, Q encouraged his followers to "do their own research" and use memes (a graphic or image often accompanied by text that is shared online) to spread the word about the Q drops. Ex. 63 (instructing "memes at the ready. WWG1WGA! Q"); Ex. 24 at 43:16-21. For this reason, posting on social media is central to the QAnon movement, Ex. 24 at 43:12-21; Ex. 3 ¶ 15, and posting about Q by social media influencers greatly increased the movement's reach. QAnon supporters believe that Q "tells us to stay on Twitter . . . because we have to fight on those platforms." Ex. 13 at

---

[1] Unless otherwise indicated, all further references to "Ex. _" in this Memorandum of Law refer to the numbered exhibits attached to the concurrently-filed Bolger Declaration.

2:23-3:28; *see also id*. 1:00-2:22; Ex. 14 at 6:13-10:01.

4.      Q also instructed his followers on October 17, 2020, to deny they are QAnon followers, specifically instructing them to claim there is Q, there are Anons, but there is no QAnon. Ex. 68; *see also* Ex. 24 at 34:2-6; Ex. 25 at 79:1-9.

5.      Q also uses language that unites its followers, including catch phrases, such as the "Storm" and the "Great Awakening." Ex. 9 at 19-20. Among them is the phrase "Digital Soldiers," which was coined by Gen. Flynn in November 2016 ▪

██████████████████████████████████████████████████████████

████████████████████████████████████.

### C.      "Where We Go One, We Go All" is a QAnon Slogan

6.      No phrase, however, is more associated with QAnon than the QAnon Slogan "Where We Go One, We Go All" and its abbreviation "WWG1WGA." Ex. 9 at 11-12; *see also* Ex. 12 at 93, 160; Ex. 25 at 222:2-4.

7.      The origin of the phrase is enmeshed in QAnon lore. The phrase was first used in Q Drop #513, on January 8, 2018, Ex. 61, and many QAnon supporters wrongly believe the phrase was engraved on a bell on President Kennedy's sailboat. In fact, it comes from the 1996 film *White Squall*. Ex. 3 ¶ 17; Ex. 9 at 13; Ex. 12 at 21. And the picture of the engraved bell that many QAnon followers, including several members of the Flynn family, claim is from Kennedy's boat is in fact a still photo from *White Squall* that was published in a Q Drop. *See* Ex. 64.

8.      Q has used either "Where We Go One, We Go All" or "WWG1WGA" in 201 posts. Ex. 9 at 12. And it was used extensively by QAnon followers on social

media, often with other hashtags like #QAnon, to signify membership in the QAnon community. Ex. 22 at 138:8-10; Ex. 23 at 36:16-18. In fact, its connection to the QAnon movement was so well known that Twitter banned users (███████) who posted QAnon phrases on several occasions in 2020 and 2021. Ex. 95; *see also* Ex. 17 at 332:23-333:-11. The phrase also appeared on clothing, hats, flags, and other merchandise. Ex. 9 at 12.

9.      Courts have described "Where We Go One, We Go All" as "a slogan used by adherents of the QAnon conspiracy theory." *U.S. v. Languerand*, 2021 WL 3674731, at *3 (D.D.C. Aug. 19, 2021). Political candidates who share the phrase, even once, have been labeled "QAnon believers" or "supporters" both in the media and by Lori's own purported expert. *See* Ex. 9 at 8; Ex. 12 at 200 n.55; Ex. 85.

10.     Despite alleging that "Where We Go One, We Go All" is "a statement of family unity and solidarity," SAC ¶ 10, ████████████████

████████████████████████████████████

**D.      Gen. Flynn and His Family Exploited His Connections to QAnon**

11.     Gen. Michael Flynn, Lori's husband, is one of the most high-profile and influential figures in the QAnon movement. Ex. 9 at 7; Ex. 12 at 5, 44.

12.     Gen. Flynn's prosecution for lying to the FBI and ultimate pardon by Trump galvanized support from QAnon followers, ██████████████████

████████████████████ Q referenced Gen. Flynn in scores of Q drops, and members of the Q movement show their support for Gen. Flynn by adding three stars to their Twitter handle (meant to signify his rank as a three star general); creating,

sharing, and liking memes featuring him; and using hashtags like #ClearFlynnNow and #IStandWithFlynn, in conjunction with #WWG1WGA and #QAnon. Ex. 17 at 345:5-346:4; Ex. 9 at 7.

13.     Because of the frequency of the Gen. Flynn references in Q Drops and the fervency of support for Gen. Flynn among Q's followers, many suspected Gen. Flynn was himself Q. Ex. 17 at 169:8-170:7; *see* Ex. 12 at 20.



**E.     For Years, Lori Promoted QAnon to Benefit the Legal Defense Fund**

15.

For example, in December 2018, Lori retweeted a post containing "The #DeepState is scared of @GenFlynn" with the hashtags #QArmy and #WWG1WGA and a link to the Legal Defense Fund. Ex. 55 at 3; *see also id.* at 5 (retweeting #QArmy and link to Legal Defense Fund). The same month, Lori also retweeted images of Lori and Gen. Flynn with the hashtags #QAnon, #TrustThePlan, and #WWG1WGA with a link to the Legal Defense Fund. *Id.*; *see also* Ex. 53 at 1 (retweeting "I have faith in Q"); Ex. 54 at 2-3 (retweeting #WWG1WGA #QAnon with a request to dismiss Gen. Flynn's

case); Ex. 57 at 9 (retweeting #QAnon, #WWG1WGA, and "please donate" with link to Legal Defense Fund); Ex. 60 at 1 (retweeting TRUMPSTER - #WWG1WGA); Ex. 17 at 351:20-353:6, 356:5-11 (retweeting #WWG1WGA, Flynn-supporting tweets, with links to the Legal Defense Fund).

16.     Lori and Gen. Flynn raised money for the Legal Defense Fund by selling clothes with the slogan "WWG1WGA" and the phrase #FightLikeAFlynn on a website called The Shirt Show. ███████████████████████████████████████ ███████████████████████████████████████ The connection between QAnon and the Legal Defense Fund was widely reported on prior to the Report, including by Lori's purported expert. Ex. 12 at 44; *see* also Ex. 9 at 20-21; Ex. 81.

17.     Lori also retweeted QAnon-related materials unrelated to the Legal Defense Fund, including at least one Q Drop. Ex. 56 at 3-4. ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████████████████

18.     ████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████  ████

19.   ████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████.

## F.   The #TakeTheOath Movement

20.   On June 24, 2020, 20 minutes after the D.C. Circuit Court of Appeals (temporarily) ordered Judge Sullivan to dismiss the charges against Gen. Flynn, Q posted "The People's General. Soon" followed by three stars. Ex. 65; Ex. 11 at 14. Approximately two hours later, Q posted Drop #4510 (Ex. 66):



21.   Shortly thereafter, QAnon followers began filming themselves reciting

---

███████████████████████████████████████████



the oath and posting the video along with #TakeTheOath, #QAnon, and #Qdrop. Ex. 11 at 18. On June 25, 2020, there were 76,600 tweets with #TakeTheOath, many of which had QAnon iconography, used #WWG1WGA, and showed the speaker with Q shirts or Q flags when they took the oath. Ex. 9 at 15; Ex. 11 at 20-21.

22.     On June 27, 2020, Gen. Flynn changed the text of his Twitter profile to include #TakeTheOath, along with a U.S. flag emoji. Ex. 9 at 15; Ex. 11 at 21-22.



23.

24.                                                          a post by Twitter user @wgabrittany with the hashtags #TakeTheOath, #qanon, and #wwg1wga,

another post by Twitter user @CourtSalinas with the hashtags #TakeTheOath and #WWG1WGA. Ex. 45; Ex. 17 at 40:7-41:18, 52:11-20, 66:5-9, 82:24-83:4, 88:20-24, 95:21-25, 96:20-97:3, 102:10-15, 108:6-10, 113:12-16, 131:23-132:1, 134:8-11.[4]

a compilation of #TakeTheOath videos with the hashtags #TakeTheOath,

---

[3] *See* Ex. 46 at 15; Ex. 98 at 26; Ex. 100 at 4; Ex. 101 at 21; Ex. 102 at 22; Ex. 103 at 18; Ex. 104 at 7; Ex, 105 at 5; Ex. 106 at 2; Ex. 107 at 30; Ex. 108 at 56; Ex. 109 at 16; Ex. 110 at 47; Ex. 111 at 27; Ex. 112 at 8-9; Ex. 113 at 9; Ex. 114 at 5; Ex. 115 at 27-28; Ex. 116 at 4; Ex. 117 at 13; Ex. 118 at 6; Ex. 119 at 2; Ex. 120 at 3; Ex. 121 at 4-5; Ex. 125 at 105.

[4] *See* Ex. 46 at 15; Ex. 58 at 280; Ex. 98 at 26; Ex. 99 at 54; Ex. 100 at 4; Ex. 102 at 21; Ex. 103 at 18; Ex. 104 at 6; Ex, 105 at 5; Ex. 107 at 29; Ex. 108 at 55; Ex. 109 at 16; Ex. 110 at 47; Ex. 111 at 26; Ex. 113 at 9; Ex. 114 at 5; Ex. 117 at 13; Ex. 118 at 6; Ex. 121 at 4; Ex. 122 at 3; Ex. 123 at 7; Ex. 124 at 3; Ex. 125 at 105.

#WWG1WGA, and #QAnon and tagging Gen. Flynn, ████████████████

████████████████████████████████████████████████ .

### G.    The Flynns #TakeTheOath

25.    The Flynn family—including Gen. Flynn, Lori, Joe, Valerie, Jack, and Leslie—decided to join the #TakeTheOath movement on the Fourth of July in 2020.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

26.    Contrary to her SAC, where Lori claimed the oath "was completely impromptu" (SAC ¶ 9), ██████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ The only other people present were Sidney Powell and her son, Wilson. Once the Flynns lined up, Wilson filmed Lori and her family raising their right hands and reciting the federal oath of office and adding "Where We Go One, We Go All" at the end, just like the Q Drop instructed. *Compare* Ex. 2 *with* Ex. 66; *see also* Ex. 19 at 31:18-20. The Flynns also added the words "God Bless America," as did other QAnon followers who included those words in their #TakeTheOath Twitter posts, like Barbara, @WgaBrittany, and @CourtSalinas. Exs. 44-45.

27.     The Flynns filmed the Oath Video twice because "someone said they could resay it better." Ex. 88 at 53:7-12; *see also* Ex. 19 at 17:20-18:9; Ex. 20 at 30:20-22, 31:13-17.

28.     Just as planned, ███████████████, Gen. Flynn published the Oath Video on Twitter, ████████████████████████████████████████████ ████████████████████████████████████████████████████████ Ex. 41; *see also* Ex. 18 at 115:16-23; 116:2-6. ████████████████████

████████████████████████████████████████████████████

████████████████████ It has been viewed more than 2.4 million times, retweeted 18.9 thousand times, and liked 56.5 thousand times. Ex. 11 at 25; *see also* Ex. 20 at 30:20-22. Lori also personally retweeted the oath the following day, July 5, 2020, to her almost 40,000 followers, as did other Flynns, including Jack. *See* Ex. 17 at 149:7-150:16; Ex. 48 at 2-4.

29.     For those within the QAnon movement, Gen. Flynn, Lori, and their family's participation in #TakeTheOath was seen as public validation of QAnon. Ex. 3 ¶ 22. ██████████████████████████████████████████████████

████████████████████████████████████████████

### H.     Media Report the Oath Video as Featuring a "QAnon Slogan"

30.     The Flynns' posting of the Oath Video set off a media firestorm. Media entities across the political spectrum reported that the Flynns took a "QAnon oath" and described WWG1WGA as a "QAnon slogan." Ex. 70. In total, at least 45 news articles and countless social media posts referenced Gen. Flynn taking the QAnon

Oath. *Id.* Even Lori's purported expert wrote, "Gen. Flynn himself pledged allegiance to QAnon on July 4, 2020, in which he added the phrase to the standard oath of office 'Where we go one we go all.' Flynn then posted the video to Facebook, Twitter, and other platforms ensuring that his oath of allegiance went viral." Ex. 12 at 20.

31.



But no member of the Flynn family removed the video from Twitter.

32.     The Oath Video remained available on Twitter until Jan. 8, 2021, when Gen. Flynn and Lori's Twitter accounts were suspended as part of the post-Jan. 6 suspensions of accounts "primarily dedicated to sharing QAnon content." Ex. 95; Ex. 17 at 332:23-333:11; Ex. 20 at 171:3-4. When Gen. Flynn's account was reinstated on Jan. 6, 2023, the Oath Video remained on his page and available for view to this day.

## I.     CNN's Newsgathering for the Report at Issue

33.     The connections between Lori, Gen. Flynn, and QAnon were known to CNN journalist Donie O'Sullivan before he created the Report at issue. O'Sullivan has followed QAnon for several years, publishing numerous articles and television packages on the movement. Ex. 3 ¶¶ 9, 12-16, 22, 30-31, 38. O'Sullivan was also aware of Q Drop #4510 (Ex. 66), the #TakeTheOath movement, the Oath Video, and CNN and other outlets' prior reporting on the Flynns' Oath Video. *Id.* ¶¶ 20-31.

34.    On October 17, 2020, O'Sullivan attended a QAnon convention called Q Con Live! in Scottsdale, Arizona. *Id.* ¶¶ 31, 33. While there, O'Sullivan saw and heard repeated exclamations of "Where We Go One, We Go All"; saw the Q Con Live! attendees' positive response to Trump's refusal to disavow QAnon at the NBC town hall; observed the importance of social media to QAnon; and witnessed Q Con Live! speakers' favorable references to Gen. Flynn. *Id.* ¶¶ 34-37.

### J.    CNN's Preparation of the Report at Issue

35.    Following O'Sullivan's reporting for CNN on the Capitol riot, he realized that some of the individuals who had attended Q Con Live! also participated in the riot. *Id.* ¶¶ 40-41. A few weeks later, in early February 2021, O'Sullivan pitched a television news package to CNN's nightly news show, CNN Tonight, seeking to shed new light on the relationship between QAnon and Trump and his enablers, by referencing his reporting from Q Con Live!. *Id.* ¶¶ 42-44.

36.    After CNN Tonight accepted the pitch, O'Sullivan began writing the script and determining which elements, such as video, would be featured. *Id.* ¶¶ 45-46. By the morning of February 4, 2021, O'Sullivan had prepared a draft script that included a two-second clip from the Oath Video showing Gen. Flynn reciting the words, "Where We Go One, We Go All." *Id.* ¶ 47. The editor assigned to the Report cut those clips based on O'Sullivan's script. *Id.* ¶ 50.

37.    O'Sullivan chose to include the Oath Video clip because it was newsworthy that a political figure like Gen. Flynn had promoted the same QAnon

14

Slogan, "Where We Go One, We Go All," used at Q Con Live!. *Id.* ¶¶ 47-49. For that reason, although O'Sullivan knew that Lori and the other Flynns repeated the QAnon Slogan, he did not include video of them saying those words. *Id.* ¶ 48.

38.     O'Sullivan sent the final script for review to among others, Fuzz Hogan at the Row, CNN's editorial oversight department, and Emma Lacey-Bordeaux at Standards and Practices, CNN's department dedicated to ensuring content is consistent with ethical and professional standards. *Id.* ¶ 61; Ex. 5 ¶¶ 2, 17; Ex. 7 ¶¶ 2, 16. The script was approved by Hogan, who confirmed the Report was factually accurate, and Lacey-Bordeaux. Neither Hogan nor Lacey-Bordeaux flagged the portion of the Report in which the Oath Video appeared as problematic, and they believed the Report to be fair and accurate. Ex. 3 ¶¶ 61-64; Ex. 5 ¶¶ 4, 31-32, 37-38; Ex. 7 ¶¶ 4, 24-26, 31-32. O'Sullivan supervised the physical assembly of the Report, and saw and approved the complete Report prior to airing. Ex. 3 ¶¶ 39, 50, 69.

39.     After the Report's script was finalized, the Chyron, or a banner that appears on the lower third of the screen, reading "CNN Goes Inside a Gathering of QAnon Followers," was added soon before the Report aired. *Id.* ¶ 73. O'Sullivan did not create the Chyron, but as a matter of standard practice, the CNN show airing the news package would have prepared the Chyron, and CNN often runs chyrons during the entirety of news reports. *Id.* ¶¶ 73-74; Ex. 7 ¶ 30. Here, the Chyron's words were the exact same as those in the Report.  Pulling the text of the Chyron from the script of the news package is one of the common ways that chyrons are created. Ex. 3 ¶ 75. O'Sullivan, Lacey-Bordeaux, and Hogan have since reviewed the Chyron, and they

believe that it fairly and accurately reflects the Report because of the Report's overall focus on Q Con Live!, and that it does not call Lori a QAnon follower. Ex. 3 ¶¶ 74-78; Ex. 5 ¶ 37; Ex. 7 ¶ 31-32.

40.     O'Sullivan, Lacey-Bordeaux, and Hogan believed at the time it was published, and believe now, that the Report was fair and accurate. They also believe that the Report did not depart from the Row's editorial standards, CNN's ethical and professional standards and practices, or the standards of care associated with responsible journalism. Ex. 3 ¶¶ 4, 81; Ex. 5 ¶¶ 4, 38; Ex. 7 ¶¶ 4, 32.

41.     The Report aired for the first time on CNN Tonight at 10:45 PM ET on February 4, 2021, and later aired four other times: a CNN Tonight replay at 2:48 AM on February 5, 2021; on CNN Newsroom at 3:49 PM February 5, 2021; on New Day Saturday at 7:33 AM on February 6, 2021; and on CNN Newsroom at 3:30 PM on February 6, 2021. Ex. 3 ¶¶ 3, 79.

    **K.    The Report**

42.     The Report, which is approximately three minutes and 50 seconds, is largely composed of footage of O'Sullivan's attendance at Q Con Live!. Ex. 1. The Chyron remains at the bottom of the screen during the entirety of the Report, including O'Sullivan's interview with Don Lemon on air after the Report concludes. *Id.*; Ex. 3 ¶ 74. The Report opens with several statements at Q Con Live! criticizing the mainstream media, before flashing to footage of O'Sullivan wearing a mask at Q Con Live!. Ex. 1. Within the first 20 seconds of the Report, O'Sullivan explains that the footage was from "this gathering of QAnon followers in Arizona just two weeks before

16

November's election." *Id.* The Report then shows the QAnon Shaman at Q Con Live! followed by an image of him at the January 6 attack. Next, the Report features J.T. Wilde playing his song "Where We Go One, We Go All" at Q Con Live!, which O'Sullivan describes as an "infamous QAnon slogan promoted by Trump's first national security adviser, Michael Flynn" that was also "played as an anthem at this meeting of Trump supporters [Q Con Live!]." *Id.* During O'Sullivan's explanation, the Report shows photos of the phrase in full, abbreviated as "#WWG1WGA," and printed, with the letter "Q," on large flags, followed by a clip of Gen. Flynn with Trump at a campaign rally. *Id.* O'Sullivan's statement is then followed with a two-second clip of the Oath Video, showing Gen. Flynn reciting, "Where We Go One, We Go All." *Id.* Lori, who is not named, is also visible in the clip, but is not shown speaking any words. *Id.* The Report does not describe QAnon as a "cult" or mention a high-ranking government insider known as Q exposing a cabal of Satan-worshipping pedophiles that controls the government. *Id.*

43.    The Report also shows Q Con Live! attendees cheering Trump's refusal to disavow QAnon during a town hall with journalist Savannah Guthrie. *Id.* The Report also identified prominent figures in the QAnon movement and closes with O'Sullivan's interview with Travis View, the host of a QAnon podcast, and a final shot of J.T. Wilde singing "Where We Go One, We Go All." *Id.*

44.    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

**L.      Lori Continues to Associate with QAnon After the Report**

45.      Even after the CNN Report aired in February 2021, Lori continued engaging with QAnon supporters and content. For instance, contrary to her SAC, which alleges she "did not go to QAnon gatherings, meetings or rallies," (SAC ¶17),

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████

46.      Lori also continued to discuss QAnon beliefs. ███████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

**M.      Procedural History**

47.      On March 3, 2022, Lori sued CNN claiming that the Report falsely accused her of being a "QAnon follower." Dkt. 1 (Lori Compl.). On May 20, 2022, CNN moved to dismiss Lori's Complaint. Dkt. 19. Instead of opposing the motion to dismiss, Lori filed her First Amended Complaint ("FAC") on June 6, 2022, again

alleging defamation *per se* and defamation by implication. Dkt. 22. On June 17, 2022, CNN moved to dismiss Lori's FAC, Dkt. 30, and on March 17, 2023, this Court granted CNN's Motion with leave to amend. Dkt. 59. On April 10, 2023, Lori filed her SAC. Dkt. 65. On May 5, 2023, because discovery was nearing its end, CNN answered the SAC. Dkt. 72.

## ARGUMENT

This Court should grant summary judgment because Lori has failed to carry her burden to establish each element of her claim. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To do so, Lori must establish: (1) publication of a statement to a third party; (2) falsity; (3) fault (in this case actual malice); (4) actual damages; and (5) the statement was defamatory. *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008)). She has not done so.

## I.   THE REPORT LACKS DEFAMATORY MEANING AND IS TRUE

### A.   The Report Lacks the Ascribed Defamatory Meaning

Most fundamentally, and perhaps not surprisingly given that Lori has never seen it, the Report is not susceptible of the meaning Lori ascribes to it. Whether the challenged statement is "reasonably capable of a defamatory interpretation" is a question of law. *Keller v. Miami Herald Publ'g Co.*, 778 F.2d 711, 714-15 (11th Cir. 1985). The key issue is not what Lori alleges but "how a reasonable and common mind would understand the statements," which should not receive "a tortured interpretation." *Schiller v. Viacom, Inc.*, 2016 WL 9280239, at *8 (S.D. Fla. Apr. 4, 2016). In construing

meaning, courts are to consider "all of the circumstances surrounding the statement," *Sanchez v. Cellco P'ship*, 2006 WL 8432732, at *2 (S.D. Fla. Sept. 26, 2006), including the "publication . . . in its totality." *Byrd v. Hustler Magazine*, 433 So. 2d 593, 595 (Fla. 4th DCA 1983). "Articles are to be considered with their illustrations; pictures are to be viewed with their captions; stories are to be read with their headlines." *Byrd,* 433 So. 2d at 595; *see Parekh v. CBS Corp.*, 820 F. App'x 827, 835 (11th Cir. 2020) (similar). When an alleged defamatory meaning flows from a chyron shown throughout an entire telecast, the telecast must be viewed as a whole, because the chyron may be "temper[ed]" by the full telecast, clarifying it "in such a way that no [viewer] could reasonably believe [its] defamatory meaning." *Crall v. Gannett Satellite Info. Network, Inc.*, 1992 WL 400713, at *3 (S.D. Ohio Nov. 6, 1992); *see, e.g.*, *Rubin v. U.S. News & World Report*, 271 F.3d 1305, 1307-08 (11th Cir. 2001).[5]

Here, Lori's sole argument is that the Report accuses her of being a QAnon follower because of the Chyron that is shown throughout the entirety of the Report. ███████████████████████████████████████████████████ ████████████████.[6] This Court, however, must review the Report as a whole because the Chyron is tempered by its full contents. Initially, the Chyron explicitly refers to Q Con Live! because within the first 20 seconds of the Report, O'Sullivan

---

[5] *See also Kronk v. Am. Media, Inc.*, 2015 WL 3473205, at *3 (Fla. Cir. Ct. Mar. 30, 2015).

[6] In the related S.D.N.Y. litigation, the magistrate judge held that, at the pleading stage, the plaintiffs sufficiently alleged that CNN called them QAnon followers, but solely for the purposes of analyzing the "low bar" "of and concerning" element of their claims. *Flynn v. CNN*, 2021 WL 6290046, at *13 (S.D.N.Y. Oct. 22, 2021). She did not reach the issue of whether those plaintiffs' proffered interpretation of the Report—the same as Lori's—was reasonable as a matter of law, nor did she have available discovery establishing the unreasonableness of Lori's interpretation.

explains, using the same words as the Chyron, that the footage was from "this *gathering of QAnon followers* in Arizona just two weeks before November's election." Ex. 1 (emphasis added). And the Report, as a whole, does not imply, let alone state, that Lori attended Q Con Live!. In fact, the Report does not mention Lori at all. Instead, the Report's discussion of "'Where We Go One, We Go All,' refers *only* to Trump and Gen. Flynn. And, the Report shows *only* Gen. Flynn speaking the phrase. As such, the only way a viewer would even know that Lori said, "Where We Go One, We Go All," is if the viewer had seen the entire Oath Video as first posted by the Flynns (not CNN). Lori's belief that the Report accused her of being a QAnon follower is unreasonable.

This point is underscored by the fact that the Chyron remains onscreen for the entirety of the Report. If the presence of the Chyron alone were enough to label someone a "QAnon follower," then CNN's audience would understand every individual who appeared onscreen—including Trump, O'Sullivan, Savannah Guthrie, Don Lemon, and View—to be a "QAnon follower." This cannot be right. Moreover, nobody involved in the writing or production of the Report understands the Chyron that way. Statement of Facts ("SF") ¶ 39.

In this way, this case is just like *Parekh*. There, the plaintiff sued the defendant about a report that allegedly implied that he was involved in his girlfriend's scam by including a photograph of him and his girlfriend and the statement that they moved to Florida once "people started getting suspicious." *Parekh*, 820 F. App'x at 831. But the court held that, "viewed in the context of the entire news report," neither the statement nor the picture supported the plaintiff's claim, because the report clearly noted that the

plaintiff felt he was lied to by his girlfriend and that the two of them broke up. *Id.* at 833. "Given this context, an ordinary reader would not understand the [statement and photograph] to have [or imply] a defamatory meaning." *Id; see also Valentine v. C.B.S.,* 698 F.2d 430, 431-2 (11th Cir. 1983) (plaintiff not defamed by individual lyrics because "review of the entire song" established that plaintiff's interpretation was "tortured and extreme"). Here, as in *Parekh* and *Valentine*, no reasonable viewer watching the entire Report would understand the Chyron to state that Lori was a QAnon follower because everything else in the Report points away from such a meaning. Lori's proffered meaning of the Report should be rejected.[7]

## B.  The Report as Published Is Literally True

Further, what the Report *actually* says and shows is literally true. Falsity "is the *sine qua non* for recovery in a defamation action." *Byrd,* 433 So. 2d at 595. As discussed above, the only portion of O'Sullivan's narration referencing the Oath Video states that Gen. Flynn "promoted" the QAnon Slogan. And there is no question that that statement is literally true. Gen. Flynn filmed the QAnon Oath and posted it to Twitter as part of #TakeTheOath. And scores of articles—and Lori's own purported expert's book—reported on his closeness to QAnon. In fact, he is associated so closely with QAnon that many thought he himself was Q. *See* SF ¶ 13.

---

[7] In discovery, Lori has taken the position that the SDNY suit both determined that the Report calls her a QAnon follower and conclusively defined the term. This is incorrect. There, the court's ruling that Jack and Leslie Flynn had sufficiently pled defamatory meaning based on their definition of "QAnon follower" was cabined by his recognition that resolution of the issues is "a highly fact-intensive inquiry," and the Court could not "discredit" allegations at the pleading stage. *Flynn v. CNN*, 2021 WL 5964129, at *4 (S.D.N.Y. Dec. 16, 2021). Not only did the court lack the benefit of discovery, but it goes without saying that a ruling by a different court at an earlier stage is inapplicable. *See Munro v. Fairchild Tropical Botanic Garden, Inc.*, 2022 WL 452257, at *6 n.4 (S.D. Fla. Jan. 13, 2022).

To the extent that the Report is about Lori at all, it shows an admittedly and literally truthful fact that Lori stood next to Gen. Flynn by the fire outside her home in Rhode Island and raised her right hand while Gen. Flynn said, "Where We Go One, We Go All." Because the Report as actually published—as opposed to the way Lori mischaracterizes it in the SAC—is literally true, the SAC must be dismissed.

## II.   LORI CANNOT ESTABLISH THE REPORT IS DEFAMATORY *PER SE*

Lori has also failed to allege—and, in discovery, did not elicit evidence to prove—that the Report is *per se* defamatory. Defamation may be "established *per se* or *per quod.*" *Anderson v. Smith*, 2020 WL 10058207, at *1 (M.D. Fla. Mar. 24, 2020). A publication is libelous *per se* "if, when considered alone and without innuendo, it . . . tends to subject one to hatred, distrust, ridicule, contempt, or disgrace" and if its words "upon their face and without the aid of extrinsic proof [are] injurious." *Id.* at *2. "[L]ooking outside the four corners of the [publication] . . . would run afoul [of] the very nature of a *per se* action." *Mac Isaac v. Twitter, Inc.*, 557 F. Supp. 3d 1251, 1259-60 (S.D. Fla. 2021).

In the Order dismissing the FAC, this Court held that Lori did not establish defamation *per se* because she relied on "extrinsic sources to provide evidence of the defamatory nature of the Publication." Dkt. 59 ("Order") at 11. And Lori did not remedy that deficiency in the SAC. Lori claims the Report is defamatory *per se* because CNN "falsely stated that . . . Lori was an acolyte, adherent, convert and disciple of . . . QAnon," a "dangerous, violent, racist, extremist, insurrectionist movement." *Compare* SAC ¶¶ 2, 30, *with* FAC ¶ 4. But the Report itself contains *none* of that

language. Instead, as before, Lori plainly relies on extrinsic evidence to define "QAnon," including the FBI and DHS, SAC ¶ 1; the *Wall Street Journal*, *id.*; and several *different* CNN telecasts and articles, *id.* ¶¶ 2, 29.

Lori attempts to salvage her claim by alleging that, in February 2021, the words "QAnon follower" were themselves inherently injurious. SAC ¶ 34. But this Court already rejected that argument, holding "the statement that Plaintiff is a QAnon follower is not inherently injurious." Dkt. 59 at 12. And, in any event, not only does the meaning of QAnon remain hotly contested, Ex. 9 at 4-7, but also ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Lori's defamation *per se* claim fails.[8]

## III.   LORI CANNOT ESTABLISH DEFAMATION BY IMPLICATION

Lori's claim for defamation by implication also fails. Lori must show either that CNN "juxtapose[d] a series of facts so as to imply a defamatory connection between them" *or* that CNN "create[d] a defamatory implication by omitting facts." She must also show that CNN "intend[ed] or endorse[d]" the alleged defamatory implication. *See Jews for Jesus*, 997 So. 2d at 1107-08. As this Court originally found in granting

---

[8] Nor can Lori convert her defamation *per se* claim into one *per quod*. *See Daniels v. HSN, Inc.*, 2020 WL 533927, at *5 (M.D. Fla. Feb. 3, 2020). To state a claim under this theory, Lori must prove "actual, out of pocket losses[,] which must be proven by specific evidence as to the time, cause and amount"— that is, special damages, caused by the Report. *Falic v. Legg Mason Wood Walker, Inc.*, 347 F. Supp. 2d 1260, 1268 (S.D. Fla. 2004) ("chief characteristic" is a "realized or liquidated loss"). Here, Lori alleged only two examples of special damages: the purported denial of bank loans and the cancellation of her credit cards. SAC ¶ 37 n.11. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

CNN's motion to dismiss, Lori has not done so.

*First*, Lori pleads that the Report "juxtaposed a series of true facts so as to imply a defamatory connection between them" (SAC ¶ 43). But this allegation suffers from the same fatal problem as in her FAC. Specifically, the SAC asserts that CNN juxtaposed 1) a series of facts that Lori concedes are true: "Lori did repeat the words, 'where we go one we go all,' . . . Lori's hand was raised. She was taking an oath," with 2) a false chyron "so as to imply and insinuate that Lori was a QAnon follower." SAC ¶ 43. But this is not the juxtaposition of true facts that created a false implication. Instead, per Lori's own allegations, those true facts **only** become defamatory when juxtaposed with the allegedly *false* Chyron. *See Jacoby v. CNN*, 537 F. Supp. 3d 1303, 1313 (M.D. Fla. 2021) (court "cannot accept as true" allegation that "this statement is false," while accepting allegation that "this same statement is true"). That is not a claim for defamation by implication—it is simply an effort to recast the defamation *per se* claim to avoid its failures. Lori has not pled a claim for defamation by juxtaposition.

*Second*, Lori bases her omissions theory on CNN's alleged "intentional[] and selective[] edit[ing] and alter[ing]" of the Oath Video, which she asserts implicitly defamed her by omitting footage of her speaking the federal oath of office, the words "God Bless America," and the "short celebration of cheers thereafter." SAC ¶ 43. Initially, of course, Lori's entire claim is based on the false allegation that the Report shows Lori speaking. It does not. In other words, it was Lori, not CNN that distributed a video of herself saying "Where We Go One, We Go All." Further, a defamation by implication case "cannot be founded upon the omission of immaterial facts," and the

challenged omissions are only material where they would "contradict[]" the alleged false implication. *Compass iTech, LLC v. eVestment All., LLC*, 2016 WL 10519027, at *18 (S.D. Fla. June 24, 2016); *see also Turner*, 879 F.3d at 1270. Based on this well-established principle, this Court dismissed Lori's omission claim from the FAC because she did not explain how expanding the clip would "negate the undisputed fact that she repeated the challenged pledge phrase with her hand raised." Order at 20. Lori did not cure this defect either in pleading or in discovery.

In fact, discovery has made the irrelevance of the omitted information even more clear. Discovery has shown that QAnon followers used patriotic memes, view themselves as patriots, and, in fact, said "God Bless America" while participating in #TakeTheOath. SF ¶¶ 3, 5, 26. The Flynns' patriotic statement and cheers have no relevance to—let alone do they negate—Lori's undisputed repeating of the QAnon Slogan as part of #TakeTheOath. The defamation by implication claim based on omitted facts fails as a matter of law.

*Finally*, Lori cannot establish, as she is required to do, that CNN "intend[ed] or endors[ed]" the alleged defamatory implication that she was a QAnon follower. *Jews for Jesus*, 997 So. 2d at 1107. Here, all of the decisionmakers involved in creating the Report testified not only that they did not intend to call Lori a "QAnon follower," but also that they still think they did not do so. SF ¶¶ 38-40. And that testimony is supported by the editorial judgments they made in putting together the piece—CNN did not even include in the Report the portion of the Oath Video in which Lori recites the QAnon Slogan. Instead, CNN highlighted *Gen. Flynn*'s recitation to emphasize

QAnon's prominence in U.S. politics because it was the most newsworthy portion of the Oath Video. Lori has identified no information—none—to contradict this evidence. For this reason, the defamation by implication claim must fail.

## IV.   LORI CANNOT MEET HER BURDEN OF PROVING THAT THE REPORT IS MATERIALLY FALSE

Even if this Court concludes that the Report labeled Lori a QAnon follower—which it does not—Lori cannot meet her burden of proving material falsity. The First Amendment and Florida law require that every defamation plaintiff has the burden of proving that speech of public concern is materially false.[9] *San Juan Prod., Inc. v. River Pools & Spas, Inc.*, 2023 WL 1994087, at *4 (M.D. Fla. Feb. 14, 2023) ("According to the U.S. Supreme Court and Florida case law, falsity only exist[s] if the publication is *substantially and materially false*, not just if it is technically false.") (emphasis added); *see Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986); *Cheng v. Neumann,* 51 F.4th 438, 443-44 (1st Cir. 2022).

A statement need not be literally true for the defendant to prevail.  Rather, a "statement is substantially true *if its substance or gist* conveys essentially the same meaning that the truth would have conveyed." *Jews for Jesus*, 997 So. 2d at 1107-08; *Levan v. Cap. Cities/ABC, Inc.*, 190 F.3d 1230, 1240 (11th Cir. 1999) (if "gist" or "sting" of challenged statement is substantially true, statement is not defamatory).  Courts

---

[9] Here, there is no question that the Report, which focuses on Trump's refusal to disavow QAnon and Gen. Flynn's public promotion of the QAnon Slogan, is speech of public concern.  In any event, Lori must separately prove material falsity because she is a limited public figure, *see infra* Part V.A.1.  *See Smith v. Cuban Am. Nat. Found.*, 731 So. 2d 702, 706 (Fla. Dist. Ct. App. 1999) ("It is constitutionally required that a public figure plaintiff prove falsity.") (citing *Hepps*, 475 U.S. at 775-776)).

must "consider the context" of the statement and "disregard any minor inaccuracies that do not affect the substance of the statement." *Jews for Jesus*, 997 So. 2d at 1107-08; *see Wentz v. Project Veritas*, 2019 WL 1716024, at *5 (M.D. Fla. Apr. 16, 2019) (granting summary judgment on truth where several allegedly defamatory statements were merely "recitations of [plaintiff's] own admitted actions and statements").

Here, Lori will never be able to demonstrate the Report is materially false.[10] The "gist" of Lori being a "QAnon follower" is that she aligned herself with QAnon, which the record has proven true. At the outset, discovery has confirmed that QAnon is an elastic conspiracy movement, and to be a QAnon follower equally so. The common denominator among QAnon followers is that in some way, they chose to align themselves with the QAnon movement. And Lori did that in many ways. Lori aligned herself with QAnon by participating in the #TakeTheOath challenge ▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇. It is undisputed that:

- ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇ that included tweets with #QAnon and #WWG1WGA. SF ¶ 24.

- Lori took part in filming the viral Oath Video, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ *Id.* ¶ 25-27.

- The words in the Oath Video are the same as in Q Drop #4510 (Ex. 66), and Lori and her family took the QAnon Oath *twice* because "someone said they could resay it better." *Id.* ¶ 27. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[10] Courts routinely grant motions for summary judgment on substantial truth grounds. *Valentine*, 698 F.2d at 432; *Schiller*, 2016 WL 9280239, at *10; *Davis v. McKenzie*, 2017 WL 8809359, at *14 (S.D. Fla. Nov. 3, 2017), *R&R adopted*, 2018 WL 1813897 (S.D. Fla. Jan. 19, 2018).

██████  *Id.* ¶ 31.

- ████████████████████████████████████████████████████
  █████████████████████████, neither she, nor Gen. Flynn, removed the Oath
  Video. *Id.* ¶ 32.

On their own, these actions sufficiently align Lori with the QAnon movement to render her alleged defamatory meaning substantially true. But there's more. The alleged defamatory gist of the Report is also true because Lori has publicly and privately aligned herself with QAnon since 2018:

- Lori admits her husband was associated with QAnon since its inception. *Id.* ¶ 13.

- Lori admits that, far from knowing "next to nothing about QAnon" in February 2021 (SAC ¶ 17) ███████████████████████████████████

- Lori aligned herself with a well-known QAnon supporter who was a guest of the Flynns in Rhode Island. Ex. 19 at 424:13-440:14, 441:20-442:20; Exs. 126-127.

- ████████████████████████████████████████████████████
  ████████████████████████████████.

- ████████████████████████████████████████████████████
  ████████████████████████████████████████████████████
  ████████████████████████.

- Finally, Lori was so closely aligned with QAnon on Twitter that her account was suspended after the January 6 Capitol attack. SF ¶ 32.

  Next, Lori and her family capitalized on QAnon:

- As early as 2018 and continuing to 2021, Lori publicly tweeted and retweeted scores of posts with QAnon hashtags, ███████████████████████████
  ██████████████████, and raised money from the QAnon community to support her husband's Legal Defense Fund, including often retweeting the QAnon Slogan with #QAnon, #QArmy and/or links to the Legal Defense Fund. *See* SF ¶¶ 15-17.

- Lori, through the Legal Defense Fund, profited from merchandise sales featuring the QAnon Slogan. When that merchandise was banned for its QAnon association, ████████████████████████████████████████████████████
  *See* SF ¶¶ 16, 18-19; Exs. 43, 81.



Indeed, Lori aligned herself for years with QAnon in ways far more public and comprehensive than other individuals deemed QAnon followers and supporters. For example, in a *Media Matters* article titled "QAnon supporters running for Congress in 2020," 107 former congressional candidates who embraced QAnon during the 2020 election cycle are so listed for undertaking far fewer QAnon-related activities than Lori. Derrick Grayson made the list for "tweet[ing] the QAnon slogan and its spinoff hashtag, #wwg1wgaworldwide," and Philanise White made the list for "tweet[ing] the QAnon slogan more than once," including in tweets where she asked for donations to her campaign. Ex. 85 at 10-11, 26. Others, including Theresa Raborn and Johnny Teague, made the list for simply retweeting the Oath Video in which Lori actually took part. *Id.* at 19-20, 22. If these acts are sufficient to deem these politicians "QAnon supporters," then the fact that Lori has done all of them must be more than enough.

A recent case involving a QAnon-connected judge is directly on point. In *Patrick v. Daily Beast Co.*, the court rejected the judge's claim that a *Daily Beast* headline falsely called her "QAnon-linked." 2023 WL 3627836, at *3 (E.D. Pa. May 24, 2023). The

court held that "[t]he fact that [the judge] denied a Q[A]non link does not negate her interview with a Q[A]non supporter or that she was listed as a speaker for a Q[A]non-affiliated conference." *Id.* Moreover, the court explained that even if "the headline wasn't the most fair" when weighing her denial against her interview and appearance on a conference list (even though she claimed she did not attend the conference), this still did not support a "finding of falsity." *Id.* If the single interview and conference appearance outweighed the judge's vehement denials in *Patrick*, Lori cannot hope to meet her burden of showing that the challenged statements are materially false.[11]

## V.   LORI CANNOT PROVE THAT CNN ACTED WITH FAULT

This Court should also grant summary judgment because Lori cannot carry the burden, as she must, *Carroll v. TheStreet.com, Inc.*, 2014 WL 5474061, at *12 (S.D. Fla. July 10, 2014), of demonstrating that CNN acted with *any* culpable level of fault in airing the Report. No one at CNN believed the Report falsely labeled her a QAnon follower, and everyone at CNN testified they did not depart from standard practice.

### A.   Lori Cannot Prove That CNN Acted with Actual Malice

Lori is a limited public figure who, based on the undisputed record, cannot prove by clear and convincing evidence that the allegedly defamatory statement was published with "actual malice." *Silvester v. ABC*, 839 F.2d 1491, 1498 (11th Cir. 1988) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964)).

---

[11] Lori's self-serving denials in the SAC are also unavailing because it is a common, Q-approved strategy for QAnon followers to use Q-related catchphrases and iconography while also disclaiming knowledge—or even the existence—of Q. SAC ¶¶ 10, 20; *see* SF ¶ 4. *See, e.g., Schiller*, 2016 WL 9280239, at *10 (granting summary judgment based on substantially true description of plaintiff as an "alcoholic or drug addict" notwithstanding plaintiff's "convenient" disavowals of addiction).

### 1.   Lori Is a Limited Public Figure

Whether a plaintiff is a public figure is a question of law for the court. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). This Circuit uses a three-part test for identifying a limited public figure. First, the court must determine the existence of a public controversy. *Turner*, 879 F.3d at 1272. Next, the court must consider the plaintiff's participation in the controversy and, finally, the court must determine whether the challenged statements were germane to plaintiff's participation in the controversy. *Silvester*, 839 F.2d at 1494. As this Circuit has recognized, "The purpose served by limited protection to the publisher of comment upon a public figure would often be frustrated if the subject of the publication could choose whether or not he would be a public figure." *Rosanova v. Playboy Enters., Inc.*, 580 F.2d 859, 861 (5th Cir. 1978)[12]; *see also Berisha v. Lawson*, 973 F.3d 1304, 1311 (11th Cir. 2020) ("[E]ven if [appellant] never voluntarily sought public attention, federal courts have long made clear that one may occasionally become a public figure even if 'one doesn't choose to be.'"); *Turner*, 879 F.3d at 1273. Lori plainly is a public figure.

*First*, at the time of CNN's reporting, there was a public controversy, which is defined as "any topic upon which sizeable segments of society have different, strongly held views." *Della-Donna v. Gore Newspapers Co.*, 489 So. 2d 72, 76 (Fla. 2d DCA 1986). "If the issue was being debated publicly and if it had foreseeable and substantial ramifications for nonparticipants, it was a public controversy." *Id.* (quoting *Waldbaum*

---

[12] Fifth Circuit cases decided before October 1, 1981 are of precedential value in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981).

*v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980)). "A court may not question the legitimacy of the public's concern [because] such an approach would turn courts into censors of what information is relevant to self-government." *Waldbaum*, 627 F.2d at 1296-97. Moreover, "[o]nce a person becomes a public figure in connection with a particular controversy, that person remains a public figure thereafter for purposes of later commentary or treatment of *that controversy*." *Friedgood v. Peters Publ'g Co.*, 521 So. 2d 236, 241 (Fla. 4th DCA 1988) (citations omitted; emphasis in original).

Prior to the Report, there existed clear public controversies: (1) the existence of the QAnon movement and "the relationship between the movement and U.S. politics, including Trump and General Flynn"; (2) Q's June 24, 2020 instruction to "take the oath"; and (3) the viral #TaketheOath movement that ensued online immediately following Q's June 24th directive. SF ¶¶ 20-22. The press had reported extensively on both the role of President Trump, and particularly Gen. Flynn, in promoting QAnon, and there was extensive press coverage of both #TaketheOath and the Flynn families' participation in it. SF ¶¶ 2, 30-31. *See, e.g.*, *Colodny v. Iverson, Yoakum, Papiano & Hatch*, 936 F. Supp. 917, 922 (M.D. Fla. 1996) (Watergate scandal was an "actual public controversy"); *Silvester*, 839 F.2d at 1495 (finding a public controversy regarding corruption in the jai alai industry based on preexisting newspaper articles). Unsurprisingly, these matters invited public attention and widespread comment. *E.g.*, Exs. 76-77. A public controversy clearly existed in this case.

*Second*, Lori indisputably played a central role in the controversy. *Turner*, 879 F.3d at 1272. Lori admits ███████████████████████████

33

██████████████████████, and that her husband was closely associated with QAnon long before the Report. SF ¶ 13. Lori also plainly knew that the QAnon Slogan was indelibly linked to the conspiracy movement when she voluntarily took part in Q's "take the oath" directive. *Id.* ¶¶ 24-25. And after her husband posted the Oath Video capturing her participation, she retweeted it to her approximately 40,000 Twitter followers—and watched eagerly as it went viral. *Id.* ¶ 28. Thus, Lori not only "voluntarily engaged in a course that was bound to invite attention and comment," *Rosanova v. Playboy Enters.*, 411 F. Supp. 440, 445 (S.D. Ga. 1976), *aff'd,* 580 F.2d 859 (5th Cir. 1978), but also **she invited it**.

*Finally*, there is no question that the Report is germane to Lori's participation in the controversies. The Report is about the way in which Trump and Gen. Flynn enabled the widespread growth of the QAnon movement. Lori's participation in and promotion of #TakeTheOath movement, a viral trend instigated by Q, is clearly germane to that controversy. Lori is a limited public figure.

### 2. CNN Did Not Act with Actual Malice

Lori must, therefore, meet the "daunting" standard of establishing by clear and convincing evidence that CNN acted with actual malice. *Klayman v. City Pages*, 2015 WL 1546173, at *13 (M.D. Fla. Apr. 3, 2015), *aff'd,* 650 F. App'x 744 (11th Cir. 2016). The actual malice standard requires plaintiffs to "allege facts sufficient to give rise to a reasonable inference that the false statement was made 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Turner*, 879 F. 3d at 1273. The standard is not satisfied "merely through a showing of ill will or 'malice' in

the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989). Instead, the question is "whether the defendant…actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel*, 816 F.3d at 703. Therefore, even proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers" will not establish actual malice. *Harte-Hanks*, 491 U.S. at 664-65 & n.5; *Michel,* 816 F.3d at 703.[13] And, a publisher's reliance on "trustworthy sources demonstrates his lack of subjective belief that the [allegedly defamatory] articles [in suit] contained false statements." *Edward Lewis Tobinick, MD v. Novella*, 848 F.3d 935, 947 (11th Cir. 2017*); see also, e.g., Rosanova*, 580 F.2d at 862 (no subjective awareness of probable falsity where "the publisher's allegations are supported by a multitude of prior reports upon which the publisher reasonably relied").

Here, each and every CNN decisionmaker testified that they believed the Report was true when it was published and that they did not intend to state or imply that Lori (or any of the Flynns for that matter) were QAnon followers. There is *no* evidence in

_____

[13] Lori alleges that CNN's supposed "bias" against the Flynn family, and its failure to ask her for comment prior to airing the Report, are evidence of actual malice. SAC ¶¶ 38, 39, b & d. There is no evidence of any such bias. And if there was, bias alone is not enough to establish actual malice. *See Don King Prods., Inc. v. Walt Disney Co.*, 40 So. 3d 40, 44 (Fla. 4th DCA 2010) (holding that ill will alone does not amount to actual malice). Moreover, CNN's unrebutted testimony demonstrates that it is *not* biased against the Flynns. Ex. 3 ¶¶ 51, 76, 81; Ex. 5 ¶¶ 33, 37, 38; Ex. 7 ¶¶ 26-27, 32. Second, numerous courts have held that failure to ask for comment or consult with reporting subjects does not evidence actual malice. *See, e.g.*, *Levan*, 190 F.3d at 1243 (rejecting argument that failure to speak with source favorable to plaintiff constituted actual malice). Finally, to the extent Lori relies on O'Sullivan's light-hearted text message to Ms. Holland that his tweet sharing the Report "will send ratings sky rocketing" to claim actual malice, O'Sullivan's unrebutted testimony demonstrates that he did not produce the Report to impact CNN's ratings, nor was he aware of CNN's ratings. This message reflects no ill will toward Plaintiff, let alone actual malice. Ex. 3 ¶¶ 67-68.

the record—let alone clear and convincing evidence—to contradict this sworn testimony. In fact, the record establishes the contrary. SF ¶¶ 39-40.

CNN's good-faith belief is supported by the fact that prior to the Report, CNN was aware of public reporting that bolstered the truth of the Report. O'Sullivan was aware that: there was a viral #TaketheOath movement wherein members of the public posted videos of themselves on Twitter taking the oath of office and reciting the QAnon Slogan; Lori voluntarily participated in that movement by reciting the oath and QAnon Slogan in a recorded video; Gen. Flynn had published that video on Twitter; published news reports commented on Lori and her family's participation in the #TakeTheOath movement, specifically accusing them of promoting QAnon; Lori made no public comment at the time denying these accusations and took no legal action against any publisher; and that General Flynn and his family had used QAnon to fundraise for the Legal Defense Fund. SF ¶ 16-19; Ex. 3 ¶ 19. Hogan and Lacey-Bordeaux were also aware that "Where We Go One, We Go All" was closely associated with QAnon and that it was widely reported that Gen. Flynn and his family members had taken a QAnon oath in July 2020. Ex. 5 ¶¶ 25, 27-28; Ex. 7 ¶¶ 22-24.

CNN plainly lacked any subjective belief that the Report contained any false statement. This undisputed fact precludes a finding of actual malice. CNN is entitled to summary judgment on this basis.

## B.    Lori Cannot Show That CNN Acted Negligently

Even if Lori were considered a private figure, she cannot show that CNN published the Report with the requisite level of fault. Under Florida law, a private

36

figure plaintiff must prove "the defendant published the [challenged] statements with negligence [*i.e.*, without reasonable care as to whether the alleged false and defamatory statements were actually true or false.]" *Miami Herald Publ'g Co. v. Ane*, 423 So. 2d 376, 378 (Fla. 3d DCA 1982), *approved*, 458 So. 2d 239 (Fla. 1984).

The undisputed evidence shows that CNN acted with reasonable care in publishing the Report. Where a media organization takes "reasonable precautions to ensure [a report's] accuracy," it will not be found negligent. *Valentine,* 698 F.2d at 432; *see Nelson*, 667 F. Supp. at 1477 (citing same). In *Valentine,* the record showed that multiple individuals, "including two attorneys, repeatedly reviewed the lyrics" to a Bob Dylan song. 698 F.2d at 432. Because the defendant songwriters believed "[the plaintiff] was not part of [a] conspiracy and that the song did not depict her as being so," there was no triable issue as to the reasonable care taken by the defendants. *Id.* Here, as in *Valentine*, the undisputed evidence shows that CNN did take reasonable precautions. The Report was reviewed by numerous CNN employees, including O'Sullivan's editor and producer, the *CNN Tonight* producer, a CNN attorney, and representatives from Standards & Practices and the Row. SF ¶ 40. As in *Valentine,* these individuals had a good faith belief the Report was not about Lori or her family and did not cast them as QAnon followers. *Id.* ¶ 39.  The Chyron exactly matches the Report's script, and pulling from the script is one of the common ways that chyrons are created. *Id.*

There is nothing to contradict those claims. Lori alleged that the evidence would

show gross negligence, failure to exercise care, and abandonment of standards, *see* SAC ¶ 38. But none of that materialized. Lori has not and cannot establish that CNN acted negligently in telecasting the Report.

## VI.   LORI CANNOT PROVE DAMAGES

A defamation plaintiff suing a media defendant must prove actual injury. *Mid-Florida Television Corp. v. Boyles*, 467 So. 2d 282, 283 (Fla. 1985); *see also Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119 (S.D. Fla. 2021) (noting that there are no presumed damages against a media defendant). A defamation plaintiff must also demonstrate that the allegedly defamatory statements proximately caused that injury. *See, e.g.*, *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006). In other words, Lori must show that the Report is the "sole cause" of her asserted damages. *Egwuatu v. Burlington Coat Factory Warehouse Corp.*, 2011 WL 2413833, at *5 (M.D. Fla. June 10, 2011) (granting summary judgment based on lack of causation). Here, Lori cannot carry this burden.

Lori claims that the Report damaged her reputation by calling her a "QAnon Follower." *E.g.*, SAC ¶ 29. ████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████ Because Lori was associated with QAnon long before it aired, she cannot show that the Report is the proximate cause of her association with QAnon, and for this reason alone, her claim should be dismissed.

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████

Likewise, Lori's emotional damages pre-date the Report. ██████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████

Finally, Lori's claim for special damages is based on a Chase credit card cancellation due to supposed "reputational risk" and purported denial of two bank loans. SAC ¶ 37 n.11.  Lori cannot prove the Report caused any of her alleged damages, and CNN is entitled to judgment as a matter of law.

## CONCLUSION

For all the foregoing reasons, CNN respectfully requests that this Court grants its motion for summary judgment and dismiss all claims against it.

Date: October 19, 2023                           Respectfully submitted,

| SHULLMAN FUGATE PLLC | DAVIS WRIGHT TREMAINE LLP |
|---|---|
| By: */s/ Deanna K. Shullman* | Katherine M. Bolger* |
| Deanna K. Shullman (FBN 514462) | Meenakshi Krishnan* |
| Sarah M. Papadelias (FBN 0125098) | Lindsey B. Cherner* |
| 2101 Vista Parkway, Ste. 4006 | Sam F. Cate-Gumpert* |
| West Palm Beach, Florida 33411 | 1251 Avenue of the Americas |
| Telephone: (561) 429-3619 | New York, New York 10020 |
| dshullman@shullmanfugate.com | Telephone: (212) 489-8230 |
| spapadelias@shullmanfugate.com | katebolger@dwt.com |
| | meenakshikrishnan@dwt.com |
| | lindseycherner@dwt.com |
| | samcategumpert@dwt.com |
| | *Admitted *Pro Hac Vice* |
| | *Counsel for CNN* |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 19, 2023 a true and correct copy of the foregoing was served via CM/ECF on all counsel of record. I further certify that this document has been filed pursuant to Local Rule 1.11(d) and in accordance therewith includes placeholders where there would otherwise exist another person's confidential item. Notwithstanding, a complete copy of this Motion, which includes confidential items, has been served via electronic and U.S. Mail on this date to Shawn Flynn, shawn@binnall.com, 717 King Street, Suite 200, Alexandria, VA 22314 and Jared J. Roberts, jared@binnall.com, 717 King Street, Suite 200, Alexandria, VA 22314.

*/s/ Deanna K. Shullman*
Deanna K. Shullman