## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA, TAMPA DIVISION

VALERIE FLYNN,                          )
                                        )
                  Plaintiff,            )
                                        )     **CASE NO: 8:22-CV-343-MSS-SPF**
        vs.                             )
                                        )
CABLE NEWS NETWORK, INC.                )
                                        )
                  Defendant.            )
                                        )
                                        )
_____ )


LORI FLYNN,                             )
                                        )
                  Plaintiff,            )
                                        )     **CASE NO: 8:22-CV-00512-MSS-AEP**
        vs.                             )
                                        )
CABLE NEWS NETWORK, INC.                )
                                        )
                  Defendant.            )
                                        )
                                        )
_____ )


## DEFENDANT CABLE NEWS NETWORK, INC.'S
## MOTION IN LIMINE TO EXCLUDE PLAINTIFFS' EXPERT
## DR. SOPHIA MOSKALENKO'S EXPERT REPORT, REBUTTAL REPORT,
## DEPOSITION TESTIMONY, AND ANY TRIAL TESTIMONY
## WITH INCORPORATED MEMORANDUM OF LAW

Defendant Cable News Network, Inc. ("CNN") hereby moves for an order

excluding the proffered expert report, rebuttal expert report, deposition testimony, and

any trial testimony of Plaintiffs Valerie and Lori Flynn's (collectively, "Plaintiffs")

1

expert Dr. Sophia Moskalenko and precluding her from testifying at trial pursuant to Fed. R. Evid. 402 & 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). In support of this motion, Defendant states:

## INTRODUCTION

1.      This defamation case arises from a February 4, 2021 segment by CNN ("CNN Report") entitled "CNN Goes Inside a Gathering of QAnon Followers." Plaintiffs Valerie and Lori Flynn separately filed lawsuits in the Middle District of Florida last year. These cases have been consolidated for pretrial purposes (Dkt. 45). Plaintiffs Leslie and Jack Flynn filed suit in the Southern District of New York based on the same CNN Report (Dkt. 17). In each case, the Plaintiffs complain the CNN Report accused them of being QAnon supporters or followers.

2.      As fully discussed in CNN's forthcoming motions for summary judgment, Plaintiffs' defamation claims are due to be denied because **Plaintiffs' lawsuits are based on an unreasonable and inaccurate interpretation of the Report, which, in any event, is substantially true, was not published with fault, and did not damage Plaintiffs**. Notwithstanding, Plaintiffs have presented the expert opinion of psychologist Dr. Sophia Moskalenko ("Dr. Moskalenko"), who has opined that the Flynns are not QAnon believers because they deny being so. Her expert report ("Report") is attached as **Exhibit A**, and pertinent excerpts of her June 23, 2023 deposition testimony are attached as **Exhibit B**. Dr. Moskalenko's rebuttal report ("Rebuttal Report") is attached as **Exhibit C**.

3.      Dr. Moskalenko's opinion is fatally flawed because it violates the stringent Daubert standard requiring (1) adherence to a genuine and proven objective methodology, and (2) helpfulness to the jury in evaluating the facts. *Daubert*, 509 U.S. 579. Plaintiffs bear the burden to establish these elements. As explained in the memorandum below, neither of these elements can be satisfied on this record. Briefly stated:

➢      ***Unreliability of Opinion***: Dr. Moskalenko's opinion is based on nothing more than her own ratification of the Flynns' factual assertion that they are not QAnon followers. Despite testifying about the best methodology to apply in evaluating beliefs, Dr. Moskalenko admits that she did not employ any of that methodology to validate her conclusions that the Plaintiffs do not support QAnon. By her own admission, she just relied on whatever materials Plaintiffs' counsel chose to give her and did no independent evaluation or research. Such rank speculation and lack of "intellectual rigor" by a purported expert in the courtroom is exactly why *Daubert* exists and exactly what *Daubert* forbids.

➢      ***Not Helpful to Jury***: In reaching her ultimate conclusion that the Plaintiffs do not support QAnon, Dr. Moskalenko relies solely on the pleadings, deposition transcripts, and exhibits in this case. Her opinion is offered as nothing more than an approval of Plaintiffs' testimony, furthering their self-serving narrative about the truth of the alleged defamatory statements at issue, which is not permitted. Plaintiffs' counsel can argue such matters in closing argument based on the fact evidence—a circumstance that necessarily forecloses the use of an expert due to the

3

risk that jurors would give more weight to fact evidence than it deserves because it is improperly bolstered by an expert witness. Such a risk would exist here if Dr. Moskalenko was allowed to testify about her extensive writings and research on QAnon and then make unsupported, often contradictory, pronouncements that the Flynns are not affiliated with QAnon because they say so. Moreover, Dr. Moskalenko relied on an extremely limited universe of information in issuing her Report, thereby compounding the unreliability and unhelpfulness of her opinion.

4.     Dr. Moskalenko's Report and testimony do not even come close to meeting the strict requirements of *Daubert*. Exclusion of her proffered expert report, rebuttal expert report, deposition testimony, and any trial testimony is required.

## **MEMORANDUM OF LAW**

### *Background*

Psychologist Dr. Moskalenko submitted a Report in which she concludes that members of the Flynn family are not adherents to the QAnon belief system.[1] (Ex. A at 11). She states that she found "no statements by the Flynns that expressed support"[2] for QAnon based on her review *of the materials provided by Plaintiffs' counsel*. (*Id*.) Her Report states that she did not review the social media postings of the Flynns

---

[1] Because of the parties' agreement to conduct discovery in parallel in both the Florida and New York cases, the Report addresses all four plaintiffs.

[2] Though Dr. Moskalenko's report defines QAnon as a "big tent conspiracy theory" and broadly lists some of its tenets (Ex. A at 7-9), she testified that QAnon is more nuanced than she portrays in her Report. (Ex. B at 57:10-60:16) (calling QAnon an "a la carte belief system" and acknowledging that a QAnon supporter need not believe every aspect of QAnon to be a follower). It is, thus, entirely the "belief system" she opines on is not subject to clear definition.

4

in rendering her opinion. (*Id.* at 7). She did not conduct any surveys to substantiate her opinions, as is common practice in her field. (Ex. B at 31:23-35:20). Further, Dr. Moskalenko testified that she did not interview the Flynns (or anyone else) in rendering her opinion, and so she could not "offer a fully 100-percent informed opinion." (*Id.* at 43:7-16; 182:9-184:19).

Dr. Moskalenko includes her credentials and qualifications in her Report. The most notable of these qualifications is her publications on QAnon, including a book which she authored titled *Pastels and Pedophiles: Inside the Mind of QAnon* ("Book").[3] (Ex. A at 4). Dr. Moskalenko has a Ph.D in Social and Clinical Psychology and researches topics including the psychology of radicalization, terrorism, and misinformation. *Id.* She has not testified as an expert at trial or by deposition in any case in the previous four years. *Id.* at 7.

Dr. Moskalenko's Report primarily references Jack and Leslie Flynn, with attributions throughout to the "Flynns" in general. Her ultimate conclusion is that "the Flynns were not adherents to the QAnon belief system." (*Id.* at 11). The only direct reference in the Report to Valerie and Lori Flynn is when Dr. Moskalenko identifies that she reviewed some of their pleadings in the Middle District of Florida. (Ex. A at 7). Plaintiffs' expert disclosure, enclosing the Report, was submitted in the Southern District of New York case, with a footnote stating that the disclosure was "also made on behalf of Valerie and Lori Flynn, plaintiffs in Case 8:22-cv-00343."

---

[3] This Court granted CNN's request for leave to file the Book with the Court conventionally on July 14, 2023 (Dkt. 82) because it cannot be electronically filed.

Dr. Moskalenko does not discuss Valerie or Lori Flynn further in her Report or deposition testimony.

While CNN does not challenge whether Dr. Moskalenko has knowledge of QAnon, CNN does challenge the fact that Dr. Moskalenko testified regarding the appropriate methodology to employ in cases like this, and then admitted that she employed none of those methods in rendering her opinion. Moreover, her opinions do nothing to assist the trier of fact. Dr. Moskalenko's opinion lacks a foundation sufficient to survive a *Daubert* challenge.

## A. No Actual Methodology

Dr. Moskalenko testified that she was asked to render an opinion on the whether members of the Flynn family were supporters of QAnon. (Ex. A at 7). In her deposition, she referred to certain methodologies that are routinely employed in measuring beliefs, such as surveys, interviews, polling, and case studies. (Ex. B at 30:23-32:3). Dr. Moskalenko's Rebuttal Report further states that "[t]here are a number of well-validated ways to measure beliefs. Perhaps the most common way to measure beliefs is through *a public opinion poll* or a *survey*." (Ex. C at 9) (emphasis in original). She also states that another way to quantitatively assess beliefs in QAnon is through structured or semi-structured interviews. (*Id.* at 11). The interview "responses are then coded for markers of beliefs." (*Id.*)

But Dr. Moskalenko admits that, despite these best practices, she employed none of these methods in rendering her opinions about the Flynns' beliefs. Dr. Moskalenko testified that she did not conduct any surveys as part of her work in this

case. (Ex. B at 35:17-20, 119:21-120:19). She further testified that she did not design a survey or interview the Flynns (or anyone else) to assess the Flynns' beliefs. (*Id.* at 43:5-11; 182:9-184:19; 330:23-332:4). Instead, she equated reading the Flynns' deposition transcripts to conducting and coding their interviews, despite the fact that she was not the person asking questions. (*Id.* at 182:19-183:10). She testified that she interpreted Jack Flynn's Tweets as being supportive of his brother, and not QAnon, because in her sole opinion, she felt that it was the "more reasonable" explanation— not one based on any polls, surveys, or coded interviews. (*Id.* at 248:16-249:18). Because she admits that she did not use her own suggested methodology, her opinion must be excluded pursuant to *Daubert*.

## B. No Objective Data

Dr. Moskalenko did not rely on any industry or third-party data in her evaluation process—*none*. Indeed, she explicitly announced in her Report that "[i]n the absence of evidence of the Flynns' belief in QAnon conspiracy theories, the only parsimonious interpretation of the intentions behind their utterance is their desire to express patriotism and family unity." (Ex. A at 12). Dr. Moskalenko testified:

> Q:    Why were you offering a parsimonious interpretation?
>
> A:    Because I didn't have a chance to interview Jack and Leslie Flynn. I didn't know them personally. **I didn't have all the information available in the universe to support or not support my opinion.**
>
> **And, so, I cannot offer a fully 100-percent informed opinion.** Parsimonious opinion is the only one available to me, based on the availability of information to make it.

(Ex. B at 43:5-16) (emphasis added). This answer alone is self-disqualifying. When pressed to explain the limited sources of her information, Dr. Moskalenko testified that she only reviewed pleadings, deposition transcripts, and exhibits provided to her by Plaintiffs' counsel. (*Id*. at 24:15-28:19). She did not review or request any documents produced by CNN or any other party in this matter. (*Id*. at 38:9-39:23).

## C. No Intellectual Rigor

The level of superficiality in Dr. Moskalenko's analysis is astonishing. Her deposition is replete with examples highlighting blatant analytical shortcuts and gaps in formulating her own opinion. As noted already, this proffered expert admitted that she never interviewed Plaintiffs and merely relied on whatever materials Plaintiffs' counsel chose to give her. Rather than asking counsel for *anything else*, she simply relief on Plaintiffs' own assertions that they are not QAnon supporters. She did not conduct any surveys or interviews or conduct any other type of independent research to reach her opinion, although she testified that is how she typically evaluates a person's beliefs. She admitted that she conducted a "limited look" into the Flynns' social media (one supplied entirely by Plaintiffs' counsel), despite testifying that social media plays "[a]n enormous role" in QAnon because "[i]t's their main way of communicating with each other and with the world." (Ex. B at 40:10-23, 65:3-9).

As explained below, Dr. Moskalenko's guesswork and conjecture about the Flynns' beliefs must never reach the jury. *Daubert* requires no less.

### *Argument*

Under *Daubert*, this Court is required to "act as a gatekeeper to insure that

speculative and unreliable opinions do not reach the jury." *See Williams v. Mosaic Fertilizer, LLC*, No. 8:14-cv-1748-T-35MAP, 2016 WL 7175657, at *3 (M.D. Fla. Jun. 24, 2016); *see also United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("[t]he importance of *Daubert*'s gatekeeping requirement cannot be overstated"); *Salvani v. Corizon Health, Inc.*, No. 17-24567-Civ-SCOLA/TORRES, 2019 WL 3410028, at *2 (S.D. Fla. Jul. 29, 2019); *see generally Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 141, 148 (1999). The burden to establish the three requirements for admissibility (qualifications, reliability, and helpfulness) is on the proponent, or Plaintiffs, in this matter. *Frazier*, 387 F.3d at 1260. As the case law emphasizes, this gatekeeping function is critical because jurors may not be equipped to recognize the speculative/unreliable nature of an expert opinion and to give it the weight it deserves. *Id.* at 1263 ("expert testimony may be assigned talismanic significance in the eyes of lay jurors" and thus "courts must take care to weigh the value of such evidence against its potential to mislead or confuse"); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1310 (11th Cir. 1999) (jurors more likely than judge "to be awestruck by the expert's mystique").

To that end, courts are required to ensure that an "expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of **intellectual rigor** that characterizes the practice of an expert in the relevant field." *Frazier*, 387 F.3d at 1260 (emphasis added) (*quoting Kumho Tire*, 526 U.S. at 152); *United States v. Falcon*, 245 F. Supp. 2d 1239, 1245

9

(S.D. Fla. 2003) (*Daubert* requires courts to be vigilant in ensuring that experts employ "intellectual rigor" in reaching their opinions and that experts do not "bring their aura of expertise into the courtroom to merely serve as 'hired guns' for their respective parties"). Consistent with that mandate of "intellectual rigor," the Eleventh Circuit has been clear that the courtroom is not the place for *any* expert guesswork. *See, e.g.*, *Hendrix v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194, 1203 (11th Cir. 2010). As explained below, Dr. Moskalenko's opinion cannot survive such scrutiny—not even close.

## I.   Dr. Moskalenko's opinion is unreliable and based on inadequate methodology.

As one Florida federal trial court recently stated in the context of excluding expert testimony:

> Rulings on admissibly under *Daubert* inherently require the trial court to conduct an exacting analysis of the proffered expert's methodology. The court's gatekeeping role requires more than simply taking the expert's word for it. The basic foundation for admissibility is the expert's opinions be ***firmly supported by appropriate validation.***

*Dillon v. Sunbelt Rentals, Inc.*, 464 F. Supp. 3d 1333, 1338 (S.D. Fla. 2020) (citations and internal quotations omitted; emphasis added) (*citing Frazier*, 387 F.3d at 1261; *see Williams*, 2016 WL 7175657, at *3 ("appropriate validation must support [expert testimony]"). As a corollary, "*Daubert* compels district courts to reject expert opinion based solely on an expert's **mere say so**, however well qualified he or she may be." *Johnson v. Dixon*, 2015 WL 12851563, at *25 (M.D. Fla. Nov. 20, 2015) (emphasis added), *aff'd,* 666 Fed. Appx. 828 (11th Cir. 2016); *accord O'Malley v. Royal Caribbean*

*Cruises, Ltd.*, No. 17-21225-Civ-SCOLA/TORRES, 2018 WL 2970728, at *6 (S.D. Fla. June 13, 2018) ("[t]he trial court's gatekeeping function requires more than simply taking the expert's word for it"); *Lugo v. Hulett Envtl. Servs., Inc.*, No. 6:10-cv-1252-Orl-22DAB, 2011 WL 13298500, at *5 (M.D. Fla. May 18, 2011) (expert opinion based on nothing "other than his say so ... does not survive the Rule 702 and *Daubert* analysis").

Again, an expert opinion must exhibit **intellectual rigor** *and* be supported by **appropriate validation**. *See Frazier*, 387 F. 3d at 1260; *Williams*, 2016 WL 7175657, at *3; *In re Trasylol Products Liab. Litig.*, No. 08-MD-01928, 2010 WL 11470353, at *3 (S.D. Fla. Dec. 3, 2010). What this means is the court must evaluate and scrutinize every step of the expert's rationale that underlies his/her conclusions, including adherence to generally accepted, reliable methodology. *See Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014) (*citing Daubert*, 509 U.S. at 593-94). And where the expert relies on his/her own experience, "[t]he proponent of such an opinion must explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Lugo,* 2011 WL 13298500, at *4. In conducting this rigorous inquiry, the judge must ultimately ensure that the testimony is not merely speculation offered by one who might be an expert on other topics. *Chapman*, 766 F.3d at 1306; *Allison*, 184 F.3d at 1316-17. As the courts have recognized, evaluating reliability under these guiding principles is essential to ensure

that litigants do not "dump[] a barrage of questionable" testimony on a jury which is "less equipped than the judge to make reliability and relevance determinations and more likely than the judge to be awestruck by the expert's mystique." *Allison*, 184 F.3d at 1310.

Dr. Moskalenko's opinion falls woefully short of what is required. Indeed, her opinion cannot even survive the most basic factor for reliability (*i.e.,* employing tested methodology). *See, e.g., Arquette v. Eslinger*, No. 6:08-cv-1836-Orl-35DAB, 2010 WL 11453163, at *3 (M.D. Fla. Jan. 22, 2010) (excluding expert who failed to "demonstrate that her opinion … is testable," nor did she offer "any error rate," any "peer-reviewed source" or "general acceptance of her opinion"). Her opinion is not testable. It boils down to an assertion that she believes the Plaintiffs when they say they are not QAnon supporters. Simply put, her opinion is pure guesswork based on unsupported theories that just hang in the air. Creating layer upon layer of unreliability are the following deficiencies in her Report, Rebuttal Report, and deposition testimony:

➢ Dr. Moskalenko failed to rely on any of her suggested methodology to measure beliefs in arriving at the opinion that the Flynns do not support QAnon.

➢ Dr. Moskalenko failed to evaluate the Flynns' social media content beyond what was provided to her by Plaintiffs' counsel.

➢ Dr. Moskalenko failed to present any objective support for anything she said—*i.e.,* no interviews, no third-party publications, no surveys, no industry practices, etc.

12

➢ Dr. Moskalenko engaged in a litany of analytical shortcuts (see "No Intellectual Rigor" section above).

➢ Dr. Moskalenko's opinions rely primarily on her reading of the parties' deposition transcripts and commenting overall on their credibility.

➢ Dr. Moskalenko simply relied on what Plaintiffs' attorney chose to give her without asking for anything else—despite admitting that further information would change her opinion.

➢ Dr. Moskalenko's Report is not specific to Lori Flynn or Valerie Flynn. Her Rebuttal Report does not reference Lori Flynn or Valerie Flynn at all.

Overall, Dr. Moskalenko does not point to anything in her Report that would bolster her opinions. She does not refer to or append any exhibits to her Report. Moreover, by ignoring everything outside of the limited universe of documents provided by Plaintiffs' counsel and limiting her analysis to these handpicked pleadings and transcripts, Dr. Moskalenko has rendered her opinion entirely on a subjective rather than an objective basis. Dr. Moskalenko's testimony from beginning to end was nothing more than unsubstantiated conclusions that members of the Flynn family are not supporters of QAnon because they say-so. She did not follow any of the methodology that she herself suggested was routinely used to measure beliefs. Her opinion is nothing more than **her own say-so based on Plaintiffs' own say-so**, and it lacks the intellectual rigor demanded by *Daubert*. *See, e.g., Frazier*, 387 F.3d at 1266. Exclusion is the only sustainable option here.

## II.     Dr. Moskalenko's opinion is inappropriate and unhelpful to the jury.

Expert testimony must be helpful to the jury by providing a substantiated framework through which the jury is better able to understand the implications of the fact evidence being presented to it. Such testimony is unhelpful to a jury if it is irrelevant to the facts of the case or if it "offers nothing more than what lawyers for the parties can argue in closing arguments." *See Tompkins-Holmes v. Gualtieri*, No. 8:17-cv-52-T-33AEP, 2018 WL 1556423, at *5 (M.D. Fla. Mar. 30, 2018), *citing*, *Frazier*, 387 F.3d at 1262-63; *Salvani*, 2019 WL 3410028, at *5. As a corollary, the opinion must **fit the facts** of the case. *See, e.g.*, *Trasylol*, 2010 WL 11470353 at *6; *In re 3M Combat Arms Earplug Prod. Liab. Litig.,* No. 3:19md2885, 2021 WL 948839, at *11 (N.D. Fla. Mar. 13, 2021); *see also Allison,* 184 F.3d at 1312.

Dr. Moskalenko's opinion fails this test as well. Her opinion is provided for the sole purpose of approving the factual narrative advanced by Plaintiffs about the truth of the alleged defamatory statements at issue,[4] which is not permitted. *See, e.g.*, *Ohio State Troopers Ass'n, Inc. v. Point Blank Enters., Inc.*, No. 18-CV-63130, 2020 WL 1666763, at *15 (S.D. Fla. Apr. 3, 2020) ("[i]t is improper for an expert to become a vehicle for factual narrative....Although an expert may rely on facts or other data in evidence when constructing an expert report, a party may not present an expert to the jury solely for the purpose of constructing a factual narrative") (citations omitted). Such matters can be fully argued to the jury during counsel's closing

---

[4] In fact, Dr. Moskalenko admits that she was hired to "opine on a small part of the [CNN] report, and whether there is evidence to suggest that it's truthful or not." (Ex. B at 14:10-12).

argument based on the fact evidence presented. In such a circumstance, *Daubert* forbids an expert from testifying for the simple reason that it would merely put an expert's seal-of-approval on a party's fact evidence and unfairly bolster it.

Moreover, given the number of unsupported assertions and plain contradictions between her Report, Book, and testimony, her opinion is highly suspect and "easily could serve to confuse the jury." *See, e.g., Frazier*, 387 F.3d at 1266; *Edwards v. Shanley*, No. 6:10-cv-554-Orl-18DAB, 2013 WL 12160964, at *2 (M.D. Fla. Jan. 7, 2013) (excluding expert testimony that "will not assist the jury because it rests on uncertainties and assumptions"). Her testimony, prior writings, and Report take inconsistent positions that would not assist the jury. Instead of simply being "awestruck," the jury would be confused. *See Allison*, 184 F.3d at 1310. This is the type of circumstance that *Daubert* seeks to eliminate.

Perhaps the most blatant contradiction in Dr. Moskalenko's presentation is her characterization of General Michael Flynn's behavior as supportive of QAnon, while the same behavior from other members of the Flynn family (*i.e.,* Jack Flynn) is not. In her Book, she states that "General Flynn himself pledged allegiance to QAnon on July 4, 2020, in which he added the phrase to the standard oath of office, 'Where we go one, we go all.' Flynn then posted the video to Facebook, Twitter, and other platforms ensuring that his oath of allegiance went viral." (Book at 20-21). Yet, in her Report, she baldly claims that although the Flynns recited the same oath "at their backyard barbeque," "I see no evidence that their recitation of those words was meant as a pledge to QAnon." (Ex. A at 12).

15

Dr. Moskalenko further acknowledges in her Book that Gen. Flynn was affiliated with and profited from QAnon supporters, most notably through fundraising for his legal defense fund. She observed that "[t]he reason why people might suspect that General Flynn was involved with Q is because by 2019, most QAnon-related posts on the encrypted Telegram, the right-wing social media platform Parler, or on other sites included a (now disabled) link to Flynn's legal defense fund." (Book at 20). Further, she identified Gen. Flynn as an "influencer and high profile conspiracist" who "made a lot of money selling Q-branded items. According to Vice News, many links with QAnon content on the right-wing Parler platform, QAnon subreddits, or other Q-promoting posts led to General Flynn's legal defense fund website.  Flynn's website contained Q merchandise until it was taken down after the failed January 6 insurrection." (*Id.* at 44-45). Yet, her Report makes no reference to the Flynns selling Q-branded merchandise with profits benefitting Gen. Flynn's legal defense fund, nor did she testify that she asked to see any documents or information related to this topic. Despite her knowledge to the contrary, she did not mention in her Report that the legal defense fund (and the merchandise sold to support it), were tied to QAnon.

Dr. Moskalenko is similarly contradictory when opining about the meaning of the phrase, "where we go one, we go all." In her Book, she refers to the phrase in its abbreviated form, "WWG1WGA," as "the QAnon pledge" or a "QAnon slogan." (Book at 93, 160). The Book explains that "QAnon influencers on social media . . have disseminated the falsehood that 'where we go one, we go all' (WWG1WGA) is

inscribed on the bell on John F. Kennedy's sailboat.  They even have a screenshot. This is blatantly untrue. In fact, the image is a still from the film White Squall (1996), starring Jeff Bridges." (*Id.* at 186). Dr. Moskalenko even goes so far as to debunk this QAnon theory[5] in her Book, stating that "[t]here is no inscription on the bell (in fact, there is no bell). We checked." (*Id.* at 21).

Despite the thorough explanation in her Book, Dr. Moskalenko's Report claims, in direct contradiction, that "[t]he words 'where we go one, we go all' make no reference to QAnon or to any QAnon-associated beliefs," in concluding that the Flynns used the phrase for reasons unrelated to QAnon. (Ex. A at 12). She refers to the phrase in her Report as "a catchy phrase with a nice ring to it" and "a call to unity and mutual support." (*Id.*) In her deposition, Dr. Moskalenko testified that there were other, harmless meanings for the phrase,[6] and that there were instances of its use "completely unrelated to QAnon" on Twitter. (Ex. B at 127:5-128:1). It stands to reason that if someone could use a slogan widely used by QAnon for "harmless" meaning, that circumstance would have been included in the Book – presumably her most thorough analysis of the topic – as well. But the Book does the opposite: it attributed the phrase to QAnon and only QAnon. Dr. Moskalenko's unreliability

---

[5] The complaints in this matter refer to the same QAnon theory—that the phrase "where we go one, we go all" may originate from John F. Kennedy's boat. (Dkt. 58, ¶ 10; Dkt. 65, ¶ 11). Despite reviewing the pleadings in this case, Dr. Moskalenko does not acknowledge this reference in her Report.

[6] Dr. Moskalenko further testified that the phrase "where we go one, we go all" has an "internal meaning" to a person independent from QAnon. (Ex. B at 126:19-127:8). She explained that her basis for saying that the phrase had an "internal meaning" was that she is "a human being who uses language" and "see[s] meaning in it." (*Id.*)

and bias, relying on cherry-picked data provided to her by Plaintiffs to reach an opinion inconsistent with her own prior published works, is precisely the type of testimony that *Daubert* precludes.

There is a "fit the facts" problem as well. As noted, Dr. Moskalenko's Report simply tries to rubber stamp the deposition testimony of Plaintiffs without considering any other evidence, including any documents produced by CNN. To that end, her opinion relies heavily on a narrow and curated set of pleadings and deposition transcripts. She did not review the Flynns' social media posts beyond the small set provided to her by Plaintiffs' counsel. (Ex. B at 40:4-23). She admits in her deposition that she "could not offer a fully 100-percent informed opinion" based on the information that she was provided. (*Id*. at 43:7-16).  In other words, Dr. Moskalenko is relying on a set of "facts" that are themselves speculative, thereby compounding the unreliability and unhelpfulness of her opinion. For these reasons, *Daubert* requires the expert be stricken, and Dr. Moskalenko's opinion must be excluded.

WHEREFORE, CNN requests that the Court grant this motion and exclude the proffered expert report, rebuttal expert report, deposition testimony, and any trial testimony of Valerie and Lori Flynn's proposed expert, Dr. Moskalenko, from being considered at summary judgment and at trial.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for CNN certifies that counsel conferred with counsel for Plaintiffs by electronic mail on July 13, 2023, who advised that Plaintiffs oppose the relief requested

herein.

Dated: October 19, 2023.

Respectfully submitted,

SHULLMAN FUGATE PLLC

By: */s/ Deanna K. Shullman*
Deanna K. Shullman
Florida Bar No. 514462
Sarah M. Papadelias, Esq.
Florida Bar No. 0125098
2101 Vista Parkway, Ste. 4006
West Palm Beach, Florida 33411
Telephone: (561) 429-3619
dshullman@shullmanfugate.com
spapadelias@shullmanfugate.com

DAVIS WRIGHT TREMAINE LLP
Katherine M. Bolger*
Meenakshi Krishnan*
Sam F. Cate-Gumpert*
Lindsey B. Cherner*
1251 Avenue of the Americas
New York, New York 1002
Telephone: (212) 489-8230
katebolger@dwt.com
meenakshikrishnan@dwt.com
samcategumpert@dwt.com
lindseycherner@dwt.com

*Admitted *Pro Hac Vice*

*Counsel for CNN*