# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| VALERIE FLYNN,<br><br>        Plaintiff,<br><br>vs.<br><br>CABLE NEWS NETWORK, INC.<br><br>        Defendant. | **CASE NO: 8:22-CV-343-MSS-SPF** |
| LORI FLYNN,<br><br>        Plaintiff,<br><br>vs.<br><br>CABLE NEWS NETWORK, INC.<br><br>       Defendant. | **CASE NO: 8:22-CV-00512-MSS-AEP** |

**PLAINTIFFS VALERIE FLYNN'S AND LORI FLYNN'S
JOINT OPPOSITION TO DEFENDANT'S MOTION IN LIMINE
<u>TO EXCLUDE PLAINTIFFS' EXPERT</u>**

Defendant seeks to exclude Dr. Sophia Moskalenko's testimony because it is damaging to their defenses. Indeed, Defendant does not challenge Dr. Moskalenko's qualifications as an expert on the issue of QANON, but rather advances a perfunctory argument that her testimony would not be helpful to

1

the jury and was not based on a reliable methodology. Defendant self-servingly alleges that Dr. Moskalenko only relied upon documents provided by Plaintiffs' prior counsel, yet their own expert witness performed the same analysis and relied upon documents only provided by Defendant.

Moreover, Defendant readily admits that Dr. Moskalenko reviewed the depositions in this case and used them in reaching her opinion, which is within the proper scope of reliable methodologies. Indeed, Defendant is simply worried that if Dr. Moskalenko's testimony were to reach the jury it would be helpful in their understanding of QANON as a movement and why the Plaintiffs are not a part of that movement. Therefore, Plaintiffs respectfully request this Court deny Defendant's Motion in Limine seeking to exclude Dr. Moskalenko's expert reports and her testimony at trial.

## ARGUMENT

Expert testimony may be admitted if (1) the expert is qualified, (2) the expert used reliable methodology, and (3) the testimony would assist the trier of fact. *Kilpatrick v. Breg, Inc.*, 613 F.3d 1329, 1335 (11th Cir. 2010) (citing *Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir.1998)). Here, Defendant does not argue that Dr. Moskalenko is not sufficiently qualified. Rather, Defendant wrongly argues that Dr. Moskalenko's testimony did not use reliable methodology, and would not assist the trier of fact.

**I. Dr. Moskalenko's Testimony is Based on Reliable Methodology.**

"The Supreme Court in Daubert identified four nonexclusive factors for trial courts to use in determining the reliability of scientific opinions; i.e.: (1) whether the theory can and has been tested; (2) whether it has been subjected to peer review; (3) the known or expected rate of error; and (4) whether the theory and methodology employed is generally accepted in the relevant scientific community." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1251 (11th Cir. 2005) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 593–94 (1993)). These factors, however, are not all-inclusive and, when as here, "the expert's proffered testimony is primarily based on experience, relevant reliability concerns may focus on personal knowledge and experience." *Edmondson v. Caliente Resorts, LLC*, No. 8:15-cv-2672-T-23TBM, 2017 WL 10591833, at *4 (M.D. Fla. Aug. 31, 2017). Thus, a judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 142 (1999).

While the court performs a gatekeeping function in analyzing these factors, "it is not the role of the court to make conclusions as to credibility or the persuasiveness of the proffered evidence" or to "'supplant the adversarial system,' meaning that '[v]igorous cross-examination, presentation of contrary

3

evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Id.* at *2 (M.D. Fla. Aug. 31, 2017) (citing *Quiet Tech. DC-8,* 326 F.3d at 1341 (citations omitted). Because Dr. Moskalenko relied on appropriate methods, there are no reliability concerns. Even if this Court were to find the methods questionable or "shaky," because Dr. Moskalenko is clearly qualified and relies mainly upon her own experience and knowledge, the challenge to the credibility of her report and testimony should be on cross-examination not exclusion.

Defendant admits that Dr. Moskalenko equates "reading the Flynns' deposition transcripts to conducting and coding their interviews," but, in the very next sentence no less, Defendant then insists that her opinion was not based on that review. Def. Mot. at 7. Indeed, Defendant strains credulity by alleging that Dr. Moskalenko did not engage in scientific analysis immediately after admitting she testified that she reviewed the deposition transcripts in the same manner that a coded interview would be reviewed. *Id.* This is a common theme throughout this motion, where Defendant simply disapproves of Dr. Moskalenko's opinion and seeks to keep it from the jury. This is not, however, how the gatekeeping function of this Court is supposed to function. Dr. Moskalenko's review and opinion after reviewing the interviews and materials provided by Plaintiffs' prior counsel was a scientific review conforming with the requirements for formulating an expert opinion.

4

Next, Defendant seeks to impose an additional requirement regarding "objective data" into the *Daubert* requirements, yet this is not a requirement. Def. Mot. at 8. In *Edmondson*, the court considered a similar argument focusing on a lack of "objective data or facts" and ultimately concluded that this was a fertile ground for cross examination, but it did not render the expert's opinion unreliable. *Edmondson*, 2017 WL 10591833 at *6. The *Edmondson* court specifically noted that it was difficult to apply the traditional factors in that case because, like here, the expert's testimony was largely based on the expert's experience and knowledge. *Id.* at *5. The *Edmondson* court finally concluded that, despite the lack of objective data and the decision by the expert not to rely upon other possible methodologies, the expert's report should be admissible and subject to attack on cross-examination. *Id.* at *6.

Defendants next suggest Dr. Moskalenko's report and opinion are "superficial" and that she "simply relief [sic][1] on Plaintiffs' own assertions that they are not QANON supporters." This is directly contradicted by their admission she reviewed many documents related to the case including the pleadings and deposition transcripts, as well as social media posts by Plaintiffs.[2] Def. Mot. at 8. If Defendant was not pleased with the social media

---

[1] Error in original brief.

[2] Defendant contradictorily claims that Dr. Moskalenko both did not review Plaintiffs' social media and then later admits that she did review some of their social

5

posts that Dr. Moskalenko reviewed, they were free to confront her with additional social media posts at her deposition and will be free to do so at trial. Defendant, however, argues that "*Daubert* compels district courts to reject expert opinion based solely on an expert's **mere say so**, however well qualified he or she may be." Def. Mot. at 10 (citing *Johnson v. Dixon*, 2015 WL 12851563, at *25 (M.D. Fla. Nov. 20, 2015) (emphasis added by Defendant), *aff'd,* 666 Fed. Appx. 828 (11th Cir. 2016)). While this is true, Defendant's displeasure with Dr, Moskalenko's opinion does not render it "mere say so". Indeed, Defendant's admitted that Dr. Moskalenko testified to reviewing deposition transcripts for coded language, as well as her review of many other documents and pleadings related to this case. Def. Mot. at 7 (citing Exhibit B at 182:19-183:10); Def. Mot. at 8. This is an admission that it is not merely Dr. Moskalenko's "say so" but her opinion derived from the record and the depositions in this case.

Defendant nevertheless persists in claiming that Dr. Moskalenko's opinion is not based on anything more than her say so by claiming that it is not "testable". Def. Mot. at 12. This, however, is incorrect. First, the review of interviews for coded markers of belief is an accepted methodology. And second,

---

media. *Compare* Def. Mot. 4 (Her Report states that she did not review the social media postings of the Flynns in rendering her opinion") *with* ("She admitted that she conducted a "limited look" into the Flynns' social media (one supplied entirely by Plaintiffs' counsel)"). Defendant's citation on page 4 of their brief is misleading as they were in possession of Dr. Moskalenko's deposition where she clearly explained that she did in fact consider some of Plaintiff's social media posts.

6

Defendant has advanced their own expert who reviewed similar materials and arrived at his own opinion. Dkt. No. 103.3 at 2. This is testability. If the materials that Dr. Moskalenko reviewed were not able to provide her with enough information to formulate an opinion, then Defendant's own experts would suffer from the same problem, particularly since Dr. Moskalenko did rely upon review of depositions and review of Plaintiffs' social media and assertions in the pleadings of this case to formulate her opinion. *See* Def. Mot. at 7-8.

Moreover, Dr. Moskalenko is entitled to rely on her experience and knowledge in coming to her expert opinion. As *Edmondson* illustrates, when "the expert's proffered testimony is primarily based on experience, relevant reliability concerns may focus on personal knowledge and experience." *Edmondson*, 2017 WL 10591833, at *4. Here, Defendant does not challenge Dr. Moskalenko's vast personal knowledge and experience. As described throughout, and further below, she employed this experience and knowledge, making her expert opinion in this case proper.

Defendant argues that Dr. Moskalenko "admits" she did not employ the best practices in forming her opinion. Def. Mot. at 6-7. This is not so. While surveys and polling are one way to form an opinion, here, Dr. Moskalenko was also able to do so using her "experience" in reviewing QANON content, and her

7

"general knowledge of social psychology and belief systems." Dkt. No 92.2 at 31:16-31:24. As noted, Defendant does not challenge this experience and knowledge, and as *Edmondson* holds, the place to challenge the applied methods is on cross-examination. *Edmondson*, 2017 WL 10591833, at *6.

Indeed, all of Defendant's arguments regarding the reliability are either incorrect or merely take issue with Dr. Moskalenko's opinion. *See* Def. Mot. at 12-13 (listing out issues). Defendant's list includes: (1) failure to rely on an acceptable methodology, (2) failure to evaluate social media *beyond that provided by Plaintiffs' counsel*, (3) failure to present objective support for her opinion, (4) alleged analytical shortcuts, (5) the documents that Dr. Moskalenko relied upon are somehow insufficient, (6) again taking issue that Dr. Moskalenko relief upon materials provided by Plaintiffs' counsel, and (7) that Dr. Moskalenko's report is not specific to Valerie and Lori Flynn.

As is abundantly clear from reviewing these in order, there is significant overlap between these alleged issues, and Defendant is repeating the same alleged issue over and over. All of these allegations boil down to (1) whether the documents and methodology used are sufficient, and (2) whether the report applies to Valerie and Lori Flynn.

As repeatedly noted, Dr. Moskalenko reviewed pleadings, deposition transcripts, and excerpts from Plaintiffs' social media. These documents

8

provided ample material for her to understand the issues present before this Court and those that will be presented to the jury in trial. From these materials, Dr. Moskalenko was able to develop her opinion based on an accepted mythology including reviewing and coding interviews and other statements as well as based upon her substantial knowledge and experience. Indeed, any additional information that Defendant believes would undercut Dr. Moskalenko's opinion could have been used at her deposition to confront her, and she may still be confronted with any additional documents at trial.

Defendant continues to use hyperbolic rhetoric claiming "Dr. Moskalenko has rendered her opinion entirely on a subjective rather than an objective basis" because she reviewed materials provided by Plaintiffs' counsel. Def. Mot. at 13. This is a wild proposition since a subjective opinion is based on personal feelings rather than facts. Defendants are admitting that Dr. Moskalenko reviewed considerable materials and yet also claiming that she did not rely on the information contained in those pleadings but rather on her own feelings. This is simply not so, no matter how many times Defendant insists it is so.

The simple facts are: Dr. Moskalenko reviewed a number of materials, using an accepted process, and expressed her opinion. Defendant does not like that opinion and is seeking to couch a credibility argument as a reason to

9

exclude the opinion. Dr. Moskalenko's opinion, however, is proper and admissible because it is reliable. Defendant is conjuring up an issue where none exists. Defendant is worried that the jury will believe Dr. Moskalenko's opinion and is seeking to avoid allowing it in front of a jury, not because it is misleading, but because it is so simple, straightforward, and damaging to Defendant's case. All of Defendant's concerns go to credibility, which is an issue for the jury outside of the gatekeeping function of this Court.

## II. Dr. Moskalenko's Testimony Would Assist the Jury.

Expert testimony must be helpful to the jury and fit the facts. Indeed, "the court must 'ensure that the proposed expert testimony is 'relevant to the task at hand,' . . . i.e., that it logically advances a material aspect of the proposing party's case.'" *Tompkins-Holmes v. Gualtieri*, No. 8:17-CV-52-T-33AEP, 2018 WL 1556423, at *5 (M.D. Fla. Mar. 30, 2018) (citing *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999) (citation omitted)). In terms of helpfulness, "[p]roffered expert testimony generally will not [be helpful to the] trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Id.* (citing *United States v. Frazier*, 387 F.3d 1244, 1262–63 (11th Cir. 2004) (citation omitted)).

To be more precise, "expert testimony is helpful if it 'concerns matters that are beyond the understanding of the average lay person,' and generally unhelpful 'when it offers nothing more than what lawyers for the parties can

10

argue in closing arguments.'" *Salvani v. Corizon Health, Inc.*, No. 17-24567-CIV, 2019 WL 3410028, at *5 (S.D. Fla. July 29, 2019) (citing *Frazier*, 387 F.3d at 1262–63 (citations omitted)).

As with all elements of expert testimony, "[t]he proponent of the expert testimony bears the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of these requirements." *Id.* at *1. This Court is required to gatekeep this testimony "to ensure that speculative, unreliable expert testimony does not reach the jury." *Salvani*, 2019 WL 3410028, at *2 (citing *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)). The Court is not, however, "to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)).

Here, Defendant presents several unpersuasive arguments why Dr. Moskalenko's expert opinion would not be helpful to the jury and does not fit the facts. These arguments do not square with Dr. Moskalenko's report or the facts of this case.

First, Defendant argues that Dr. Moskalenko's opinion "is provided for the sole purpose of approving the factual narrative advanced by Plaintiff about the truth of the alleged defamatory statements at issue, which is not permitted." Def. Mot. at 14. In support of this argument, Defendant offers only that Dr. Moskalenko testified, in part, that she was hired to "opine on a small

11

part of the [CNN] report, and whether there is evidence to suggest that it's truthful or not." *Id.* at n. 4. While CNN bluntly claims that this is not permitted, they are incorrect. While an expert "may not testify as to whether the legal standard has been satisfied," an expert certainly "may offer [her] opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied". *Salvani*, 2019 WL 3410028, at *5 (citing *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1212-1213 (D.C. Cir. 1997); *see also Montgomery*, 898 F.2d at 1541). Here, Dr. Moskalenko's opinion of the CNN report and whether there is any evidence to suggest that it is truthful or not is directly helpful to the jury and does not seek a legal conclusion. Rather, it asks Dr. Moskalenko to determine, in her expert opinion using her knowledge and experience, whether there is any evidence to show that the CNN report is true or not.

Indeed, Defendant does not offer any other argument as to why or how Dr. Moskalenko's opinion is inappropriate. Yet, the wording makes it clear that she was retained to provide her expert opinion on whether there was any evidence to suggest the CNN report, which regarded the Flynns and whether they were affiliated with or supportive of QANON, was truthful or not. Def. Mot. at n. 4. This is an entirely permissible reason to be retained and topic for expert testimony, especially from an expert on QANON such as Dr. Moskalenko.

12

Second, Defendant argues that Dr. Moskalenko's testimony should be excluded because of inconsistencies that make it confusing. Yet, Defendant is unable to actually demonstrate any direct contradictions. *See* Def. Mot. at 16-17. Rather, Defendant seeks to equivocate between things Dr. Moskalenko discusses in her book relating to Lt. Gen. Michael T. Flynn (ret.) and Plaintiffs in this case. *See id*. This is comparing apples to oranges and is a matter of credibility that should be reserved to the jury.

Indeed, Defendant is seeking to conjure up an issue to muddy the waters. Even if such an equivocation was not merely a credibility and factual issue for the jury, it is impossible for Defendant to convincingly argue that Dr. Moskalenko's analysis in her book of Gen. Flynn and her analysis here of Plaintiffs renders her opinion unhelpful or not fit for the facts. Defendant argues that Plaintiffs' purported actions of selling allegedly QANON-related merchandise to support Gen. Flynn's legal defense fund and some social media posts with alleged QANON buzzwords equates to Dr. Moskalenko abandoning her scientific credentials merely because her analysis of Gen. Flynn in her book turned out differently. *See id.*

The only other argument Defendant advances is that the use of a QANON slogan is somehow dispositive because the use of the slogan must imply membership, affiliation, or support with QANON. *See id.* This is, of course, a gross oversimplification of how language works as acknowledge by

13

Dr. Moskalenko in her report and analysis. The phrase "where we go one, we go all" has become associated with QANON, yet that does not mean that anyone that ever uses that phrase must be a member or supporter of the movement. That is an untenable claim.

Being able to make this distinction bolsters Dr. Moskalenko's credibility and helpfulness to the jury rather than harms it. Indeed, rather than seeing the use of that statement and immediately making such a simple association, Dr. Moskalenko carefully reviewed the materials at issue in this case and rendered her opinion, based on her knowledge and expertise in the study of QANON and radical movements. This is surely helpful to a lay jury as a lay jury does not have expertise in QANON history, following, and evolution of its belief structure. *Salvani*, 2019 WL 3410028, at *5 ("[E]xpert testimony is helpful if it 'concerns matters that are beyond the understanding of the average lay person.") (citing *Frazier*, 387 F.3d at 1262–63 (citations omitted)).

Defendant essentially asks this Court to make a credibility determination that is reserved for the jury. *Id*. at *2 (finding that the court is not "to make ultimate conclusions as to the persuasiveness of the proffered evidence." (citing *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341)). Here, Defendant is asking this Court to step in and determine that the testimony is "confusing" and therefore should not be assessed for persuasiveness and credibility by the jury. The Court should decline to do so.

Defendant's final argument, that Dr. Moskalenko's report and testimony is based on "cherry-picked" information and cannot fit the facts, is misleading at best. Dr. Moskalenko testified and Defendant cited that she relied upon the "pleadings, deposition transcripts, and exhibits in this case," as well as social media of Plaintiffs. Def. Mot. at 3, 18. This is hardly a cherry-picked selection of documents when it comprises the record before this Court as well as social media posts by Plaintiffs. Defendants take issue with the set of facts that Dr. Moskalenko reviewed, yet they could have confronted her with any additional documents at her deposition or at trial to present to the jury any information that was not considered. Rather, Defendant seeks to exclude her testimony rather than to make this an issue of thoroughness and credibility as it should be.

## CONCLUSION

For the reasons outlined above, Plaintiffs respectfully request this Court deny Defendant's Motion.

Dated: December 20, 2023         Respectfully submitted,

*/s/Jared J. Roberts*
Jared J. Roberts
Florida Bar No. 1036550
Jason Greaves (admitted *pro hac vice*)
Shawn M. Flynn
Florida Bar No. 1040911

                                            Binnall Law Group, PLLC
                                            717 King Street, Suite 200
                                            Alexandria, VA 22314
                                            Telephone: (703) 888-1943
                                            jason@binnall.com
                                            jared@binnall.com
                                            shawn@binnall.com

                                            *Counsel for Lori Flynn and Valerie Flynn*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2023, a true and correct copy of the foregoing was served via CM/ECF on all counsel of record.

*/s/ Jared J. Roberts*
Jared J. Roberts